# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| DENNIS BALL-BEY, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:18-cv-01364-SRC |
| | ) | |
| KYLE CHANDLER, et al., | ) | |
| | ) | |
| Defendant(s). | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant City of St. Louis and D. Samuel Dotson's Motion to Dismiss Counts I, II, IV and IV [25].  The Court grants the motion.

## I.    BACKGROUND

On January 3, 2019, Plaintiff Dennis Ball-Bey[1] filed an amended complaint in this Court alleging Defendants Kyle Chandler and Ronald Vaughn, police officers with the St. Louis Metropolitan Police Department, used excessive force against Mansur Ball-Bey in violation of the Fourth and Fourteenth Amendments of the United States Constitution; Ball-Bey alleges Chandler and Vaughn shot and killed Mansur[2] when Mansur ran away from the officers.  Ball-Bey asserts the following claims:  (1) use of excessive force in violation of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 against Chandler and Vaughn; (2) wrongful death/assault and battery pursuant to Missouri Revised Statute §§ 537.080(1) and 516.120 against Chandler and Vaughn; (3) failure to train, supervise, and control in violation of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 against Dotson and the

---

[1] Ball-Bey is the father of the decedent, Mansur Ball-Bey.  Doc. 21, ¶ 10.
[2] The Court refers to Mansur Ball-Bey by his first name solely to provide clarification throughout this opinion between Plaintiff Dennis Ball-Bey and the decedent, Mansur Ball-Bey.

City; (4) failure to train, supervise, and control against Dotson in violation of 42 U.S.C. § 1983; and (5) municipal liability under 42 U.S.C. § 1983 against the City and Dotson.

Ball-Bey asserts that the City has two policies and a custom that are the "moving force" behind the alleged unconstitutional conduct. He first alleges the two policies: (1) the "Normal" policy pursuant to which the City "normally" charges suspects on whom excessive force is used with resisting arrest in municipal court (rather than state court); and (2) the "Rec" policy under which municipal prosecutors will plea bargain and "recommend" dismissal of municipal-court-resisting-arrest-charges only if a defendant will sign a liability waiver releasing the City from any civil lawsuits. Doc. 21, ¶¶ 26, 51. Ball-Bey then alleges St. Louis Metropolitan Police Department ("SLMPD") has a "custom" of "using unjustified force or illegally seizing and searching a citizen and claiming in written reports the accused victim, 'resisted arrest'." Doc. 21, ¶ 59. Ball-Bey describes the "custom" as "excessive force when the accused victim runs, pulls away, or protests . . . " ("YRYP").[3] Doc. 21, ¶ 61.

In their Motion to Dismiss, the City and Dotson, in his official capacity only (collectively, "Municipal Defendants"), seek to dismiss the claims against them for failure to state a claim, and, for redundancy. Specifically, Municipal Defendants assert Ball-Bey fails to state a claim for municipal liability because Ball-Bey fails to plausibly allege Chandler and Vaughn used excessive force against Mansur because of Municipal Defendants' alleged policies, that Municipal Defendants were deliberately indifferent to a widespread pattern of unconstitutional misconduct, or that Municipal Defendants failed to train, supervise, or control

---

[3] The Court granted Plaintiff's motion to consolidate in *White v. City of St. Louis et al.*, 4:18-cv-00518 SRC, consolidating this case and three others, all filed by the same plaintiffs' counsel. In those consolidated cases, plaintiffs' counsel refer to this policy by the shorthand "you run, you pay."

its police officers.  Municipal Defendants also argue Ball-Bey's official capacity claim against

Dotson under 42 U.S.C. § 1983 is redundant of the claims against the City.

## II.      STANDARD

Under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), a party may move to dismiss

a claim for "failure to state a claim upon which relief can be granted."  The notice pleading

standard of FRCP 8(a)(2) requires a plaintiff to give "a short and plain statement . . . showing

that the pleader is entitled to relief."  To meet this standard and to survive a FRCP 12(b)(6)

motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(internal quotations and citation omitted).  This requirement of facial plausibility means the

factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Park Irmat Drug Corp. v.*

*Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

The Court must grant all reasonable inferences in favor of the nonmoving party.  *Lustgraaf v.*

*Behrens*, 619 F.3d 867, 872-73 (8th Cir. 2010).

When ruling on a motion to dismiss, a court must liberally construe a complaint in favor

of the plaintiff.  *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010).

However, if a claim fails to allege one of the elements necessary to recovery on a legal theory,

the Court must dismiss that claim for failure to state a claim upon which relief can be granted.

*Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).  Threadbare recitals of a cause of

action, supported by mere conclusory statements, do not suffice.  *Iqbal*, 556 U.S. at 678; *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rule 8 does not "unlock the doors of

discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

"A pleading that merely pleads labels and conclusions or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010) (internal quotations omitted). Although courts must accept all factual allegations as true, they are not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted); *Iqbal*, 556 U.S. at 677-78.

Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 679. Therefore, a court must determine if the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id*. This "context-specific" task requires the court to "draw on its judicial experience and common sense." *Id*. at 679, 682. In determining the plausibility of a plaintiff's claim, *Iqbal* and *Twombly* instruct the Court to consider whether "obvious alternative explanations" exist for the allegedly unconstitutional conduct. *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567. The Court must then determine whether the Plaintiff plausibly alleges a violation of the law. *Id*. The well-pleaded facts must permit more than the "mere possibility of misconduct." *Id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557).

## III. ALLEGATIONS IN THE COMPLAINT

Under *Iqbal*, the Court must parse out the factual allegations that it must accept as true and the conclusory allegations it can disregard. Here, the Court first summarizes all of Ball-Bey's allegations, factual and conclusory, to provide context to the Court's analysis below.

Ball-Bey alleges that on August 19, 2015, Chandler and Vaughn, along with other police officers, went to a residence located at 1241 Walton Avenue in St. Louis to execute a search

warrant. Chandler and Vaughn, along with an ATF agent, were assigned to cover the backyard of the residence. Mansur and a 14-year old (whom the Amended Complaint does not otherwise identify), were walking in an alleyway behind 1241 Walton when they first made visual contact with Chandler and Vaughn. Ball-Bey alleges Chandler and Vaughn drew their guns and chased Mansur and the 14-year old. The 14-year old stopped running and hid behind an abandoned car while Mansur kept running southbound in the alleyway.

Ball-Bey alleges that Mansur turned in the backyard of 1233 Walton Avenue and began to run eastbound toward the front of the house. Chandler and Vaughn continued to chase him and fired multiple shots, striking Mansur once in the back. According to Ball-Bey, the gunshot wound severed Mansur's spinal chord causing him to fall face first in the front yard and die. Ball-Bey alleges Mansur was employed by UPS and was a youth leader at his church.

Ball-Bey alleges Chandler and Vaughn were driven, motivated, and protected as a direct result of Dotson's "Rec & Normal" policies. According to Ball-Bey, under the direction, supervision, and authority of the City Counselor's office, the City incorporated and enforced a blanket release practice and policy referred to as the "Rec Policy." Ball-Bey further alleges that SLMPD enacted the "Normal" policy in 2012,[4] when it updated a special order and trained officers to "normally" charge any resisting arrest charge in municipal court rather than state court when an offender does not use or threaten to use violence against the officer, i.e. the "Normal" policy.

---

[4] Ball-Bey alleges that "Rec" and "Normal" are both official policies (Doc. 21, ¶¶ 26, 51) but then refers to them as "practices and policies" (e.g. Doc. 21 at ¶ 57). For purposes of the Motion to Dismiss, the Court assumes that, to the extent Ball-Bey alleges that "Rec" and "Normal" are "practices," he sufficiently alleges they constitute a custom or usage with the force of law and analyzes them accordingly.

The written "Normal" policy states, in part:

Under normal circumstances, the defendant will be charged with a city ordinance violation of resisting arrest or interfering with an officer. The information application will be made at the City Counselor's Office.

The written "Rec" policy states, in part:

Resisting arrest & Interfering [sic] with a Police Officer charges <u>cannot</u> be amended without first obtaining a signed release from the defendant (See Sample).

Ball-Bey alleges as a "direct result of the Rec & Normal policies over the last two decades, the practices and policies of using excessive force and obfuscating or concealing the officer's conduct grew out of control." Ball-Bey claims the Rec & Normal polices caused a "distinct and clear pattern [to develop] of using unjustified force or illegally seizing and searching a citizen and claiming in written reports the accused victim, 'resisted arrest.'"

According to Ball-Bey, the Rec Policy requires the releasor to enter into a contract under the threat of criminal prosecution. Ball-Bey alleges he has not found a single case where a release agreement was legally enforced against a plaintiff in federal court. The release was created for its "psychological and marketing effects that resulted and continue to result, in censorship and prior restraints on accused victims to petition the courts for redress of civil rights violations." Ball-Bey claims the City has relied on these release agreements to act as legal immunity from civil rights claims without judicial oversight. Ball-Bey alleges prosecutors are motivated and base decisions to amend or dismiss charges solely on the Rec Policy. The City supervised, controlled, and trained the prosecutors on its blanket release policy, which has resulted in numerous, widely known and accepted practices of prosecutorial overreaching to obtain signatures on blank release forms or force falsely accused victims to trial, according to Ball-Bey.

Ball-Bey alleges the Normal policy is designed to push claims of excessive force to the municipal court, where municipal prosecutors are waiting to obtain a release of all civil claims. After a SLMPD officer is involved in a resisting arrest incident, the watch commander and higher ranking SLMPD officers make the ultimate decision on what charges to pursue. As a direct result of the Normal policy, Ball-Bey alleges the use of excessive force continues to be undetected, concealed, and obfuscated. The Rec & Normal policies created a "brutal" culture where the SLMPD use unjustified force any time an alleged offender walks away, runs, protests his or her innocence, or records officers violating the civil rights of others.

Ball-Bey alleges without the Rec policy, SLMPD's "tyrannical practices" could not and would not have been concealed. The policies concealed minor constitutional violations, and "over the course of decades the minor constitutional violations adapted into a method of intimidation and control[.]" Ball-Bey "defines SLMPD's widespread police misconduct as tyrannical practices" including the use of "excessive force when the accused victim runs, pulls away, or protests[,]" and "unlawful arrests to search and destroy evidence." The Complaint lists 14 examples of SLMPD "pattern cases" between 2013 through the present. Ball-Bey alleges the pattern and practices were so entrenched throughout the SLMPD that SLMPD officers beat an undercover officer "within an inch of his life" and claimed the officer resisted arrest. According to Ball-Bey, the common denominator in all of these cases is that the accused victim allegedly pulled away, ran, protested, or walked away, *i.e.*, resisted arrest.

## IV.   DISCUSSION

In the Motion to Dismiss, Municipal Defendants argue Ball-Bey's Complaint fails to state a claim for municipal liability. Specifically, Municipal Defendants claim Ball-Bey fails to plausibly allege that Chandler and Vaughn caused Mansur's death *because of* the release policy,

that the City was deliberately indifferent to a widespread pattern of unconstitutional misconduct, or that the City failed to train, supervise, or control its officers on the use of excessive force. Because the claims against Dotson in his official capacity are essentially claims against the City, the City asks the Court to dismiss the claims against Dotson for the same reasons.

### A.      Municipal Liability

Section 1983 of Title 42 allows individuals to bring causes of action for violations of the U.S. Constitution.  The section states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.  A municipality can be sued under § 1983 for an officer's misconduct where the misconduct is alleged to have implemented or executed a policy, ordinance, regulation, decision, or custom of the municipality.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  A municipality cannot be held liable under § 1983 on a *respondeat superior* theory.  *Id.* at 691.  When a plaintiff sues an officer in his/her official capacity, it "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id*. at 166.

In *Monell*, and subsequent cases, the Supreme Court "require[s] a plaintiff seeking to impose liability on a municipality under §1983 to identify a municipal 'policy' or 'custom' that *caused* the plaintiff's injury."  *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*, 436 U.S. at 694, *Pembaur v. Cincinnati*, 475 U.S. 469, 480-81 (1986), *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)) (emphasis added).

A plaintiff cannot establish liability by only identifying conduct properly attributable to the municipality; instead, a "plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the '*moving force*' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate *a direct causal link* between the municipal action and the deprivation of federal rights." *Id.* at 404 (emphasis added). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, *rigorous standards of culpability and causation must be applied* to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* at 405 (emphasis added); *see also Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 947 (8th Cir. 2017) ("The Supreme Court has set a high bar for establishing municipal liability under § 1983.").

Here, Ball-Bey alleges both "policies" and a "custom" – the "Rec & Normal" policies, and the YRYP custom. Doc. 21. Different analytical frameworks apply to municipal policies and customs. *Brown*, 520 U.S. at 404; *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). As the Eighth Circuit explained in *Mettler*, "a 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." 165 F.3d at 1204 (citing *Ware v. Jackson Cty.*, 150 F.3d 873, 880 (8th Cir. 1998)). In contrast, a "custom" is a "practice [that] is so widespread as to have the force of law." *Brown*, 520 U.S. at 404. The Court discusses these different analytical frameworks below, in the context of the applicable pleading standards for policies and customs. First, the Court will discuss the applicable pleading standard and then apply that standard to Ball-Bey's Complaint.

### 1.    Municipal Liability Pleading Standard under *Iqbal* and *Twombly*

Under the *Iqbal*/*Twombly* standard, a plaintiff must plead facts plausibly showing that the alleged policy or custom subjects the municipality to liability under *Monell*, *Canton*, and their progeny. *Iqbal*, 556 U.S. at 678-680. While courts recognize several different "policy" claims under §1983, Ball-Bey only alleges an "official policy" claim. *Szalba v. Brooklyn Park, Minn.*, 486 F.3d 385, 390 (8th Cir. 2007) (finding a municipality may be liable for an unconstitutional written policy, as in *Monell*, or when a plaintiff establishes a "policy" by "demonstrating that the inadequacies were a product of deliberate or conscious choice by policymakers"); Doc. 21, ¶¶ 26, 51. The elements of an "official policy" claim are: A deprivation of a plaintiff's constitutional rights that results from the municipality's official policy. It is not enough for plaintiff to show that the municipality employed a person who violated the plaintiff's rights. Plaintiff must show that the violation resulted from the municipality's official policy. 3rd Cir. Model Jury Instr. 4.6.3.

The elements of a "custom" claim are: "(1) existence of a continuing, widespread, persistent pattern of unconstitutional misconduct" by the municipality's employees; "(2) deliberate indifference to or tacit authorization of such conduct" by the municipality's officials after notice of the misconduct; and (3) the pattern of misconduct was the "moving force" behind the plaintiff's injury. *Mettler*, 165 F.3d at 1204.

### 2.    Application of the *Iqbal*/*Twombly* pleading standards to Ball-Bey's Complaint

As noted, Ball-Bey alleges that the combination of the Rec & Normal policies and the YRYP custom caused a deprivation of Mansur's constitutional rights. The Court must analyze the "official policy" claim and the "custom" claim separately. *Mettler*, 165 F.3d at 1204. The Court also must analyze the two separate causal links Ball-Bey alleges: (1) that the Rec &

Normal policies caused the custom of YRYP, and (2) that the YRYP custom caused Chandler and Vaughn to in-fact use excessive force on Mansur. Doc. 21. The Court must apply "rigorous standards of culpability and causation" to these separate causal links. *Brown*, 520 U.S. at 405.

Before analyzing the specific elements of Ball-Bey's claims, *Iqbal* instructs the Court to first identify the allegations in the Complaint not entitled to the assumption of truth, then to assume the veracity of the well-pleaded factual allegations, and finally, to determine if they plausibly give rise to an entitlement to relief. 556 U.S. at 679.

### a.    Conclusory Allegations

*Iqbal* instructs courts to begin the motion-to-dismiss analysis by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. at 679. In its analysis, the Court reviewed every allegation in Ball-Bey's Complaint to identify those that are "no more than conclusions" and those that are well-pleaded factual allegations.

Consistent with *Iqbal*, the Court does not state here *every* conclusory allegation in the 31-page complaint, instead giving the following as representative of the conclusions the Court does not assume as true: (1) "As a direct result of the Normal policies, the use of excessive force by SLMPD officers in resisting arrest cases charged in municipal court was and continues to be undetected, concealed, and obfuscated. This method of concealment was the motivating and driving force behind the SLMPD's tyrannical practices throughout the SLMPD"; (2) "As a direct result of the Rec & Normal practices and policies over the last two decades, the practices and policies of using excessive force and obfuscating or concealing the officer's conduct grew out of control"; and (3) "Today, those policies and practices created a brutal culture where SLMPD use unjustified force any time an alleged offender walked away, ran, protested his or her innocence,

or even recorded officers violating civil rights whether or not the offender was charged with violating Muni. Code. 15.10.10." Doc. 21, ¶¶ 56-58. These, and other allegations, lack "sufficient factual matter," and because they are no more than conclusions, they "are not entitled to the assumption of truth. *Iqbal*, 566 U.S. at 678, 679.

### b. Well-Pleaded Factual Allegations

Under *Iqbal*, the Court next assumes the veracity of Ball-Bey's well-pleaded factual allegations. 556 U.S. at 679. *Iqbal*, likewise, does not require the Court to state here every well-pleaded factual allegation in the lengthy complaint; the Court accordingly gives these examples of Ball-Bey's well-pleaded factual allegations that the Court assumes as true: The City and the SLMPD created, and enforced, the Rec & Normal policies. The prosecutor requires the releasor to enter into a contract under the threat of criminal prosecution. After a SLMPD officer is involved in a resisting arrest incident, the watch commander and higher ranking SLMPD officers make the ultimate decision on what charges to pursue. On August 19, 2015, Chandler and Vaughn chased Mansur down an alleyway. Mansur turned into the backyard of 1233 Walton Avenue and began to run towards the front of the house. Chandler and Vaughn fired multiple shots, striking Mansur once in the back. The gunshot wound severed Mansur's spinal chord causing him to fall face first in the front yard and die.

### c. Plausibility of Ball-Bey's Claim to Relief

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not shown – that the pleader is entitled to relief." *Id*. "That a plaintiff has suffered a deprivation of

federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the *employee* acted culpably." *Brown*, 520 U.S. at 406-07 (italics in original).

This Court focuses not on whether allegations are "extravagantly fanciful" but rather whether they "contain any factual allegation sufficient to plausibly suggest" that: a) the Rec & Normal policies were the "moving force" behind, or provided the "direct causal link" to, the YRYP custom, and b) the YRYP custom in turn was the "moving force" behind or provided the "direct causal link" to Chandler and Vaughn's conduct. *Iqbal*, 556 U.S. at 683; *Monell*, 436 U.S. at 694; *Canton*, 489 U.S. at 389.

### i.     Allegations of YRYP

To plead a plausible case of municipal liability based on a custom, Ball-Bey first must allege the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct" by the City's employees. *Mettler*, 165 F.3d at 1204; *see also Brown*, 520 U.S. at 404.  Because a municipality cannot be liable on a *respondeat superior* theory, "the pattern of unconstitutional conduct must be so pervasive and widespread so as to have the effect and force of law." *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (internal quotations and citations omitted).

In attempting to allege a pattern, Ball-Bey uses prior incidents of alleged misconduct. Doc. 21, ¶¶ 61-73.  The Eighth Circuit has not directly addressed the quantum of "continuing, widespread, persistent" conduct a plaintiff must allege to satisfy the *Iqbal* standard in this context, though it has held that isolated incidents do not suffice and that allegations of "many" incidents do establish liability. *Wilson v. City of N. Little Rock*, 801 F.2d 316, 322-23 (8th Cir. 1986); *Harris v. City of Pagedale*, 821 F.2d 499, 504 (8th Cir. 1987).  The Fifth Circuit held that

when a plaintiff uses prior incidents to allege a pattern, the prior incidents "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [the municipality's] employees." *Webster v. Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (*en banc*). In affirming summary judgment on an official policy claim, the Fifth Circuit stated that "[a] pattern requires similarity and specificity[,]" explaining that the prior incidents must point to the specific violation at issue, be sufficiently numerous, and provide context that would show a pattern. *Peterson v. Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009).

Both the Eighth and Fifth Circuits reason that to hold municipalities liable for conduct that does not rise to the level of continuing, widespread frequency would create the *respondeat superior* liability that the Supreme Court repeatedly rejected in §1983 actions. *Brewington*, 902 F.3d at 801; *Peterson*, 588 F.3d at 847-851. In *Pineda v. City of Houston*, cited approvingly by the Eighth Circuit in *Brewington,* the Court held that eleven incidents of police misconduct failed to establish an unconstitutional pattern. 291 F.3d 325, 329 (5th Cir. 2002)*,*

Without determining exactly how many instances or what details would suffice to plausibly plead a pattern of misconduct, the Court finds that Ball-Bey's allegations fail to do so. Ball-Bey alleges 14 instances of allegedly similar misconduct[5] over a six-year time period, an average of fewer than 2.5 instances per year for a police department serving a city with a population, during the relevant time period, of over 319,000, according to the 2010 U.S. Census. U.S. Dep't of Commerce, 2010 Census of Population and Housing (2012); *see also Town of Fletcher v. Hickman*, 165 F. 403, 406 (8th Cir. 1908) (taking judicial notice of the census data for the population of a city); *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th

---

[5] See section IV(A)(2)(d) for the Court's analysis on the similarity of Ball-Bey's allegations of prior incidents.

Cir. 2012) ("While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider . . . items subject to judicial notice, matters of public record . . .").

Ball-Bey fails to plead any facts creating the plausible inference that fewer than 2.5 instances per year over a six-year period, in a major metropolitan police department serving a city of over 319,000 residents, constitutes a pattern or practice. Publicly-available data[6] could provide necessary context to evaluate the plausibility of Ball-Bey's allegations. *Friends of Lake View Sch. Dist. Incorporation No. 25 of Phillips Cty. v. Beebe*, 578 F.3d 753, 762 n. 12 (8th Cir. 2009) (considering publicly-available data in deciding a plaintiff failed to state a claim upon which relief could be granted). With respect to the six-year period or otherwise, Ball-Bey fails to allege the population of the City, the number of officers on the SLMPD, the number of stops made or encounters involving SLMPD officers, the number of complaints, claims, or lawsuits asserting excessive use of force in similar circumstances, whether or how those complaints, claims, or lawsuits were resolved, or other publicly-available data from which the Court could "infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

Contrast Ball-Bey's Complaint with other cases where the plaintiffs did sufficiently allege a widespread practice. For example, in *Simpson v. Ferry*, the district court found that the plaintiff sufficiently pleaded a widespread practice of use of excessive force when the plaintiff included in the complaint statistics as to how many lawsuits were brought against the City of Philadelphia during a five-year period, how much in damages were paid for those lawsuits, and that approximately one-third of the lawsuits included allegations of excessive force. 202 F. Supp. 3d 444, 453 (E.D. Pa. 2016). And, in *Flanagan v. City of Dallas, Texas*, the district court

---

[6] The U.S. Census Bureau makes its data available on its website (http://factfinder.census.gov) and Missouri's Sunshine Law makes a host of information available to the public. *See* Mo. Rev. Stat. § 610.011.

found that the plaintiff sufficiently pleaded a widespread practice of use of excessive force when the plaintiff included in the complaint allegations that Dallas was at the top of the list of police misconduct statistics in the South, the total number of officer-involved shootings, the number of grand juries convened to investigate police misconduct, the number of unarmed individuals killed by Dallas police officers, and the number of open internal affairs investigations into officer-involved shootings. 48 F. Supp. 3d 941, 953 (N.D. Tex. 2014).

*Simpson* and *Flanagan* inform the Court's conclusion that Ball-Bey has not pleaded facts from which the Court can plausibly infer more than the mere possibility of widespread misconduct. Here, the Complaint includes conclusory allegations with no facts to support the conclusions. Ignoring Ball-Bey's conclusory allegations, *Twombly*, 550 U.S. at 555. *Iqbal*, 556 U.S. at 678, the Court finds that Ball-Bey fails to sufficiently plead a custom, pattern, or practice of use of excessive force by SLMPD officers against individuals protesting their arrests; Ball-Bey fails to sufficiently plead the YRYP custom.

ii. **Allegations of Causation**

To state a plausible claim for municipal liability under § 1983, Ball-Bey also must plead facts from which the Court can infer that: (1) the Rec & Normal policies were the "moving force" behind the YRYP custom; and (2) the YRYP custom was the "moving force" behind Chandler and Vaughn's use of force on Mansur. *Monell*, 436 U.S. at 694; *Canton*, 489 U.S. at 389; *see also Brown*, 520 U.S. at 404. As the Supreme Court stated: "our first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Canton,* 489 U.S. at 385. This is a "rigorous standard[] of causation." *Brown*, 520 U.S. at 404-05; *see also Connick v. Thompson*, 563 U.S. 51, 75 (2011) (Scalia, J., concurring).

Ball-Bey pleads no facts from which the Court can infer a direct causal link, instead he resorts only to conclusory allegations that "disentitles them to the presumption of truth[]." *Iqbal*, 556 U.S. at 681. Ignoring those conclusions, as the Court must, Ball-Bey's Complaint lacks any facts from which the Court can infer a "moving force/direct causal link" between the Rec & Normal policies and the alleged YRYP custom. Ball-Bey's Complaint similarly lacks any facts from which the Court could infer a "moving force/direct causal link" between the alleged YRYP custom and Chandler and Vaughn's conduct towards Mansur.

### d.     Failure to Plead a Pattern or Practice of Misconduct

As explained in section IV(A)(2)(c) above, Ball-Bey's well-pleaded allegations lack facts from which the Court can infer a pattern or practice of misconduct. But even if the Court were to accept all of Ball-Bey's allegations, factual and conclusory, as true, they still fail to establish a plausible claim to relief. Ball-Bey's allegations regarding the 14 instances do not include specifics to plausibly establish a widespread pattern of officers using excessive force against individuals who "protest unlawful arrests." For example, the first instance alleged states:

> July 23, 2017, SLMPD Officer Marcus Biggins discharged his weapon and charged the suspect with resisting arrest in violation of Muni Code. 15.10.10. The officer reported no injuries.

Doc. 21, pg. 15. This recitation includes no facts to establish excessive use of force, what caused the alleged excessive use of force, that the individual protested an unlawful arrest, that the individual was presented with a release agreement for civil liability, whether the individual signed the release, or whether the officer was ever investigated for his alleged misconduct. Ball-Bey's allegations about the other 13 instances similarly lack facts from which the Court could infer the conclusions Ball-Bey seeks to draw.

In contrast to the multiple instances, in small police departments, involving the specific officers who engaged in the improper conduct in the *Parrish*[7] case Ball-Bey cites, none of the 13 other instances Ball-Bey alleges involves Chandler or Vaughn in a police department serving over 319,000 residents; and, Ball-Bey fails to allege how long Chandler and Vaughn have been police officers, how many times Chandler and Vaughn have been accused of alleged excessive use of force, or other facts from which conclusions about any patterns to Chandler and Vaughn's conduct overall could plausibly be drawn. In short, Ball-Bey's allegations assert that officers used force against individuals, but he does not plead facts plausibly showing a pattern of unlawful use of excessive force. Put another way, Ball-Bey alleges in conclusory fashion, but "has not 'show[n]'— 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FRCP 8(a)(2)).

Ball-Bey next argues that *Town of Newton v. Rumery*, 480 U.S. 386 (1987), confirms release agreements can suppress, conceal, and establish customs of police misconduct. The *Rumery* case discusses the enforceability of a release agreement waiving an individual's right to bring a § 1983 suit. 480 U.S. at 392. Justice Powell, on behalf of a *plurality* of the justices, wrote that in some cases there may be a substantial basis for the concern that release agreements "tempt prosecutors to trump up charges in reaction to a defendant's civil rights claim, suppress evidence of misconduct, and leave unremedied deprivations of constitutional rights." *Id.* at 394.

In declining to hold release agreements *per se* unenforceable, the Court in *Rumery* reasoned that "criminal defendants are required to make difficult choices that effectively waive constitutional rights." 480 U.S. at 393 (internal citations omitted). "We see no reason to believe that release-dismissal agreements pose a more coercive choice than other situations we have

---

[7] *Parrish v. Luckie*, 963 F.2d 201 (8th Cir. 1992).

accepted." *Id.* (internal citations omitted). The Court continued: "In many cases a defendant's choice to enter into a release-dismissal agreement will reflect a highly rational judgment that the certain benefits of escaping criminal prosecution exceed the speculative benefits of prevailing in a civil action." *Id.* at 394. *Rumery* thus does not raise Ball-Bey's allegations to the level of plausibility.

### e.     Failure to Plead "Moving Force" Allegations

As explained in section IV(A)(2)(c)(ii) above, Ball-Bey's well-pleaded allegations lack facts from which the Court could infer the Rec & Normal policies were the "moving force" behind or had a "direct causal link" with the use of force. But even if the Court were to accept all of Ball-Bey's allegations as true, they still fail to establish a plausible claim to relief.

Using the framework applied in *Iqbal*, the Court finds Ball-Bey fails to allege facts sufficient to state a claim to relief that is plausible on its face because he fails to establish a direct causal link between the policies and Chandler and Vaughn's use of excessive force. Ball-Bey must allege facts to support his contention the Rec & Normal policies were the "moving force" behind the SLMPD's practice of excessive use of force and Chandler and Vaughn's excessive use of force against Mansur. Ball-Bey's complaint includes many conclusions that the policies caused the use of excessive force by SLMPD officers. But he fails to include specific facts to support those conclusions. Ball-Bey alleges that: (1) "As a direct result of the Normal policies, the use of excessive force by SLMPD officers in resisting arrest cases charged in municipal court was and continues to be undetected, concealed, and obfuscated. This method of concealment was the motivating and driving force behind the SLMPD's tyrannical practices throughout the SLMPD"; (2) "As a direct result of the Rec & Normal practices and policies over the last two decades, the practices and policies of using excessive force and obfuscating or concealing the

officer's conduct grew out of control"; and (3) "Today, those policies and practices created a brutal culture where SLMPD use unjustified force any time an alleged offender walked away, ran, protested his or her innocence, or even recorded officers violating civil rights whether or not the offender was charged with violating Muni. Code. 15.10.10." Doc. 21, ¶¶ 56-58. Accepting these conclusory allegations as true, they do not provide facts from which the Court could plausibly conclude that either the Rec & Normal policies caused the YRYP custom or that the YRYP custom caused Chandler and Vaughn's conduct towards Mansur.

**f.     Obvious Alternative Explanations**

In determining the plausibility of a plaintiff's claim, *Iqbal* and *Twombly* instruct the Court to consider whether "obvious alternative explanations" exist for the allegedly unconstitutional conduct. *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567. The Court must then determine whether the plaintiff plausibly alleges a violation of the law. *Id*.

Common sense and experience show that many "obvious alternative explanation[s]" exist for implementation of the Rec & Normal policies other than to conceal civil rights abuses. For example, the Rec & Normal policies may be driven by municipal economics. Prosecuting cases (resisting arrest or otherwise) in municipal court rather than circuit court may result in the City, rather than the State, receiving any fines imposed. *See* Mo. Rev. Stat. § 479.080 (fines and costs for violations of municipal ordinances are deposited into the municipal treasury); Mo. Rev. Stat. § 478.434 (fines imposed in circuit court for misdemeanors are deposited into the city treasury); Mo. Const. Art. 9, § 7 (fines paid for a breach of a state penal law are paid to school funds and distributed to the schools of various counties). Likewise, requiring a civil liability release as a condition of a plea bargain reduces the City's economic exposure and use of resources, including resources to defend cases. Other plausible explanations exist for both the Rec & Normal

policies, such as achieving efficiency in processing a high volume of municipal-court cases. The Court finds that Ball-Bey's allegations fall short of what would be required to establish, at the pleading stage, plausibility.

In this case, the Court also has to determine whether on the facts pleaded, "obvious alternative explanations" exist for Chandler and Vaughn's conduct. In *Twombly*, the Court examined obvious alternative explanations for the defendants' conduct in not competing with one another, and in *Iqbal* the Court examined obvious alternative explanations for both the conduct alleged (arrests of Arab Muslims) and the motivation for the arrests (whether or not it was the "purposeful invidious discrimination respondent ask[ed] the Court] to infer[.]"). 550 U.S. at 567-68; 556 U.S. at 682. Here, the Court would need to examine whether obvious alternative explanations exist for Chandler and Vaughn's conduct (the alleged excessive use of force) and for the "moving force" causing the conduct, but the Complaint contains few factual allegations from which the Court could do so. Even assuming no "obvious alternative explanations" exist for Chandler and Vaughn's conduct, the Court would nonetheless dismiss the Complaint as to the City and Dotson (in his official capacity) for failure to state a claim, as explained in sections IV(A)(2)(c)-(e), above.

**B.  Failure to Train of Supervise**

Municipal Defendants assert that Ball-Bey failed to plausibly allege a failure-to-train claim against the City and Dotson. Specifically, Municipal Defendants argue Ball-Bey fails to allege that a failure to train or supervise directly caused Chandler and Vaughn to use excessive force against Mansur and that Ball-Bey's examples of prior conduct are not similar enough to the conduct in this case for liability for a failure to train or supervise claim to attach.

To state a claim for supervisory liability under § 1983 for a failure to train or supervise, Ball-Bey must plead: (1) notice of a pattern of unconstitutional acts committed by subordinates; (2) deliberate indifference to or tacit authorization of those acts; (3) failure to take sufficient remedial action; and (4) proximate cause of the plaintiff's injury. *Livers v. Shenck*, 700 F.3d 340, 355 (8th Cir. 2012). A failure to train may serve as the basis for § 1983 liability where "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Canton*, 489 U.S. at 388. A court analyzes a claim for failure to supervise the same way it analyzes a claim for failure to train. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1216 (8th Cir. 2013).

When governmental policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the governmental entity may be deemed deliberately indifferent if the policymakers choose to retain that program. *Brown,* 520 U.S. at 407. The governmental entity's "'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the [governmental entity] itself to violate the Constitution.'" *Connick*, 563 U.S. at 60 (quoting *Harris,* 489 U.S at 395 (O'Connor, J. concurring in part and dissenting in part)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id*. at 62.

Ball-Bey alleges four areas in which the City failed to train and supervise Chandler and Vaughn: (1) the proper use of firearms, (2) the use of department-issued firearms and weapons on unarmed law-abiding citizens, (3) to stop using force to limit the amount of harm caused when no threat to the officer or others exists, and (4) to not use deadly force on a citizen when no danger to the life of the officer or others exists. Ball-Bey does not include any facts to support

his conclusion that the City failed to train Chandler and Vaughn in these areas. Ball-Bey also fails to allege any facts as to what the SLMPD training program includes or does not include. Without facts about the training Chandler and Vaughn did or did not receive, Ball-Bey fails to sufficiently plead that a failure to train or supervise caused the constitutional violation. As currently pleaded, Ball-Bey's Complaint assumes because Chandler and Vaughn allegedly committed a constitutional violation, they must not have been trained properly. But assuming, as the Court must, that Chandler and Vaughn used excessive force against Mansur, not every instance of excessive use of force establishes deliberate indifference by the City. *Connick,* 563 U.S. at 62. Ball-Bey must plead facts specific to the SLMPD's training program. *Id.* (Holding that "[w]ithout notice that a course of training is deficient in a *particular* respect" a decisionmaker cannot be liable for failure to train) (emphasis added).

Further, for the same reasons that Ball-Bey's 14 instances of purportedly similar conduct fail to establish a pattern or practice of use of excessive force, those instances also fail to establish a pattern of constitutional violations of which policy-making officials can be charged with knowledge of a failure to train their employees. *Canton*, 489 U.S. at 390. For these reasons, Ball-Bey fails to sufficiently plead a claim of failure to train against the City, and consequently, against Dotson in his official capacity.

C.      **Redundant Claims**

Finally, Municipal Defendants argue Ball-Bey's official-capacity claim against Dotson is redundant of the claims against the City. The Court need not address this argument because it dismisses the claims against the City, and Dotson in his official capacity, for the reasons stated above.

Giving the Complaint its broadest reading, Ball-Bey possibly asserts a claim in Count I against Chandler and Vaughn in both their official and individual capacities. To the extent that Ball-Bey asserts the claim in Count I against Chandler and Vaughn in their official capacities, the Court dismisses the claim. When a plaintiff sues an officer in his official capacity, it "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id*. at 166. Therefore, because the Court dismisses the claims against the City, it also dismisses the official capacity claim against Chandler and Vaughn. The claim in Count I against Chandler and Vaughn in their individual capacities remains.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant City of St. Louis and D. Samuel Dotson's Motion to Dismiss Counts I, II, IV and IV [25] is **GRANTED**. The Court dismisses all claims against the City, and the claims against Dotson in his official capacity.

So Ordered this 14th day of November, 2019.

_____

**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**