```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION
```

| | |
|---|---|
| DENNIS BALL-BEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:18-CV-01364-SPM |
| | ) |
| CITY OF ST. LOUIS, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Leave to Amend. (Doc. 59). Defendants have filed a Memorandum in Opposition to Plaintiff's Motions to Amend the Complaint. (Doc. 63), and Plaintiff has filed a Reply (Doc. 65). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Doc. 12). For the following reasons, Plaintiff's motion will be granted.

### I. BACKGROUND

#### A. Plaintiff's First Amended Complaint

On January 3, 2019, Plaintiff Dennis Ball-Bey filed the First Amended Complaint in this case (Doc. 21), alleging that in August 2015, two police officers with the St. Louis Metropolitan Police Department (Kyle Chandler and Ronald Vaughn) shot Plaintiff's unarmed son (Mansur Ball-Bey) in the back while he was running away from them, resulting in his death. Plaintiff asserted five claims: (I) use of excessive force in violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983, against Chandler and Vaughn in their official and individual capacities; (II) wrongful death/assault and battery pursuant to Missouri Revised Statute §§ 537.080(1) and 516.120 against Chandler and Vaughn in their individual and official capacities;

1

(III) failure to train, supervise, and control in violation of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 against Sam Dotson, former Chief of Police of the City of St. Louis, and the City of St. Louis; (IV) failure to train, supervise, and control against Dotson in violation of 42 U.S.C. § 1983; and (V) municipal liability under 42 U.S.C. § 1983 against the City and Dotson. (Doc. 21).

The basis for Plaintiff's claim of municipal liability was his allegation that the City of Saint Louis has two policies and a custom that were the driving force behind the shooting of his son. Under the written "Normal Policy," defendants accused of resisting arrest are normally charged with a municipal ordinance violation, for which public defenders are not provided, instead of a state misdemeanor charge. Under the written "Rec Policy," prosecutors will not amend a municipal resisting arrest charge unless the accused person signs a release of all civil claims against the City. Plaintiff alleged that under these policies, the use of excessive force by SLMPD officers in "resisting arrest" cases has been concealed and shielded from judicial oversight, because suspects are forced to release their excessive force claims or face a criminal resisting arrest charge. Plaintiff also alleged that, as a direct result of the Rec and Normal Policies, a custom developed under which SLMPD officers use unjustified force and/or make unlawful arrests for the purpose of seizing evidence any time an alleged offender walks away, runs, or protests his or her innocence. This custom is referred by as the "SLMPD tyrannical practices" or as the "You Run, You Pay" ("YRYP") custom. To support the existence of the YRYP custom, Plaintiff alleged fourteen prior incidents of alleged misconduct, including five instances in which an officer discharged a weapon and charged a suspect with resisting arrest and three instances in which officers shot at suspects running away. Plaintiff alleged that Mansur was shot by Defendants Chandler and Vaughn as a result of these tyrannical practices, and the practices "were created, motivated, protected, and

encouraged directly and indirectly by Defendants' Rec & Normal policies and practices." 1st Am. Compl. at ¶ 76.

The basis for Plaintiff's failure to train, supervise, and control claims was Plaintiff's allegation that Defendant Dotson and the City failed to train and supervise Defendants Chandler and Vaughn in the proper use of firearms and in not using deadly force on a citizen when lives are not in danger. Plaintiff also alleged that Dotson and the City were deliberately indifferent to several obvious patterns and practices under which officers used deadly force to effectuate arrest violations in the absence of any threat to officer safety.

Defendants City and Dotson filed a motion to dismiss all of the claims against them for failure to state a claim. After that motion was filed, the Honorable Stephen R. Clark, United States District Judge, consolidated the instant case with several similar cases for purposes of resolving the motion to dismiss. (Doc. 50). On November 14, 2019, Judge Clark entered a Memorandum and Order granting the motion and dismissing Counts III, IV, V, as well as the official capacity claim in Count I. (Doc. 51). Judge Clark subsequently unconsolidated the cases. (Doc. 52).

In dismissing the municipal liability claim (Count V), Judge Clark recognized that the elements of a "custom" claim are "'(1) existence of a continuing, widespread, persistent pattern of unconstitutional misconduct' by the municipality's employees; '(2) deliberate indifference to or tacit authorization of such conduct' by the municipality's officials after notice of the misconduct; and (3) the pattern of misconduct was the 'moving force' behind the plaintiff's injury." Mem. & Order, Doc. 51, at 10 (quoting *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999)). Judge Clark found that the fourteen instances alleged by Plaintiff over a six-year time period, occurring in a city of 319,000 residents, did not plausibly suggest the existence of a widespread, persistent pattern of unconstitutional misconduct. *Id.* at 14-15. Judge Clark noted that Plaintiff had not

alleged the population of the City; the number of officers in the SLMPD; the number of stops made or encounters involving SLMPD officers; the number of complaints, claims, or lawsuits asserting excessive use of force in similar circumstances and how those were resolved; or other publicly available data from which the Court could infer misconduct. *Id.* at 15. Judge Clark contrasted Plaintiff's allegations with those made in *Simpson v. Ferry*, 202 F. Supp. 3d 444, 453 (E.D. Pa. 2016), in which the court found sufficient allegations of a widespread practice of excessive use of force where the plaintiff included statistics about the number of lawsuits brought against a city during a five-year period, how much in damages had been paid for those lawsuits, and that one-third of those lawsuits had included allegations of excessive force. Mem. & Order, Doc. 51, at 15. He also contrasted the instant case with *Flanagan v. City of Dallas, Texas*, 48 F. Supp. 3d 941, 953 (N.D. Tex. 2014), in which the court found sufficient allegations to show a widespread practice of use of excessive force where the plaintiff alleged that Dallas was at the top of the list of police misconduct statistics in the South and alleged the total number of officer-involved shootings, the number of grand juries convened to investigate police misconduct, the number of unarmed individuals killed by Dallas police officers, and the number of open internal affairs investigations into officer-involved shootings. Mem. & Order, Doc. 51, at 15-16. Judge Clark also pointed out that in the fourteen prior incidents identified, Plaintiff did not allege facts to show that the force used was excessive, what caused the alleged use of force, or that the individuals involved had protested unlawful arrests. *Id.* at 17. Finally, Judge Clark noted that Plaintiff had not alleged how long Chandler and Vaughn had been police officers, how many times they had been accused of alleged excessive use of force, or other facts from which conclusions about patterns to Chandler's and Vaughn's conduct could be drawn. *Id.* at 18. Judge Clark also found that Plaintiff had not pleaded sufficient facts to show a causal link between the Rec & Normal policies and the alleged

4

custom or a direct causal link between the alleged YRYP custom and Chandler and Vaughn's killing of Plaintiff's son. *Id.* at 16-17, 19-20.

In addressing Plaintiff's failure to train or supervise claims (Counts III and IV) Judge Clark held that Plaintiff did not include any facts to support his conclusion that the City failed to train Chandler and Vaughn in the areas identified, did not allege any facts about what the SLMPD training program includes or does not include. *Id.* at 22-23. In addition, Judge Clark found that for the same reasons that Plaintiff's fourteen instances of purportedly similar conduct failed to establish a pattern or practice of use of excessive force, they failed to establish a pattern of constitutional violations of which policy-making officials can be charged with knowledge of a failure to train their employees. *Id.* at 23.

On November 16, 2019, Plaintiff requested a telephone conference with the Court, and at that telephone conference, Plaintiff sought leave to file an amended complaint. The Court did not grant leave to amend the complaint, but did enter an order giving Plaintiff until January 21, 2020 to file a motion for leave to amend, along with a proposed amended complaint. (Doc. 22).[1] Plaintiff filed a motion for extension of time, which the Court granted. (Doc. 58). On February 4, 2020, Plaintiff filed the instant motion for leave to file an amended complaint. (Doc. 59). On February 28, 2020, Defendants filed a response opposing the motion. (Doc. 63). On March 6, 2020, Plaintiff filed a reply. (Doc. 65).

**II.    LEGAL STANDARD FOR MOTION FOR LEAVE TO AMEND COMPLAINT**

A motion for leave to amend that is filed after the deadline for filing motions for amendment of pleadings has passed "implicate[s] both Rule 15(a) and Rule 16(b)." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). Under Rule 16(b), "[a] schedule may

---

[1] The original deadline for amendment of pleadings was April 4, 2019.

be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b). A plaintiff must demonstrate good cause according to Rule 16(b)(4) before pleadings can be amended after the scheduling deadline. *See Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 947-48 (8th Cir. 2012).

Under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a court "may properly deny a party's motion to amend its complaint when such amendment would unduly prejudice the non-moving party or would be futile." *Popaolii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008). "An amendment is futile if 'the amended [pleading] could not withstand a motion to dismiss pursuant to Rule 12, Fed. R. Civ. P.'" *Trademark Med., LLC v. Birchwood Labs., Inc.*, 22 F. Supp. 3d 998, 1002 (E.D. Mo. 2014) (quoting *Lexington Ins. Co. v. S & N Display Fireworks, Inc.*, No. 1:11-CV-40-CEJ, 2011 WL 5330744, at *2 (E.D. Mo. Nov. 7, 2011)). "The party opposing such amendment ha[s] the burden of establishing that leave to amend would be prejudicial or futile." *Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 396 (E.D.N.Y.1998) (citation omitted).

### III. DISCUSSION

#### A. Good Cause Exists Under Rule 16(b)(4) for Plaintiff's Motion for Leave to Amend After the Deadline

The Court first considers whether Plaintiff has shown good cause for amending pleadings after the deadline established in the Case Management Order. According to the Case Management Order, the deadline for motions for amendment of pleadings was April 4, 2019. The Court's November 2019 order set a new deadline for Plaintiff to file a motion for leave to amend, and Plaintiff's motion was filed within that time frame (with one additional extension granted by the Court). However, the Court did not perform a Rule 16(b)(4) good cause analysis in the November

6

2019 order. Although neither party addresses Rule 16(b)(4), in the interest of completeness, the Court will perform that analysis here.

The Court first finds that Plaintiff has established good cause for seeking leave to amend his complaint after the deadline, as required under Rule 16(b)(4). "The primary measure of good cause is the movant's diligence in attempting to meet the [scheduling] order's requirements" *Harris v. FedEx Nat. LTL, Inc.*, 760 F.3d 780, 786 (8th Cir. 2014) (quoting S*herman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716-17 (8th Cir. 2008). Judge Clark's order granting the motion to dismiss was not entered until several months after the deadline for moving to amend pleadings expired. Only two days after Judge Clark entered that order, Plaintiff sought a telephone conference with the Court at which Plaintiff sought leave to amend the complaint. Plaintiff then sought and received one additional extension of time before filing the instant motion for leave. Under these circumstances, the Court finds that Plaintiff acted with diligence in attempting to satisfy this Court's order, and good cause exists for the delayed filing.

### B.  Justice Requires Granting Leave to Amend Under Rule 15(a)

In support of his Motion for Leave to Amend, Plaintiff attaches a proposed amended complaint (the "Proposed Second Amended Complaint")[2] and argues that new allegations in the Proposed Second Amended Complaint address the deficiencies identified in Judge Clark's Memorandum and Order. The new allegations include the following: allegations that Plaintiff has uncovered 650 executed settlement agreements stored in boxes at the SLMPD, 94% of which settled allegations for excessive force, unlawful searches, and seizures arising from the specific charge of "resisting arrest"; that between 2013 and 2014, 169 individuals were charged with

---

[2] The document is titled "First Amended Complaint," but because Plaintiff has already filed an amended complaint, the Court will refer to this as the Proposed Second Amended Complaint.

resisting arrest and secretly settled claims for allegations including excessive force and unlawful seizure arising from their arrest for running away (Plaintiff lists each of these incidents by name and date, and 46 of the incidents involved discharge of a firearm); that between 2012 and 2014, there were 183 firearm discharges by SLMPD police, half of which occurred during foot chases where the offender was alleged to have resisted; that between 2008 and 2011, officers fired at suspects in 97 incidents, including 58 involving unarmed suspects; that there were 230 police shootings between 2003 and 2012, and they were concentrated in a small number of St. Louis neighborhoods, including the neighborhood where Plaintiff's son was shot (Fountain Park); that Plaintiff identified three instances in the Fountain Park neighborhood in 2012 through 2013 in which officers fired weapons and offenders were charged with resisting arrest in municipal court and signed a release; that by 2017, reporting showed that St. Louis police led the nation in the rate of police shootings; that the former municipal division attorney manager, Craig Higgins, stated that the City seeks to obtain a settlement release in cases where "physicality" is involved and that "if a person says you're under arrest and you start running away, and now they catch you and beat you down," he would issue a resisting arrest case, "but since I now know that was a beat down after the fact, I may be more amenable to say well, if you wanna take a release, I'll dismiss the charges"; that Defendants were on notice that officers were beating suspects and discharging their firearms because suspects ran away; that Defendants were fully aware of the allegations of excessive force in these agreements; and that Defendants failed to investigate any of the facts underlying any of these executed release agreements. Additionally, Plaintiff added some allegations in the failure to train or supervise section, alleging that Defendant had a duty to train Defendants Chandler and Vaughn on the proper use of force when an offender runs, that Dotson failed to properly institute training and policies to prevent the use of deadly force when an offender

8

runs, that Dotson failed to properly train officers on charging resisting arrest, and that Dotson was deliberately indifferent to numerous obvious patterns and practices, including a common custom, pattern, and practice of using deadly force to effectuate resisting arrest violations, with no threat to the officer's safety; and a common custom, pattern, and practice of concealing civil rights violations through charging municipal resisting arrest or interference with a police officer.

Plaintiff argues that his new allegations of hundreds of release agreements, police shooting statistics, allegations of the concentration of police shootings in a few neighborhoods (including Fountain Park), and statements by City officials, show the existence of a widespread YRYP custom that was a moving force behind the shooting and death of his son. Plaintiff argues that his allegations in this case are now very similar to the allegations in *Simpson v. Ferry*, 202 F. Supp. 3d 444, 453 (E.D. Pa. 2016), which Judge Clark used as an example of a case in which the plaintiff *did* adequately plead a pattern or practice of use of excessive force, and a case in which the court found sufficient allegations of causation to survive a motion to dismiss.

In their opposition, Defendants argue that amendment would be futile, because "there is no allegation that any of the conduct in [the new cases identified by Plaintiff] was similar to the case at hand," and the additional allegations are made "without any factual content" and with "no factual allegations that provide context to any of the alleged instances in which criminal defendants signed release agreements." Def.'s Sugg. Opp., Doc. 63, at 3. They argue that the new allegations "do not provide the Court with a basis from which an inference can be drawn that there is an unconstitutional policy, let alone that it was the moving force in the actions at issue in this case." They argue that if Plaintiff is granted leave to amend his complaint, "the outcome will likely be the Court dismissing the very same allegations under a nearly identical analysis." *Id.*

9

Although it is a close call, the Court finds that Plaintiff has met its burden of showing that justice requires granting leave to amend, and that Defendants have not met their burden of showing that the proposed amendment would be futile. Central to Judge Clark's order was his finding that the fourteen instances of excessive identified by plaintiff, occurring over a five-year-period in a large city, did not establish a widespread custom or practice. Plaintiff's new allegations, which involve releases of hundreds of settlements releasing excessive force claims in "resisting arrest" cases and dozens of cases in which officers discharged weapons at unarmed suspects, at least arguably address that issue. Plaintiff has also now included allegations of city-wide shooting statistics and neighborhood-specific shooting and other incident information. Although the new factual allegations include few details regarding the specific incidents in question, these allegations bring Plaintiff's allegations much closer to the cases Judge Clark used for comparison in his order—*Simpson v. Ferry* and *Flanagan v. City of Dallas, Texas*, 48 F. Supp. 3d 941, 953 (N.D. Tex. 2014). Significantly, in their very short opposition brief, Defendants do not discuss the specific findings in Judge Clark's order and do not specifically address how the new factual allegations in the Proposed Second Amended Complaint do or do not address those findings. They also do not discuss how the new allegations compare to the allegations in *Simpson*, *Flanagan*, or any other cases addressing what factual allegations are sufficient to state a claim for municipal liability based on a pattern and practice of excessive use of force or failure to train or supervise.

To the extent that Defendants contend that Plaintiffs have failed to state a claim in the Proposed Second Amended Complaint even with the new allegations, that contention should be resolved on a fully-briefed motion to dismiss—supported by appropriate case law, discussions of Judge Clark's specific holdings, and discussions of Plaintiff's new allegations in light of the elements of each claim asserted.

### IV. CONCLUSION

For all of the reasons above, the Court finds that justice requires permitting Plaintiff to amend his complaint. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Leave to Amend Pursuant to Fed. R. Civ. P. 15(a)(2) (Doc. 59) is **GRANTED.**

**IT IS FURTHER ORDERED** that the parties must meet and confer (by telephone or video conference) and submit a proposed Amended Case Management Plan no later than **May 22, 2020.** The undersigned will hold a video or telephone scheduling conference on **Tuesday, June 2, 2020, at 10:00 a.m.**, in the chambers of the undersigned. Conference participants will receive an email with dial-in instructions in advance of the hearing.

_____<br>
SHIRLEY PADMORE MENSAH<br>
UNITED STATES MAGISTRATE JUDGE

Dated this 8th day of May, 2020.