**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| **DENNIS BALL-BEY** | * | |
| Plaintiff, | * | |
| | * | Case No. :18-CV-01364 |
| v. | * | |
| | * | |
| **KYLE CHANDLER,** | * | |
| **RONALD VAUGHN,** | * | |
| **FORMER POLICE CHIEF SAM** | * | |
| **DOTSON, and** | * | |
| **CITY OF ST. LOUIS et al.,** | * | |
| Defendants. | * | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER TO CHANGE DEPOSITION LOCATION FOR DEFENDANTS VAUGHN AND CHANDLER**

NOW COMES Plaintiff Dennis Ball-Bey ("Plaintiff"), filing his response in opposition to Defendants' Chandler and Vaughn, ("Defendants") Motion for Protective pursuant to Fed. R. Civ. P. 26 (c) (1) B, to change the location of Defendants' Vaughn and Chandlers' deposition. (ECF #151). In support of his opposition, Plaintiff avers the following:

**INTRODUCTION**

Defendants Chandler and Vaughn's motion does not even attempt to show the relevant legal factors[1] required to obtain a protective order to change a deposition location. The burden is upon the movant to show the necessity of its issuance, which contemplates "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Wright & Miller*, Federal Practice and Procedure: Civil § 2035 at 264-65. Here, Defendants

---

[1] In exercising its discretion concerning where a deposition should be held, courts can consider all relevant factors. *DeepGulf, Inc. v. Moszkowski,* 330 F.R.D. 600, 609–11 (N.D. Fla. 2019).

provided conclusory statements based on a perceived stereotype without bothering to file a legal memorandum in violation of L.R. 4.01.

The notion that Plaintiff's Counsel's office, located in a primarily African American neighborhood, presents a "danger" of retaliation to these Defendants is riddled with a subconscious paradox, particularly when these Defendants patrol African American communities in search of the most "dangerous" individuals. The Defendants have not presented a single fact to suggest that *anyone* was and/or will be in danger. Defendants have not discussed a "hardship" in appearing at Plaintiff's counsel's office. "…[T]ypically the examining party designates the location of a deposition. However, a Protective Order may be issued to change the location of a deposition when a legitimate hardship is shown." *McArthur v. Rock Woodfired Pizza & Spirits,* 318 F.R.D. 136, 139 (W.D. Wash. 2016).  The Defendants' opposition is purely, a "personal" preference based on feelings not fact. ("…Defendants are uncomfortable having privileged conversations within the offices of opposing counsel." (ECF # 151, Def. Mtn. p. 2)).

On the other hand, Plaintiff's counsels require their full office due to exhibits, files, and personnel in prosecuting Mr. Ball-Bey's *Monell* claim. Plaintiff's need for Vaughn and Chandler's deposition to occur at Plaintiff's Counsel office is a proper legal factor for the Court to consider and outweighs Defendants' conclusory statements which lack any factual or legal support.

Accordingly, Defendants' Motion for Protective Orders should be denied, and the Court should award costs pursuant to Fed. R. Civ. P. 26(c) (3) and Rule 37 (a) (5) in responding to this motion.

## FACTUAL OVERVIEW

On August 20, 2021, after being served with Chandler and Vaughn deposition notice, Defendants sent Plaintiff's counsel an email claiming they were forced to go outside and did not have adequate office space during the deposition held on August 19, 2021. (Ex. 1). Plaintiff responded that Defense counsels never once mentioned they wanted a private office space, but Plaintiff would certainly accommodate that request or provide the conference room to Defendants. (*Id.*). In response, Defendants then claimed they do not want to have privilege conversations in any office provided by opposing counsel—thus abandoning the first reason for changing the deposition location. (*Id.*).

After further discussions between the Parties, Plaintiff advised that they needed their office for logistic reasons and their office provided greater Covid 19 protections. (*Id.*). It should be noted, that on November 19, 2020, the Parties had a status conference with the Court because <u>Defendants</u> opposed in-person depositions without proper Covid-19 precautions. (ECF #105). Plaintiff expended great lengths to accommodate the Defendants by requiring industrialized cleaning before depositions, and direct access from vehicles to the conference room. (Ex. 3). Due to previous disputes regarding Covid-19 concerns, Plaintiff always believed that Defendants chose to confer outside for safety reasons, although the conference room remained open and private to the Defendants.

Now, Defendants seek a protective from coming to Plaintiff's counsel office because they are "uncomfortable;" and (2) fear retaliation.[2] The Defendants provide no affidavit, no declaration,

---

[2] "Defendants and their counsel anticipate the need to confer prior to and during breaks throughout the course of the depositions, and Defendants are uncomfortable having privileged conversations within the offices of opposing counsel." (ECF #151, p. 2).

and no supporting evidence of any threat. (*See generally,* ECF #151). Defendants motion for protective order is based on "personal preferences."

This Court has now weighed in on various logistical disputes which ultimately were frivolous, dilatory, and extremely exhausting for the Plaintiff. For example, after months of delay, a motion to compel, oral arguments, and hours of briefing and attorney time because Defendants wanted to be present during Plaintiff's expert's inspection of Vaughn and Chandler's weapon—***no City employee or police officer even entered Plaintiff's expert's lab, stayed in the lobby, or in the area.*** The entire dispute was a dilatory distraction, and the exchange of evidence occurred as normal evidence technician practice just as Mr. Garrison stated in his affidavit. (*See* ECF #124-1, Affidavit of Todd. Garrison, ¶¶6-9 ("At no time were any SLMPD agents or crime lab personnel present during my ballistics testing of evidence submitted when previously employed by the MSHP CLD.").

Likewise, the Defendants refused for nearly 10 months to produce emails, but upon further review changed its mind and agreed to produce responsive emails after all briefing completed. (*See* ECF #143, ("the city anticipates producing a number of emails."). Plaintiff welcomes the Court to inquire of Plaintiff to provide numerous disputes in which Defendants forced Plaintiff to exhaust time and energy, only for the Defendants to alter their position months later.[3]

---

"In addition, it will be necessary for Defendants to use personal vehicles to travel to their depositions. Defendants fear the possibility of retaliation or harassment if their license plate numbers, or vehicles are observed while present at opposing counsel's offices for a deposition in a lawsuit concerning a widely publicized officer-involved shooting that sparked days of protest." (*Id.*).

[3] In fact, the Plaintiff must file a response to Defendants' protective order claiming that J. Doe was a secret witness, and the testimony should be sealed. However, Defendants waited until ***during and after*** the deposition to make this claim causing significant delays, expending resources and time. (*See,* L.R. 3.04 (B) "Any motion relating to a deposition…for a protective order, shall be filed <u>before</u> the deposition date unless a belated notice of deposition renders this deadline impracticable."). Moreover, the Court may notice that Defendants' motion fails to comply with L.R. 13.05 by failing to file the requested documents under seal. *See Rule 13.05 4 (b) (ii).*

Therefore, Plaintiff requests that this Court deny Defendants' motion for protective order, which also fails to comply with L.R. 4.01 in filing a supporting memorandum, and order that Defendants pay attorneys' fees pursuant to Fed. R. Civ. P. 26 (c) (3) in responding to this motion,

## LAW

Rule 26(c)(1) of the Federal Rules of Civil Procedure authorizes a court to issue orders concerning discovery to protect parties from "annoyance, embarrassment, oppression, or undue burden or expense" on a showing of good cause. "Although the federal rules permit liberal discovery, it 'is [to be] provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes.'" *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2,* 197 F.3d 922, 925 (8th Cir. 1999) (quoting *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 34 (1984)).

"Because of liberal discovery and the potential for abuse, the federal rules 'confer [] broad discretion on the [district] court to decide when a protective order is appropriate and what degree of protection is required.'" *Id*. (quoting *Seattle Times,* 467 U.S. at 36). The moving party has the burden to demonstrate good cause for issuance of the protective order and his claim of harm is based on more than stereotypical and conclusory statements. Id. at 926 (citing *General Dynamics Corp. v. Selb Mfg. Co.,* 481 F.2d 1204, 1212 (8th Cir. 1973)).

Fed. R. Civ. P. 26(c) requires that "good cause" be shown for a protective order to be issued. The burden is therefore upon the movant to show the necessity of its issuance, which contemplates "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements * * *." Wright & Miller, Federal Practice and Procedure: Civil § 2035

---

Defendants' motions, objections, and failures to comply with federal and local rules are extremely burdensome on Plaintiff and their counsels.  (*See also, ECF # 136 cf.* 140; and ECF # 143, (overruling Plaintiff's objection for Defendants' request for extension of time to produce a proper privilege log)).

at 264-65. Such determination must also include a consideration of the relative hardship to the non-moving party should the protective order be granted. *Gen. Dynamics Corp. v. Selb Mfg. Co.,* 481 F.2d 1204, 1212 (8th Cir. 1973).

## ARGUMENT

A. There Is No Hardship to the Defendants.

"In determining whether to issue a protective order, courts apply a balancing test to determine whether good cause has been shown, weighing the moving party's interest in the protective order against the opposing party's interest in obtaining the information at issue." *Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 256 (D. Minn. 2021). "…[T]ypically the examining party designates the location of a deposition. However, a Protective Order may be issued to change the location of a deposition when a legitimate hardship is shown." *McArthur v. Rock Woodfired Pizza & Spirits,* 318 F.R.D. 136, 139 (W.D. Wash. 2016). In exercising its discretion concerning where a deposition should be held, courts can consider all relevant factors. *DeepGulf, Inc. v. Moszkowski,* 330 F.R.D. 600, 609–11 (N.D. Fla. 2019). As the district court in *DeepGulf, Inc.,* explained these factors might include:

> (1) the citizenship, location, and convenience of the deponent;
>
> (2) the citizenship, location, and convenience of the parties;
>
> (3) the location and convenience of the attorneys for the parties and for the deponent;
>
> (4) the plaintiff's preferred site for the deposition;
>
> (5) the defendant's preferred location of the deposition;
>
> (6) whether it would be impossible or fundamentally unfair to make the deponent travel to the location chosen by either party;
>
> (7) whether the plaintiff and/or defendant chose the forum for the civil action or whether the law compelled the venue;[6]
>
> (8) whether a defendant has also filed a counter claim against the plaintiff in the relevant forum and, if so, whether the counterclaim was permissive or compulsory under Rule 13(a);

(9) if one of the parties is a business, its size, principal place of business, and geographic scope—including whether it does business in multiple locations and the location selected for the deposition;

(10) the relative economic strength of the parties and whether payment of travel expenses would pose an undue burden for a particular party, and whether granting a party additional time to raise funds would permit the party to fund travel for a deposition;

(11) the costs associated with holding the deposition in a particular place;

*(12) the inconvenience posed by a particular site (for example, if a large number of documents would need to be transported to the location);*

(13) the nature of the claims at issue in the action and their weight relative to the cost of conducting a deposition at a particular location;

(14) expeditious resolution of the case;

(15) whether multiple deponents can be deposed at a particular site on a single day such that holding a deposition for a single witness elsewhere would be highly inefficient;

(16) whether the deponent is an officer or employee of a company that is a party to the suit and his relative rank in the company;

*(17) whether conducting a deposition at a particular location would disrupt important business or governmental functions because the deponent is a corporate or government official with significant official duties;*

*(18) the breadth and weight of the information the deponent likely possesses;*

(19) whether a party or the deponent's employer has offered to cover the costs associated with travel to the proposed deposition site;

*(20) whether the deponent frequently or periodically travels to or near the proposed deposition site*;

(21) whether the court has the ability to compel the deponent to appear in the forum or the proposed deposition site;

*(22) the inconvenience to either party;*

(23) the relationship of the parties to the deponent;

(24) whether the welfare of a deponent would be compromised by the rigors of travel (due to poor health or advanced age);

(25) the difficulty of traveling to a particular location due to a lack of transportation infrastructure and means of transportation available to the parties and deponents;

*(26) whether natural disasters, weather, economic or political strife makes a particular location dangerous or unsuitable for conducting a deposition;*

*(27) whether it appears that a deposition site was chosen to harass or inconvenience the deponent or an opposing party, and the good faith or bad faith of the party selecting a site;*

(28) whether either party made an effort to select a compromise site;

(29) whether significant discovery disputes are likely to arise that will require court supervision or intervention—thus suggesting that for the sake of judicial economy the deposition should take place near the forum;

> ***(30) whether sufficient alternatives to an "in person" deposition exist, such as a telephonic deposition, submission of written questions; or a video conference;***
>
> (31) whether the services of a linguist, interpreter, or stenographer are required and the feasibility of obtaining one at a particular site; and
>
> (32) whether the witness, parties, or attorneys can secure the requisite travel documents and permission from relevant governments.[4]

This list simply illustrates that the court's decision regarding the location of a deposition is a fact-intensive one and "each application must be considered on its own facts and equities." *DeepGulf, Inc. v. Moszkowski,* 330 F.R.D. 600, 611 (N.D. Fla. 2019) citing, *Terry v. Modern Woodmen of Am.*, 57 F.R.D. 141, 143 (W.D. Mo. 1972).

Most critical in this case, is that during telephonic and email discussions, Plaintiff made clear to the Defendants that Plaintiff's counsel needed access to his files, personnel, and office equipment (especially because Plaintiff's counsel must travel to St. Louis). (*See* Ex. 1, 2). Defendants provided no facts to support a single factor, in which, courts consider changing deposition locations. After reviewing relevant factors, Plaintiff contends that the Court should find that Plaintiff's reasons outweigh Defendants' feelings and "personal preferences."

### 1. *Whether … political strife makes a particular location dangerous or unsuitable for conducting a deposition.*

Defendants speciously argue that the political climate from Mansur Ball-Bey's death renders Plaintiff's counsel's office a danger of retaliation to Defendants Vaughn and Chandler. Plaintiff vehemently disagrees. Until Defendants filed the instant motion, no one knew (to Plaintiff's knowledge) that the Defendants' deposition would occur at all. Any

---

[4] *Newman*, 962 F.2d at 591; *Afram Export Corp.*, 772 F.2d at 1365; *Thompson*, 523 F.2d at 648; *Winston & Strawn LLP v. Law Firm of John Arthur Eaves*, 307 F.R.D. 259, 262 (D.D.C. 2014); *In re Outsidewall Tire Litig.*, 267 F.R.D. at 471-73; *Mill-Run Tours, Inc.*, 124 F.R.D. at 550-52; *Turner*, 119 F.R.D. at 383; *Gen. Leasing Co. v. Lawrence Photo-Graphic Supply*, 84 F.R.D. 130, 131 (W.D. Mo. 1979); *Leist v. Union Oil Co. of Calif.*, 82 F.R.D. 203, 204 (E.D. Wis. 1979); *Financial Gen. Bankshares, Inc.*, 80 F.R.D. at 23; *Baker v. Standard Indus., Inc.*, 55 F.R.D. 178, 179-80 (D. P.R. 1972).

danger Vaughn and Chandler perceive (which is not clear from their filing) is a result of their own conduct in filing the instant motion. This case is a shooting from 2015, and there have been no protests the in five years related to this incident.[5] Defendants have absolutely no factual support or even an affidavit to demonstrate that they are in danger.

On the other hand, Plaintiff alleged that the City Counselor's office systemically engaged in conduct to conceal civil rights abuses for decades. Plaintiff obtained numerous unreported shooting cases, audio recordings, emails, and other evidence which demonstrate the City Counselor's complicit behavior. Plaintiff and his counsel must also drive personal vehicles to City Hall. Plaintiff and his counsel are truly in fear of retaliation by the entire City of St. Louis police and its criminal prosecutors. Accordingly, any fear of retaliation is, at best, neutral to both parties.

> ### 2. *Whether it appears that a deposition site was chosen to harass or inconvenience the deponent or an opposing party, and the good faith or bad faith of the party selecting a site.*

Plaintiff did not, and Defendants have no supporting evidence, that the deposition site was selected in bad faith. Plaintiff merely wanted to take COVID-19 precautions and needed access to his office and personnel. To the extent the Defendants remotely suggest Plaintiff chose to harass the Defendants, then Plaintiff reserves the right to respond. Notwithstanding, this factor weighs in favor of the Plaintiff.

---

[5] In fact, August 19, 2021, happened to be the anniversary of Mansur Ball-Bey's death, and the deposition of J. Doe. Not a single protestor or member of the media came to Plaintiff's counsel's office. Any alleged political strife regarding Mansur Ball-Bey's death is specious at best.

### 3. *The inconvenience posed by a particular site (for example, if a large number of documents would need to be transported to the location).*

Plaintiff has been prosecuting this case since 2018. There are over 20,000 pages in documents, exhibits, photographs, and depositions spanning back to 2011. Lead Counsel, Mr. Dailey, must travel to St. Louis, Missouri; gather all documents, exhibits, photographs, and assemble the appropriate personnel should this Court order Plaintiff to utilize City Hall as a deposition site. During the August 19th deposition, Plaintiff had two full banker's boxes, two binders, a laptop, and still needed to create on the spot blow-ups of photographs for the witness during the deposition. Plaintiff is severely prejudiced if he were forced to travel to City Hall, indeed Chandler and Vaughn's testimony remains critical to this litigation.

On the other hand, the Defendants will appear with *zero* documents, no exhibits, and require only a private conference room for discussions (assuming the Defendants are not thoroughly prepared). Plaintiff and his legal staff are fully aware of ethical obligations and would never improperly spy, record, listen, or eavesdrop into a conversation with an opposing counsel and their client.

Accordingly, this factor weighs heavily in favor of the Plaintiff.

### 4. *Whether the deponent frequently or periodically travels to or near the proposed deposition site*.

It is unclear whether Vaughn and Chandler frequently travel near the Plaintiff's office. However, the City Counselor traveled to Plaintiff's office and there was no prejudicial effect. Plaintiff's counsel's office is in St. Louis's northern suburbs and has private rear parking. It is logical to assume that Vaughn and Chandler, as police officers,

have traveled all throughout St. Louis for various reasons. Accordingly, this factor weighs in favor of the Plaintiff.

> **5.   Whether sufficient alternatives to an "in person" deposition exist, such as a telephonic deposition, submission of written questions, or a video conference.**

The Parties already agreed, through various oral and written meet and confers, that the Defendants' depositions were critical and must be conducted in-person. (Ex. 4). Given the number of exhibits, and Vaughn and Chandler's sophisticated level with testifying, telephonic or zoom depositions are not an option. The Parties have already disputed and resolved in-person deposition issues earlier this year. Accordingly, this factor weighs heavily in Plaintiff's favor.

> **6.   Whether conducting a deposition at a particular location would disrupt important business or governmental functions because the deponent is a corporate or government official with significant official duties.**

Defendants do not make any argument under this factor. Plaintiff maintains that there is no disruption given the Defendants claim the officers would drive their personal vehicles.  Moreover, Plaintiff accommodated the Defendants' schedule to ensure there was no disruption of any official duties. Notably, Defendant Vaughn was terminated from the SLMPD and the subject of unrelated criminal charges. Accordingly, this factor weighs in favor of Plaintiff.

> **7.   The inconvenience to either party.**

Defendants argue that coming to Plaintiff's office is an "annoyance" in reciting the language of Rule 26. First, Defendants argued they did not have an office and were forced to confer outside during the August 19th deposition. However, Plaintiff made clear he had plenty of office space, but the Defendants never asked for a private office, and declined the

11

conference room during lunch break because opposing counsel needed to leave. When Plaintiff exposed Defendant' reason as specious, Defendants then argued they do not want to have "privileged communications" in opposing counsel's office. However, if this argument constitutes "good cause" every attorney in the country could refuse to appear at a deposition location citing attorney-client privilege.

On the other hand, Plaintiff is most inconvenienced should this Court order Vaughn and Chandler's deposition at the City Counselor's office. It is not a mystery— the City Counselor's office is the subject of Plaintiff's *Monell* claims. Thus, Plaintiff has more concerns of privacy in the Defendants' office than the Defendant should at the Plaintiff's office. Also, Plaintiff and his counsel(s) are at increased risks exposure to Covid-19 in City Hall because it is open to the public. Indeed, Plaintiff already accommodated the Defendants by taking extra Covid-19 precautions, delaying depositions, and converting in-person depositions to zoom. Accordingly, Plaintiff is the only inconvenienced party, and this factor weighs in favor of Plaintiff.

### 8. *The breadth and weight of the information the deponent likely possesses.*

The breadth and weight of information that Vaughn and Chandler possess is critical to the outcome of this litigation. Accordingly, this factor weighs heavily in favor of Plaintiff's office because Plaintiff will be obtaining the information from the Defendants. Defense counsel will likely not ask a single question. Plaintiff needs access to his full offices and personnel. Accordingly, this factor weighs in favor of Plaintiff.

**CONCLUSION**

Logistically, Mr. Ball-Bey's attorneys need access to their personnel, hard files, and exhibits for witness testimony. While Defendants will not articulate why they refuse to come to Mr. Ball-Bey's African American attorneys' office, the only conclusion is that the Defendants' strategy is to fight Mr. Ball-Bey on every substantive, legal, factual, and logistical issue associated with Mr. Ball-Bey's *Monell* claim.

Defendants enjoyed complimentary Wi-Fi, lunch, snacks, and private office accommodations during the August 19th deposition. Defendants' change of course, with respect to Defendants Ronald Vaughn and Kyle Chandler's deposition(s), is about "personal preference" not safety or confidentiality. These reasons fail to establish a hardship, or good cause for the Court to issue a protective order, and Plaintiff asks that this Court deny Defendants' motion for protective order and order Defendants to pay attorney's fees and costs.

Respectfully submitted:

Dated: September 10, 2021

/s/Daniel A. Dailey, Esq.

**Daniel A. Dailey IL Bar#: 6312616** (*pro hac vice*)

**KINGDOM LITIGATORS, INC. A PUBLIC INTEREST LAW FIRM**
3131 McKinney Blvd. Ste. 600,
Dallas, TX 75204
Phone:(214) 422-9350
Fax: (312) 277-3370
ddailey@kingdomlitigators.com

**LEGAL SOLUTION GROUP**
By:/s/ Jermaine Wooten
**Jermaine Wooten #59338**

St. Louis Office, MO
10250 Halls Ferry Road
St. Louis, MO  63136
314-736-5770
314-736-5772 (Fax)
jwooten@lsgstl.com

*Lead Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2020, the foregoing was filed electronically with the Clerk of the Court to be served by operations of the Court's Electronic filing system.

/s/Jermaine Wooten

14