UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DENNIS BALL-BEY, | ) |
|     Plaintiff, | ) |
| v. | )    4:18-cv-01364-SPM |
| KYLE CHANDLER, *et al.*, | ) |
|     Defendants. | ) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION TO COMPEL AND MOTION FOR SANCTIONS**

On August 20, 2016, Defendant Kyle Chandler shot Plaintiff Dennis Ball-Bey's 18-year-old son Mansur in the back, killing him. Plaintiff brought this suit against Defendant Chandler, and items produced late in discovery indicated that a special panel of officers from the St. Louis Metropolitan Police Department reviewed this police killing, among many others, in 2018. Because of Defendant's abdication of its discovery responsibilities, as described below, Plaintiff brings this motion to obtain the full paper files of the Force Investigation Unit ("FIU") Audit.

1. **Background**[1]

Plaintiff's counsel is aware of both the holiday season and the considerable workload of this Court, as well as this Court's prior admonitions to attempt to resolve discovery disputes without the need of Court intervention. However, the below recitation of facts is necessary to show the Court the extent of Plaintiff's counsel's repeated, unsuccessful efforts to resolve these issues *without* Court involvement.

---

[1] The Eighth Amended Case Management Order, states that a discovery conference need not be requested if "(b) the opposing party has failed to timely respond to discovery requests or (c) the opposing party has failed to make disclosures mandated by a court order." ECF No. 362 at ¶ 13. As both (b) and (c) are satisfied in this case, Plaintiff filed the instant motion.

1

On October 12, 2023, this Court issued an Order granting in part Plaintiff's motion to compel documents related to the FIU Audit. ECF No. 360. In ordering the production of paper documents from the six boxes of documents which were gathered by FIU Audit team, this Court found that "any documents that specifically discuss the Ball-Bey shooting are highly relevant to the still-pending claims against Officer Chandler and must be produced." *Id*. at 6. *See also* ECF No. 360 at 8. The Court also ordered the production of any documents from the FIU Audit computer records that may be relevant to the shooting of Mansur Ball-Bey, as well as any records of the ILEADS "audit" of the Ball-Bey police file. *Id*.

On Friday, October 20, 2023, counsel for Plaintiff emailed Mr. Larry Pratt, counsel for Defendant, to propose a timeline for production of the documents ordered compelled by the Court. In that email, counsel for Plaintiff requested that Mr. Mr. Pratt produce all documents by October 31, 2023, more than two weeks after the Court's order.

Mr. Pratt failed to respond to the October 20th e-mail, and similarly failed to respond to Plaintiff's proposal of October 31 to produce the documents. On November 2, 2023, counsel for Plaintiff sent another e-mail in order to determine the status of this City's production. On a phone call held on Friday November 3, 2023, Mr. Pratt represented to counsel for Plaintiffs that the documents would be produced by the following week, which ended on Friday November 10, 2023. See Exhibit 1, email of November 6, 2023.

Once again, on November 10, Mr. Pratt failed to produce any documents. Emails of November 13 and 17. 2023, similarly went unanswered. On Monday, November 27, 2023, counsel for Plaintiff requested a meet and confer with Mr. Pratt in advance of filing a motion to compel. See Exhibit 2, email of November 27, 2023. Finally, on Tuesday, November 28, 2023, counsel for Defendant produced documents, more than six weeks after the Court ordered them produced. The

files produced were in two separate files. The first was entitled "Project 747," which Plaintiff's counsel believed to correspond with the entirety of the computer records related to the FIU Audit. *See* ECF No. 360 at 3; ECF No. 331 at 7-8. Plaintiff's counsel initially believed that the second folder, entitled "BPS 600," corresponded with responsive documents from the six paper boxes, corresponding with the other set of documents ordered produced by this Court.

Counsel for Plaintiff quickly reviewed the documents to verify that Mr. Pratt correctly complied with this Court's order regarding the compelled documents. Plaintiff's counsel noted that the vast majority of the documents produced seemed to have no bearing on the Ball-Bey case, that there were nearly no documents related to the Ball-Bey shooting, and that the records produced in the folder of presumably paper records did not appear to be paper records. Due to these issues, counsel for Plaintiff emailed Mr. Pratt on Wednesday November 29, 2023, asking for a time to talk on the phone. Mr. Pratt did not respond to the email, but instead called and left a voicemail for Plaintiff's counsel on Thursday, November 30, while Plaintiff's counsel was at an all-day deposition and unable to take his call.

On Monday, December 4, 2023, counsel for Plaintiff emailed Mr. Pratt again trying to follow up on these issues, and received an e-mail in response stating that Mr. Pratt would be out of the office for the following eleven days, until Friday December 15, 2023. The following day, counsel for Plaintiff emailed the other two defense attorneys entered on the case, Brandon Laird and Rebecca Vossmeyer, and wrote that a conversation was needed to address these discrepancies. Mr. Laird and Ms. Vossmeyer did not respond to this email.

Two weeks later, on Monday, December 18, 2023, undersigned counsel and Mr. Pratt had a brief phone call in which Plaintiff's counsel described the issues with Defendant's production of FIU Audit documents. On the call, Plaintiff's counsel described the issues, and Mr. Pratt stated

3

that he was not familiar enough with the production to respond on the phone call.  Plaintiff's counsel followed up this phone call with an email describing the issues, and confirming that the two would speak to address these issues two days later, at 9:00 am.  *See* Exhibit 3, email of December 17, 2023. When Plaintiff called at the scheduled date and time, Mr. Pratt did not answer. In an email later that day, Mr. Pratt offered to reschedule the phone call for Friday, December 22, 2023, and stated, "I have not had the opportunity to review my notes and discuss with others the document production, but will [in advance of the call]." Ex. 4, email of December 20.

And yet, on the call of Friday, December 22, Mr. Pratt was unable to provide any substantive response as to the deficiencies identified by Plaintiff's counsel. Moreover, Mr. Pratt represented that the work of identifying responsive documents was carried out by a paralegal, and did not respond to several specific questions about the production made by Plaintiff's counsel as to where the paper documents were or why certain documents were produced. Moreover, Mr. Pratt was unable to even provide a date by which he would respond to the issues identified by Plaintiff's counsel.

Plaintiff brings this Motion to Compel and Motion for Sanctions in order to request that this court order the complete production of the FIU Audit paper files, given the Defendant's intransigence and discovery failures. Most urgently, Plaintiff's Counsel is currently working on the expert disclosure in advance of the Court's January 12, 2024, deadline, and at present it appears highly unlikely that any responsive documents will be provided to Plaintiff's counsel in advance of this deadline.

2. **Argument Regarding Motion to Compel**

Plaintiff brings this Motion to Compel in order to remedy discovery discrepancies related to both the digital and paper files that the Court ordered produced in its October 12 order.

4

A. **Paper Records**

The first two discovery issues relate to the six boxes of paper documents from the FIU Audit that were identified by Lieutenant Colonel Michael Sack in his deposition in the summer of 2023. ECF No. 331 at 6. According to Lt. Col. Sack, these six boxes contained all of the paper documents from the months-long FIU Audit, which included a review of every officer-involved shooting from the prior four years. Plaintiff is requesting the complete production of these six paper boxes because of the inconsistencies with Defendant's production, described more fully below.

The type of documents produced by Defendant's counsel in the "BPS 600" folder appears to be non-compliant with the Court's order. The Court's order compelled the production of all paper documents from the Audit related to the Ball-Bey shooting. ECF No. 360 at 6. However, the vast majority of the documents produced do not meet this criterion. For instance, one document is a request for one of the FIU Audit employees to take a day off of work. Another document is a monthly schedule of work for the FIU Audit team. One folder appears to entirely consist of organizational charts, each of which bear no discernable connection to the shooting of Mansur Ball-Bey.

- Department Org Chart with names 2016-06-23-BATE 015526.pdf
- Department Org Chart with names 041917 Large Format-BATE 015527.pdf
- Department Org Chart with names 050117-BATE 015528.pdf
- Department Org Chart with names 061217- BATE 015529.pdf
- Department Org Chart with names 091216-BATE 015530.pdf
- Department Org Chart with names 091916.pdf
- Department Org Chart with names 120616- BATE 015531.pdf
- Department Org Chart without names 022117-BATE 015532.pdf
- GEN-107 Department Org Chart with names 2018-02-05-BATE 015533.pdf
- GEN-107a Org Chart with names R61 051911.pdf
- ORG CHART no name 100714.pdf
- ORG CHART no name R70 102214.pdf
- ORG CHART with names R68 032414.pdf
- ORG CHART with names R74 010515.pdf
- ORG CHART with names R77 042015 final.pdf
- Org Chart with names R78 022813- BATE- 015534 .pdf
- ORG CHART with names R82 102115- BATE - 015535.pdf
- ORG CHART with names R84 120715.pdf
- Scanned Organizational Charts -SLMPD- BATES 015536-015543 .pdf

5

In fact, based upon Plaintiff's counsel review, there is not a single newly-produced document that refers to the Ball-Bey shooting. Plaintiff's counsel's specific questions about these issues on phone calls of December 18 and 22 to explain these issues were met with no substantive response. These irrelevant documents, paired with the scarcity of documents that even mention the Ball-Bey shooting, lead Plaintiff's counsel to believe that Defendant's counsel is unable to adequately identify and produce documents that relate specifically to the Ball-Bey shooting and which would be responsive to this Court's order, and therefore that the entirety of the boxes must be produced to counsel for Plaintiff.

The second issue with the purported paper records is that the documents produced by Defendants do not at all appear to be scanned documents of paper records. *See* Exhibits 5[2] and 6, which both appear to be original pdf documents, and not documents that have been printed, stored in boxes, and subsequently re-scanned. In fact, all of the documents produced by Defendants in the "BPS 600" folder appear to be electronic—and not printed and re-scanned—pdfs. The lack of any visibly "paper" files leads Plaintiff's counsel to believe that the six boxes of paper documents may have not been reviewed *at all*. Moreover, despite repeated emails and phone call requesting clarification, Defendants' counsel has been unable to provide any explanation for why there do not appear to be paper files. Plaintiff can only assume based on the documents and lack of explanation from Defendants' counsel that Defendants did not comply with the Court order to review the paper files.

The complete production of all six paper boxes will be the only way to completely resolve this issue given the City's inability to explain its actions and its clear failure in producing previous

---

[2] Exhibits 5 and 6 are being filed with sealed placeholders, and because they have been marked confidential, will be supplemented with a sealed supplement.

6

documents to comply with the Court's order. Moreover, the production of a complete set of documents has been ordered several times by courts in this district following discovery discrepancies. *See Ameriwood Indus. v. Liberman*, No. 4:06CV524-DJS, 2006 U.S. Dist. LEXIS 93380, at *13 (E.D. Mo. Dec. 27, 2006) (granting requesting party access to a mirror image of resisting party's computer when there were "discrepancies or inconsistencies in the responding party's discovery responses.") *See also Schweppe et al v. Pine Lawn, Missouri,* No. 4:16-cv-00253- JAR (E.D. Mo. Feb 16, 2018) Doc. 120 (granting Plaintiff's motion to compel *all* potential records following inconsistent responses by Defendant). Obviously, the boxes of paper materials would be governed by the protective order already entered in this matter.

The new discovery deadline is in two weeks. Defendant's counsel's delay—nearly two months now—is running out the clock. Over 80% of the time this Court has afforded to resolve this issue has passed. Unfortunately, this is not the first time the City has used this tactic. As has been explained in previous filings, the City waited until the day after Plaintiff's summary judgment response was due in order to produce the initial FIU Audit. *See* ECF No. 331. In fact, despite being responsive to prior requests for production, the Audit was only produced when Defendant's counsel became aware of the FIU Audit in a different case. These documents should have been affirmatively identified by the City and produced years ago.

### B.  Digital Records

The third issue relates to the production of certain documents from the "Project 747" records of the FIU Audit. Plaintiff's counsel has repeatedly been unable to open many of these files despite numerous attempts. Each of these files (contained within a file called "Mail Search-BATES-010441-013584") shows the following when opened:

7



Undersigned counsel believes that the reason that these documents are not accessible is that the documents were converted to PDF format rather than produced in their native format, and that somehow in the conversion, the files were corrupted. Therefore, Plaintiff requests that this Court order the complete production of all computer records in their native format, as opposed to their PDF format. *See Cenveo Corp. v. S. Graphic Sys.*, No. CIV 08-5521 JRT/AJB, 2009 WL 4042898, at *2 (D. Minn. Nov. 18, 2009) (ordering the production of all files in native format).

3. **Motion for Sanctions**

In addition to requesting the Court order the full production of documents, Plaintiff requests this Court order monetary sanctions against Defendant City for the costs incurred by Plaintiff's counsel to repeatedly request Defendant's counsel comply with this Court's order, including drafting this motion and memorandum.

Rule 37 authorizes payment of expenses, including attorney's fees, caused by a party's failure to comply with a court order. *See* Fed. R. Civ. P. 37(b)(2). The sanctions available to a trial judge under Rule 37(b)(2) are discretionary and the imposition of such sanctions will not be reversed unless there has been an abuse of discretion. *Mems v. City of St. Paul, Dept. of Fire and Safety Services*, 327 F.3d 771, 779 (8th Cir. 2003) (citation omitted). To impose Rule 37 sanctions, there must be: (1) a court order compelling discovery; (2) a violation of that order that is willful; and (3) prejudice to the other party from the violation. *Id*. Here, all the prerequisites are present for the Court to impose sanctions, including prejudice to Plaintiff in advance of the expert disclosure. The Court has discretion in awarding such sanctions, but discovery sanctions must be

"'just' and relate to the claim at issue in the order to provide discovery." *Hairston v. Alert Safety Light Prods., Inc.*, 307 F.3d 717, 719 (8th Cir. 2002) (quoting *Avionic Co. v. Gen. Dynamics Corp.*, 957 F.2d 555, 558 (1992)). *See also Keefer v. Provident Life & Accident Ins. Co.*, 238 F.3d 937, 941 (8th Cir. 2000) ("The district court is not...constrained to impose the least onerous sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances.")

The Eighth Circuit has found Rule 37 to, "authorize[]an award encompassing all expenses, whenever incurred, that would not have been sustained had the opponent conducted itself properly." *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1012 (8th Cir. 1993) (upholding an award of $6,407.50 in costs and fees). Courts have awarded monetary sanctions when a party "unjustified[ly] and willfully delayed non-compliance with certain pretrial discovery orders." *First Am. State Bank v. Cont'l Ins. Co.*, 897 F.2d 319, 329 (8th Cir.1990) (upholding award of $2,191.64 under Rule 37(b) after finding non-compliance was not due to mere inability but rather willful). *See also Brooks v. Charter Commc'ns (DE), LLC,* No. 4:16CV01496 AGF, 2017 WL 6594232, at *1 (E.D. Mo. Dec. 26, 2017) (granting sanctions in the form of reimbursement for attorney's fees necessary to pursue the motion).

Counsel for Defendants has spent more than ten hours researching and drafting the instant motion and five hours writing emails and participating in phone calls with counsel for Defendant to seek clarity on Defendant's discovery failures. Plaintiff has also spent four hours reviewing the documents produced by Defendants pursuant to this Court's motion to compel. Plaintiff also anticipates additional time sifting through the six boxes and reviewing material that would not have been necessary had Defendants done what the Court ordered two months ago. If this Court

9

grants Plaintiff's Motion for Sanctions, Plaintiff will file an appropriate request for attorney's fees with the Court.

****

Wherefore, Plaintiff Dennis Ball-Bey requests this Court order the complete production of FIU Audit Paper records, the original computer documents from the FIU Audit in native format, and award sanctions against Defendant's counsel consisting of the attorney fees necessary to compensate Plaintiff's counsel for time expended due to Defendant's discovery failures.

**KHAZAELI WYRSCH, LLC**

*/s/ John M. Waldron*
John M. Waldron, 70401MO
James R. Wyrsch, 53197MO
Javad M. Khazaeli, 53735MO
911 Washington Avenue, Suite 211
St. Louis, Missouri  63101
(314) 288-0777
(314) 400-7701 (Fax)
jack.waldron@kwlawstl.com
james.wyrsch@kwlawstl.com
javad.khazaeli@kwlawstl.com

**THE LEGAL SOLUTIONS GROUP**
Jermaine Wooten, 59338MO
10250 Halls Ferry
St. Louis, Missouri  63136
(314) 736-5770
(314) 736-5772 (Fax)
wootenjlaw1@aol.com

*Attorneys for Plaintiff*