IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DENNIS BALL-BEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Cause No. 4:18-CV-01364 |
| v. | ) | |
| | ) | |
| KYLE CHANDLER, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT CHANDLER'S MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COMES NOW Defendant Kyle Chandler, and for his Memorandum in Support of his Motion for Summary Judgement state as follows:

I.    Overview

On August 19, 2017, Defendant Kyle Chandler, Detective Ronald Vaughan and ATF Special Agent Larry Stoddard were assigned to cover the back of a residence that was the subject of a search warrant targeting guns and drugs. The search warrant itself was being executed for evidence of crimes involving guns and drugs. Just as the execution began by the SWAT team, Detective Chandler saw two suspects run out of the rear of the residence. (SOF ¶ 5-6). The taller of the two suspects, Mansur Ball-Bey, ran out of the backyard of the target house and into a vacant lot next door. (SOF ¶¶ 7-10). From there, he ran to the alley behind the houses that faced Walton Ave. (SOF ¶ 8). Detectives Chandler and Vaughan pursued the suspect on foot. (SOF¶ 9). Both officers saw Ball-Bey with a firearm in

1

his waistband and an extended magazine. (SOF ¶ 7). As Ball-Bey reached the alley, he pulled the gun out of his waistband. (SOF ¶ 10). As he continued to run into the backyard of the lot, he raised his gun and turned to Det. Vaughan. (SOF ¶¶ 16-19). At this moment, Det. Chandler discharged his firearm, striking Ball-Bey.

This case was filed on August 17, 2018. On March 13, 2023, Defendants City of St. Louis, Kyle Chandler and Ronald Vaughan filed their motion for summary judgment. Plaintiff responded to that motion on May 31, 2023. The motion was fully briefed on July 7, 2023. (Doc. 320) On August 7, 2023, Plaintiff filed a stipulation of dismissal of Defendant Vaughan. (Doc. 324). On September 7, 2023, this Court entered an order granting summary judgment in favor of the City, but denying it as to Defendant Chandler. (Doc. 348). The order as it relates to Defendant Chandler was vacated in light of the Plaintiff's request to obtain and disclose a new expert. (Doc. 357). Defendant Chandler now files this motion for summary judgment.

## II.    Summary Judgment Standard of Review

A party is entitled to summary judgment when he "shows that there is no dispute of material fact and [that he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the defendant demonstrates the facts necessary to establish judgment as a matter of law the burden shifts to the plaintiff to establish the necessary elements to his recovery. *Id.* at 322-24.

At that point, the non-moving party must "meet proof with proof" to avoid summary judgment. *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir.

2010). "In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden 'to designate specific facts creating a triable controversy.'" *Crossley v. Georgia-Pacific Corp.*, 355 F.3d 1112, 1113 (8th Cir. 2004) citing *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1085 (8th Cir. 1999).

In § 1983 cases, a burden shifting analysis occurs at the summary judgment stage. Once the defendant establishes that he was acting within his or her discretionary authority, *the burden shifts to the plaintiff* to prove that the officer violated a clearly established right. *Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009). Further, because the burden is on the plaintiff to overcome a defense of qualified immunity, the plaintiff opposing summary judgment must demonstrate the existence of triable issues of fact precluding summary judgment.

## III. Officer Chandler is entitled to qualified immunity because the totality of the circumstances

### a. Qualified immunity legal standard

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and it "protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 134 S. Ct. 3, 4-5 (2013). Qualified immunity shields officers "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

3

The first issue is a merits question – did the officer violate the law?; the second issue is an immunity issue – was it clearly established that officer could not do what he did? *Gainor v. Rogers*, 973 F.2d 1379, 1383 (8th Cir. 1992). In Fourth Amendment cases, the first prong of the inquiry—whether a right was violated—depends on whether a search or seizure occurred, and if it did, whether the officer's action was objectively reasonable. *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011). For a right to be "clearly established" for purposes of the second step, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also Scott v. Baldwin*, 720 F.3d 1034, 1036 (8th Cir. 2013). Although there need not have been a case directly on point in order for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). This prong requires the court to determine whether the officer was "plainly incompetent." *Stanton*, 134 S.Ct. at 6. If, given the information available at the time, the officer was not plainly incompetent, he is entitled to qualified immunity. *Id.* To satisfy the "plainly incompetent" standard, the impropriety of the officer's conduct must be "beyond debate." *al-Kidd*, 131 S.Ct. at 2083. The facts of this case demonstrate that the Defendants are entitled to qualified immunity on the Fourth Amendment claim.

The Supreme Court has repeatedly stressed that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Kisela v. Hughes*, 138

S. Ct. 1148, 1152 (2018) citing *Graham v. Connor*, 490 U. S. 386, 396 (1989). And "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Kisela*, 138 S. Ct. at 1152 citing *Graham*, 490 U.S. at 396-397.

> **b.    Detective Chandler is entitled to qualified immunity because his use of force was objectively reasonable, or at the very least, not a violation of a clearly established right under the totality of the circumstances.**

Detective Chandler was one of three law enforcement officers who was assigned to the rear of a house that was the subject of a search warrant for guns and drugs. (SOF ¶ 2). This warrant was being executed by the SWAT team. (SOF ¶ 1) As soon as the SWAT team entered the house, the two detectives and the ATF agent saw two subjects run out of the back of the house. (SOF ¶ 5) One of the subjects was holding a handgun with an extended magazine. (SOF ¶ 7) As this was a search warrant for, among other things, guns, the detectives and Special Agent Stoddard ran in pursuit. (SOF ¶ 9) The suspect jumped a fence and continued to run. (SOF ¶ 8). The officers chased the subject into the alley behind the house, past an empty lot. (SOF ¶¶ 8-9). As the officers reached the parking pad behind a house, two lots from the target house, Detectives Chandler and Vaughan saw the subject pull the gun up and turn- beginning to point it at the officers. (SOF ¶ 17) At that point, both officers discharged their weapons, and Detective Chandler struck the subject. (SOF ¶¶ 20-21). The subject pulled his firearm just as he passed the end of

5

the parking pad. (SOF ¶¶ 16-17). Both officers were in the area of the parking pad as they discharged their firearms.

"We have repeatedly told courts ... not to define clearly established law at a high level of generality." *al–Kidd,* 563 U.S.at 742. "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of *particular conduct* is clearly established." *Id* (emphasis added). "It is important to emphasize that this inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (U.S. 2004). "Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Id*, (internal quotation omitted).

Here, the officers reasonably believed that Ball-Bey posed an imminent threat of serious harm. Just as the SWAT team announced their presence and began entry into a residence to execute a search warrant targeting guns and drugs. (SOF ¶¶ 1-2) One of the two subjects, Ball-Bey, had a weapon in his waistband with an extended magazine. (SOF ¶ 7) As the officers pursued Ball-Bey through an empty lot and into the rear of another residence, he pulled his gun out. Only then did they discharge their weapons. (SOF ¶¶ 19-20) This meets the criteria set forth in *Graham v. Connor:* "The three factors to consider are (1) the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or

6

others; and (3) whether the suspect was actively resisting or fleeing." 490 U.S. 386, 396 (1989) These factors require an analysis of the totality of the circumstances surrounding the use of force. *Cook v. City of Bella Villa*, 582 F.3d 840, 849 (8th Cir. 2009)(internal citation omitted).

In this case, Detective Chandler's use of force, discharging his weapon one time, was reasonable because he believed that Ball-Bey presented an imminent threat of harm to Detective Vaughan. This directly invokes *Graham's* second factor- that the suspect posed an immediate threat to the safety of the officers or others. *Graham*, 490 U.S. at 396. "The use of deadly force is not constitutionally unreasonable if an officer has "probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others." *Nance v. Sammis*, 586 F.3d 604, 610 (8th Cir. 2009)

All three witness who saw the event described the same series of events and all testified that the officers fired, including Defendant Chandler, while Ball-Bey had the gun and was turning towards the officers. The secret witness stated in his deposition that he saw Ball-Bey running with the gun in his hand. (SOF ¶ 12). He then saw Ball-Bey turn toward the officers. (SOF ¶ 17). It was at that point that the secret witness heard shots fired, and then saw Ball-Bey throw the gun against the dumpster where it came to rest. (SOF ¶ 25). This was consistent with the statement he gave to the Force Investigation Unit. Detective Chandler testified that he saw Ball-Bey, while holding a handgun, run into the back yard of 1233 Walton. Ball-Bey then brought the handgun up and began to turn, which caused Chandler to

reasonably believed that Ball-Bey was going to engage his partner. At that point, Detective Chandler fired his weapon once. (SOF ¶¶ 18-20).[1] Det. Chandler then saw the handgun fly from Ball-Bey's hand. Det. Vaughan testified that heard Detective Chandler and Special Agent Stoddard state that two suspects ran out of the target house.  Detective Vaughan saw Ball-Bey draw his weapon in the alley behind the houses, at which point Det. Vaughan drew his weapon. (SOF ¶ 19-20). As Ball-Bey reached the parking pad, or close to the end of the pad, Det. Vaughan saw Ball-Bey raise his gun and begin track and follow him. Only at that point did Det. Vaughan discharge his weapon. (SOF ¶ 19) After that, Ball-Bey released or threw his weapon.

There is no statement or testimony from any witness that Detective Chandler, or Vaughan discharged their firearms at any time other than when Ball-Bey was holding his weapon, and turning towards Detective Vaughan. Det. Chandler was not violating any clearly established right when he fired his weapon in defense of Det. Vaughan. The only thing that may appear to be inconsistent in the information provided by the witnesses is exactly where this occurred. The Secret Witness stated that this all happened in the alley behind the houses that faced Walton. (SOF ¶ 12). Det. Vaughan stated that Ball-Bey was at or near the end of the parking pad that was attached to the alley, and also attached to the grass in the backyard of the residence. (SOF ¶ 18) Det. Chandler stated that Ball-Bey was just

---

[1] The three other shots, which resulted in three other shell casings, were not fired by Chandler and are immaterial for purposes of this motion.

into the backyard. (SOF ¶ 19). Taken together, the three witnesses present a consistent rendition of the events, but they were not paying specific attention to exactly where the Detectives and Ball-Bey were standing when the events happened. Afterall, there are no barriers or indicators on the lot where the events occurred. All three witnesses were looking at the events from a different vantage point. But, any discrepancy regarding where exactly Chandler's single shot was fired, whether on the parking pad or from the nearby alley, is immaterial. Whether Ball-Bey turned and raised his gun in the alley, on the parking pad, or in the backyard, all witnesses are aligned in their testimony that Chandler fired in response to Ball-Bey raising a gun toward Det. Vaughn and Det. Chandler. Det. Chandler was still acting in defense of Det. Vaughan when he discharged his weapon. Such use of force is entitled to qualified immunity. *See Estate of Morgan v. Cook*, 686 F.3d 494, 498 (8th Cir. 2012) (finding that the officer's use of deadly force was justified because there was a threat of harm to another person.) At the very least, this was not the action of a clearly incompetent officer. *See Stanton v. Sims*, 134 S. Ct. at 4-5.

### b.  Alternatively, even if Ball-Bey did throw the gun before the shots were fired, qualified immunity still bars the claim against Chandler

In the alternative, if the finds on this record that Ball-Bey had thrown his gun prior to Detective Chandler discharging his weapon, which it should not, Chandler is still entitled to qualified immunity. Detective Chandler only fired after he saw Ball-bey raise his arm and turn to Detective Chandler, and at least that much is undisputed. (SOF ¶17) Even if the weapon had already been thrown, which

we know from the record was already the second weapon that had been in Ball-Bey's possession as he ran from the search warrant scene, it was at least a reasonable mistake for Chandler to believe that Ball-Bey had another gun and was turning to use it on Detective Vaughan.

It is well-established that an officer's "act taken based on a mistaken perception or belief, if objectively reasonable, does not violate the Fourth Amendment. *Loch v. City of Litchfield*, 689 F.3d 961, 966 (8th Cir. 2012) (citing *Krueger v. Fuhr*, 991 F.2d 435, 439 (8th Cir. 1993). Indeed, "[e]ven if a suspect is ultimately 'found to be unarmed, a police officer can still employ deadly force if objectively reasonable.'" *Id.* (quoting *Billingsley v. City of Omaha*, 277 F.3d 990, 995 (8th Cir. 2002)).

In *Loch*, the defendant officer responded to a scene with information that a suspect in a truck was armed with a gun. *Loch*, 689 F.3d at 966. The defendant officer drew his service weapon and pointed it at the suspect after he exited the truck. *Id.* By that time, though, the suspect had, unbeknownst to the officer, thrown his gun in the snow and was, in fact, unarmed. *Id.* The suspect walked towards the officer with his hands in the air while bystanders yelled that he was unarmed, but the officer did not hear them. *Id.* The suspect then slipped on the snow and one of his hands moved towards a black object on his waistband which the officer thought was a gun, but which was, in fact, a cell phone holder. *Id.* at 964. With respect to plaintiffs argument that the decedent "never brandished or aimed a firearm" and

that the use of force was therefore objectively unreasonable, they were soundly

rejected by the Eighth Circuit:

> The Lochs also note that Cassidy never brandished or aimed a firearm, and they assert broadly that "[i]t is objectively unreasonable to use deadly force against an unarmed suspect." That is not the law. An act taken based on a mistaken perception or belief, if objectively reasonable, does not violate the Fourth Amendment. *Krueger v. Fuhr*, 991 F.2d 435, 439 (8th Cir.1993). Even if a suspect is ultimately "found to be unarmed, a police officer can still employ deadly force if objectively reasonable." *Billingsley v. City of Omaha*, 277 F.3d 990, 995 (8th Cir.2002).

*Id.* at 965. The Eighth Circuit held that the officer's mistaken perception that the

black object was a gun rendered his use of force objectively reasonable. *Id.* Indeed,

the Eighth Circuit went so far as to hold that, even if the officer had not mistaken

the black object for a gun as he claimed, "his use of force was still objectively

reasonable." *Id.* at 967. This was so because, in these circumstances, where the

suspect's hands merely "moved toward his side" as he slipped on the snow, "a

reasonable officer could believe that deadly force was necessary to protect himself

from death or serious harm." *Id.* The overwhelming weight of authority from federal

courts of appeal are in accord with this precedent regarding objectively reasonable

acts taken by officers based on mistaken perceptions or beliefs. See, e.g., *Varnadore

v. Merritt*, 778 F. App'x 808, 810–11 (11th Cir. 2019) (police shooting objectively

reasonable where unarmed suspect moved objects in his hand which turned out to

be a CD case and two pieces of paper); *Wells for Chambers v. Talton*, 695 F. App'x

439, 444–45 (11th Cir. 2017) (police shooting objectively reasonable where officer

reasonably thought the decedent had a gun); *Dooley v. Tharp*, 856 F.3d 1177, 1180

(8th Cir. 2017) (no liability where after-the-fact information served to explain suspect's hand movements as his attempt to loosen a wire sling on a pellet gun in an apparent attempt to comply with the officer's commands); *Thompson v. Hubbard*, 257 F.3d 896, 898 (8th Cir. 2001) (use of force objectively reasonable where officer unarmed shot suspect in the back after the suspect looked over his shoulder "and moved his arms as though reaching for a weapon at waist level")

The Eighth Circuit has held that it is "hesitant to second-guess the 'split-second judgments' of officers working in 'tense, uncertain, and rapidly evolving situation[s].'" *Loch*, 689 F.3d 961, 967 (8th Cir. 2012) (quoting *Graham*, 490 U.S. at 396-97). Here, Detective Chandler acted reasonably in the face of an irrefutably dangerous, tense, uncertain, and rapidly evolving situation. He witnessed two suspects run out of a house that was the target of a search warrant for drugs and guns. (SOF ¶¶ 1-6) He saw one suspect with a gun that contained and extended magazine in his waistband that the suspect would eventually draw and hold in his hand. (SOF ¶¶ 7-10). The suspect refused multiple commands to stop and drop the gun as he ran from police. (SOF ¶ 13). Even if it is true that Ball-Bey threw his gun prior to Detective Chandler's discharging his weapon, it was reasonable in that situation to think that Ball-Bey had additional weapons. Indeed- he had been in possession of at least two firearms when he began to run. This fact pattern fits squarely with the Eighth Circuit's ruling *N.S. by & through Lee v. Kansas City Bd. of Police Commissioners*, 35 F.4th 1111 (8th Cir. 2022), where the Eighth Circuit granted immunity to an officer who shot a suspect who was raising his empty hand

12

to surrender because the officer "*misinterpret[ed] the gesture as threatening* [and]… fired without warning at [the decedent], who was trying to surrender." *Id.* (emphasis added).  There is no legal basis upon which to second guess his reasonable action.

Finally, and again in the alternative, to the extent the Court finds that there was no gun in Ball-Bey's hand at the time Chandler fired and construes the deposition excerpt cited by the Court in its prior order on summary judgment to mean that Ball-Bey threw the gun a mere moment before Ball-Bey was shot, Chandler would be entitled to qualified immunity under this construction of the record as well. *See* Doc. 348 at 16. Once qualified immunity has been raised, it is Plaintiff's burden to set forth controlling authority, particularized to the facts of this case, sufficient to demonstrate a violation of clearly stablished law under these unique circumstances. Here, Plaintiff cannot point to any controlling authority clearly holding that an officer is prohibited from using deadly force where a subject raises a gun towards the officer intending to throw it, the officer mistakenly perceives that movement as a threat, and the gun flies from the subject's hand moments before the shot is fired but after the officer has already perceived a threat and made the decision to fire. The point is that, under any construction of this record, whether Ball-Bey pointed a gun towards the officers when he was shot, discarded one gun in the alley before later turning and raising his arm in a gesture that Chandler perceived as a threat, or raised the gun intending to throw it and the

gun flew from his hand a moment before the shot was fired, Chandler is entitled to qualified immunity.

Tragic though this case may be, the material facts, viewed in the light most favorable to Plaintiff, and from Detective Chandler's perspective at the scene, impel a finding that Detective Chandler's use of force was not a violation of clearly established law. Summary judgment must be entered in favor of Defendants.

c.     **Defendant Chandler is entitled to official immunity on Count II, because his actions were discretionary and there is no evidence of bad faith or malice.**

The Official Immunity doctrine shields public officers sued in their individual capacity from civil liability for discretionary acts or functions performed in the exercise of official duties, but permits liability for injuries committed when exercising ministerial functions. *Clay v. Scott*, 883 S.W.2d 573, 576 (Mo. App. E.D. 1994); *citing Kanagawa v. State by and through Freeman*, 685 S.W.2d 831, 835 (Mo. 1985). "Official immunity is designed to protect individual public officers who, despite imperfect information and limited resources, must exercise discretion in performance of their duties." *Conway v. St. Louis County*, 254 S.W.3d 159, 164, (Mo. App. 2008).

"An act is discretionary when it requires the exercise of reason in the adaption of means to an end, and discretion in determining how or whether an act should be done or a course pursued." *McCoy v. Martinez,* 480 S.W.3d 420, 425 (Mo. App. 2016)(internal quotation omitted). To determine this, the Court will look to three elements: (1) the nature of the duties; (2) the amount of judgment required or "professional expertise" in executing the duty; and (3) the effects of not applying the immunity to this act. *Id.* 2005. An officer's decision to use force in the performance of

14

his duties is discretionary. *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015) (applying Missouri law).

To avoid official immunity, Plaintiff must demonstrate that Detective Chandler was acting with malice or bad faith. "Bad faith signifies a dishonest purpose or conscious wrongdoing or breach of a known duty through ulterior motives or ill will." *Conway v. St. Louis County*, 254 S.W.3d 159, 165 (Mo. Ct. App. 2008)(internal quotation omitted). Bad faith requires that the officer acted with the intent to deceive or mislead. *Id.* Malice requires the intent "to do that which a man of reasonable intelligence would know to be contrary to his duty and intend such action to be injurious to another." *Id.* There is no evidence that has been or can be presented that demonstrates bad faith or malice. The actions took place in a very quick and tense scene, and the entire event did not last more than a minute or two. Detective Chandler was simply reacting to events when he saw a suspect run out the back of the house which was the target of a search warrant. There can be no argument, in the circumstances of that event, that the actions of Det. Chandler would be considered contrary to his duty to an officer of reasonable intelligence. *See Conway v. St. Louis County*, 254 S.W.3d at 165. So, official immunity should bar the state law claims against Det. Chandler.

## Conclusion

For the reasons stated above, the defendant Kyle Chandler respectfully request that this Court enter an order granting summary judgment in his favor and for any other relief as the Court deems just and proper.

15

Respectfully submitted,

SHEENA HAMILTON
CITY COUNSELOR

*/s/ Brandon Laird*
Brandon Laird  65564 MO
Associate City Counselor
lairdb@stlouis-mo.gov
1200 Market St.
City Hall, Rm 314
St. Louis, MO 63103
314-622-3361
Fax 314-622-4956