# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

DENNIS BALL-BEY,          )
                                    )
         Plaintiff,          )
                                    )      Cause No. 4:18-CV-01364
v.                                 )
                                    )
KYLE CHANDLER.          )
                                    )
         Defendant.          )
                                    )

## DEFENDANT'S MOTIONS IN LIMINE

Defendant Kyle Chandler, by and through his undersigned counsel, moves this Court to prohibit Plaintiff or his counsel from mentioning, referring to, or attempting to convey to the jury any of the subjects listed below, and to prohibit any witness from testifying regarding the subjects listed below. Defendant further moves this Court to instruct the witnesses not to mention, refer to, or attempt to convey to the jury in any manner, either directly or indirectly, any of the subjects listed below during their testimony, without first obtaining permission from the Court outside the presence and hearing of the jury.

**MOTION IN LIMINE NO. 1**: **Preclude Plaintiff from offering evidence, eliciting testimony or making reference to the Force Investigation Unit (FIU), the FIU audit, or other investigations into police shooting matters.**

Plaintiff must be precluded from testimony or evidence regarding the Force Investigative Unit (FIU), the FIU Audit, any delay in the FIU investigation into the incident or any other police shooting. Defendant anticipates that Plaintiff may attempt to introduce or reference the FIU audit, which documents a separate police audit of investigations of St. Louis police officer-involved shootings. The FIU audit should be excluded from this case as it is irrelevant to the remaining claims and more prejudicial than probative.

The City of St. Louis is no longer a named party to this case and there is no remaining Monell claim for constitutional municipal liability. Neither the City or any FIU investigators are named defendants in this trial, and the unrelated FIU audit has no bearing on the questions before the jury: whether force used by Defendant was objectively reasonable in the instant case. Thus, there is nothing in the FIU audit, or any other police shooting case, that makes any fact more or less probable here. See Fed.R.Evid. 401. *Frazier v. City of Kan. City*, 467 S.W.3d 327, 341 (Mo.App. 2015) (discussing and affirming trial court's exclusion of disciplinary history of officer, finding it to be a collateral issue which was not an element of plaintiff's claim for relief).

The same is true with respect to evidence regarding other, unrelated police shootings referenced in the audit. Such evidence is irrelevant, more prejudicial than probative, and has no bearing on the issue in this case: whether the use of force on the date in question was objectively reasonable. *See Graham v. Connor*, 490 U.S. 386, 397 (1989) ("The 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation").

Even where the FIU audit makes findings with respect to this case, such notations are irrelevant and more prejudicial than probative, and so, should be excluded. Plaintiff may try to introduce evidence of the FIU audit findings with respect to this case. Related to this case, the FIU audit noted that the initial police report contained a typo, wherein the report mistakenly marked "NO" to the box indicating whether an officer discharged his weapon. Once the typo was found, it was immediately corrected. This information is irrelevant, a red herring, and utterly irrelevant to the question of excessive force, and therefore, even where the FIU audit makes findings specific to this case, it should be excluded.

2

Moreover, any attempt by the Plaintiff to elicit testimony from Defendant or witnesses regarding their involvement in any FIU investigation or knowledge about the FIU audit would be improper. The probative value of this evidence is wholly lacking and outweighed by its prejudicial nature because it does not assist the jury in deciding whether any of the material facts are true. And, to the extent the audit or questions regarding involvement in other police shootings are offered to suggest that the Defendant acted improperly here, that is improper character evidence that is inadmissible under Federal Rule 404. *See* Fed.R.Evid. 404(b)(1).

It if further anticipated that Plaintiff will attempt to illicit testimony and offer evidence that Roger Engelhardt mismanaged the Force Investigative Unit.  In support of this assertion, it is anticipated that Plaintiff will attempt to offer testimony that a detective in FIU who investigated the Ball-Bey shooting was found liable in 2008 by a federal jury for failing to intervene in the assault of a citizen. (4:06-cv-01392). This same detective (Burle) was a defendant in another civil lawsuit that alleged he watched an officer punch a protestor in 2012; this suit later settled. In 2017, a video of Burle was released that showed him getting out of his vehicle when a driver behind him honked his horn at Burle and Burle is seen curses at the man, demands his driver's license, and threatens to write him tickets because he honked at him. Evidence related to Burle, and other discipline of FIU investigators, unrelated complaints, or other unrelated incidents that were investigated by FIU is irrelevant as it would have no tendency to make any fact of consequence in determining the action any more or less probable. See Rule 401. Such evidence is also not admissible pursuant to Rule 404, which prohibits the introduction of propensity evidence. *See Glaze v. Childs*, 861 F.3d 724, 726 (8th Cir. 2017) (upholding exclusion of evidence that Defendant officer was forced to resign after violating institutional policy in excessive force case, finding evidence was "the type of propensity evidence that Rule 404(b) prohibits); *Hopson v.*

*Fredericksen*, 961 F.2d 1374 (8th Cir. 1992) (upholding exclusion of internal police department records concerning prior allegations of abuse made against defendant police officers); *see also United States v. Oaks*, 606 F.3d 530, 538 (8th Cir. 2010)("Character evidence is of slight probative value and may be very prejudicial. It tends to distract he trier of fact from the main question of what actually happened on the particular occasion").

In conclusion, any reference to the FIU audit, FIU investigations, or the disciplinary records of FIU investigators would be improper. The probative value of this evidence is wholly lacking and outweighed by its prejudicial nature because it does not assist the jury in deciding whether any of the material facts are true. And, to the extent the audit or questions regarding involvement in other police shootings, or how FIU was managed are offered to suggest that the Defendant Chandler acted improperly here, that is improper character evidence that is inadmissible under Federal Rule 404. See Fed.R.Evid. 404(b)(1).

**MOTION IN LIMINE NO. 2**: **Preclude Plaintiff from offering evidence, eliciting testimony, or making any reference that Defendant and/or other SLMPD officers covered up Defendant's use of force or the circumstances thereof.**

Under these circumstances, admitting evidence of a wide-ranging theory about a police cover-up would be highly improper. As the Seventh Circuit has explained in affirming the exclusion of exactly such evidence as Plaintiff may seek to offer it here, the post-shooting investigation "cannot impute anything onto the city officers' mental state when they pulled their triggers" because "[s]uch evidence may expose a state agency in need of victim rights reform, but without more, it has no tendency to prove liability under either the Fourth Amendment or Illinois law." *Mitchell v. City of Chicago*, 862 F.3d 583, 587 (7th Cir. 2017) (citing *Tennessee v. Garner*, 471 U.S. 1, 11 (1985) and *Wilson v. City of Chicago*, 758 F.3d 875, 881 (7th Cir. 2014). Accordingly, the Court affirmed the trial court's "[e]xclusion of [a]lleged [i]nvestigatory [c]over-

4

up" evidence. *Id*. Indeed, the only basis for admissibility of this type of evidence is in cases where a plaintiff has pursued an unconstitutional police claim brought pursuant to *Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658 (1978). And, of course, Plaintiff's *Monell* claims have been dismissed in this case years ago.

**<u>MOTION IN LIMINE NO. 3</u>: Preclude Plaintiff from offering evidence, eliciting testimony, or making any argument that any non-Defendant officer allegedly engaged in misconduct.**

Plaintiff should be precluded from offering evidence or argument that any non-Defendant officer engaged in misconduct as such evidence is wholly irrelevant. Fed. R. Evid. 401, 402; *see also Fuery v. City of Chicago*, 2015 WL13682033, *5 (N.D. Ill.2015) (plaintiffs "may not…'insinuate that any non-Defendant officers committed misconduct, since there are no claims against any such officers in this case'"). Such evidence has "limited relevance to liability, which hinges on whether [Defendant Officers] use of force (i.e. shooting) was objectively reasonable under the circumstances." *Gonzelez v. Olson*, 2015 WL 3671741, *15 (N.D.Ill. 2015). "Nor does it have any relevance to punitive damages which instead will be based on the shooting itself." *Id*.

Defendant anticipates that Plaintiff will attempt to reference or insinuate alleged misconduct on behalf of various witness officers. For example, Plaintiff may assert that FIU investigators asked the Secret Witness a series of "leading questions," which is immaterial, argumentative, and inadmissible as it asserts the opinion of the attorney rather than an assertion of fact. As addressed in further detail below, Plaintiff may attempt to illicit testimony from witness Vaughan regarding past drug use, his criminal charge of forgery for which he was later acquitted, and/or an order entered by a former state court judge who determined Vaughan's credibility at an unrelated suppression hearing to be "questionable." Plaintiff is currently making attempts to

discover information related to several inappropriate text messages that Officers Zajac and Manley received from a former police officer in 2017. None of the above has any relevance to the force Chandler used, is more prejudicial than probative, and is inappropriate character and propensity evidence, and therefore, evidence of any non-Defendant officers' prior misconduct should be excluded.

**MOTION IN LIMINE NO. 4**: **Preclude Plaintiff from offering evidence, eliciting testimony or making reference of substance abuse by Defendant Chandler.**

Defendant anticipates that Plaintiff will attempt to reference or offer evidence that Defendant went to rehab, years after this incident, and had been assigned to desk duty because of these issues, and was ultimately terminated from the City Police Department. In Missouri state court, just like in federal court, evidence must be both logically and legally relevant. *State v. Anderson*, 306 S.W.3d 529, 538 (Mo. banc 2010). Evidence is logically relevant when it "tends to make the existence of a material fact more or less probable." *Id*. Evidence is legally relevant when its probative value outweighs its costs, such as "unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *Id*.

"As a general rule, impeachment evidence should be confined to the real and ultimate object of the inquiry, which is the reputation of the witness for truth and veracity." *State v. Couch*, 256 S.W.3d 64, 68 (Mo. banc 2008). It is well-settled that drug use does not necessarily bear upon reputation for truth and veracity. *Childs v. State*, 314 S.W.3d 862, 867 (Mo. App. 2010). And "specific acts of misconduct, without proof of bias or relevance, are collateral, with no probative value." *Donovan*, 539 S.W.3d 57, 71 (Mo.App.2017)); citing *State v. Harrison*, 213 S.W.3d 58, 73 (Mo. App. 2006).

The allegations of Chandler's substance abuse is not logically relevant as there is no evidence adduced to date that Defendant Chandler's substance abuse occurred at the time of the

event at issue in this case, or that it played any role in the events of this case. Instead, the testimony regarding Chandler's substance abuse pertains to their struggles with narcotic/opioid use in 2018/2019, long after the incident at issue in this trial. Because any substance use by Chandler is alleged to have occurred long after the shooting at issue, such information is logically irrelevant. Moreover, said evidence is not legally relevant as any reference to Chandler's substance abuse can be intended by Plaintiff for no other purpose than to prejudice the jury against Defendant Chandler, and /or to embarrass and harass him. *Cass Bank & Trust Co. v. Mestman*, 888 S.W.2d 400, 404 (Mo. App. E.D. 1994) (evidence that is unfairly prejudicial or inflammatory is ordinarily excluded). Moreover, such drug use should be excluded as it is not indicative of Defendant Chandler reputation for truthfulness or veracity, and is merely collateral without any probative value and therefore highly prejudicial. Thus, any such reference of substance use by Defendant Chandler should be excluded.

**MOTION IN LIMINE NO. 5: Preclude Plaintiff from offering evidence, eliciting testimony or making reference to witness Ronald Vaughn's forgery indictment, charge, and/or acquittal, and any acts alleged therein.**

It is well-settled that a witness cannot be discredited by interrogating him on cross-examination concerning a mere accusation or indictment for crime. *See* Fed. R. Evid. 609 (permitting impeachment by evidence of criminal *conviction* only); *Holden v. Berberich*, 351 Mo. 995, 998, 174 S.W.2d 791, 792 (1943). The fact that a criminal charge has been made against a witness has no logical tendency to prove that the witness is actually guilty of any offense, or to impair the credibility of his testimony. *Id.* Rather, "an indictment is a mere accusation [which] raises no presumption of guilt." *Id.* An indicted person is presumed innocent until proven guilty beyond a reasonable doubt in a court of law. *Id.* "It does not seem to be fairly open to question that he is deprived of the benefit of this presumption by the admission against him of evidence of the

fact that a charge, based upon ex parte evidence, which, when combated on a trial, may turn out to be utterly untrustworthy, has been made against him." *Id*. "It would be a gross injustice to permit the fact of such a making of a charge to be used to the prejudice of a person against whom the unproved charge is made." *Id.*

On February 4, 2021, Officer Vaughn was charged in the Circuit Court for the City of St. Louis with a class D felony of forgery. (*State v. Vaughan* 2122-CR00262). Vaughan is a witness in this matter. It is alleged that Vaughan forged a doctor's note. Vaughan was later acquitted of these charges. Defendant anticipates that Plaintiff will attempt to introduce into evidence that Vaughan was indicted for forgery. Yet, under the instruction above, the fact of Vaughan's indictment—without a conviction or guilty plea—is probative of nothing and the Court should bar any reference or mention to that indictment and its circumstances entirely. *See also*, *State v. Dunn*, 577 S.W.2d 649, 651 (Mo. banc 1979); *State v. Sanders*, 360 S.W.2d 722, 725 (Mo. 1962); *State v. Ballard*, 657 S.W.2d 302, 306 (Mo.App. 1983).

**MOTION IN LIMINE NO. 6: Preclude Plaintiff from offering evidence, eliciting testimony or making reference to the Jeremy Eden order.**

Defendant anticipates that Plaintiff will attempt to illicit testimony and evidence regarding an order issued in another case by a Judge in 2013. In October 2013, Judge Jack Garvey granted a pre-trial defense motion to suppress drug evidence from the arrest of Jeremy Eden. Witness Vaughan testified at the suppression hearing. After the hearing, Judge Garvey issued an order finding that his credibility in that matter was "questionable." Plaintiff will attempt to introduce Judge Garvey's statement, but such should be excluded as it is inadmissible hearsay, and even if it were not, such evidence is irrelevant to the current case and would confuse the jury as it is the jury—not the trial judge in some completely separate matter—who are tasked with determining the credibility of witnesses in this case.

8

Hearsay is an "out-of-court statement that is used to prove the truth of the matter asserted and that depends on the veracity of the statement for its value." Fed. R. Evid. 802; *State v. Taylor*, 298 S.W.3d 482, 492 (Mo. banc 2009) citing *State v. Kemp*, 212 S.W.3d 135, 146 (Mo. banc 2007). "Generally, courts exclude hearsay because the out-of-court statement is not subject to cross-examination, is not offered under oath, and is not subject to the fact finder's ability to judge demeanor at the time the statement is made." *Id.*, citing *Bynote v. Nat'l Super Markets, Inc*. 891 S.W.2d 117, 120 (Mo. banc 1995).

To the extent Plaintiff seeks to admit Judge Garvey's statement that Vaughan's credibility is "questionable," it is hearsay as it is an out-of-court statement by Judge Garvey that Plaintiff will attempt to use to prove the truth of the matter asserted- namely, that Vaughan's credibility is "questionable." Therefore, any reference to the Garvey order should be excluded as hearsay not within any exception.

In any event, reference to the Garvey order should be excluded because Judge Garvey's credibility determination in an unrelated matter two years before the event at issue in this case, is irrelevant and likely to confuse the jury. "The jury is entitled to believe or disbelieve all, part, or none of the testimony of any witness," and the courts cannot act as a super juror with veto power. *State v. Ashcraft*, 530 S.W.3d 579, 586 (Mo. App. 2017). It is the jury's right in this case to believe all, part, or none of the testimony it hears at trial, irrespective of Judge Garvey's findings in an unrelated matter. If Judge Garvey's order is introduced, it would certainly confuse the jury as to what to do with the order and how much weight to give it. Moreover, Judge Garvey's order would function as a super juror with veto power, which courts avoid. Thus, any reference to Judge Garvey's order in the Jeremy Eden about Vaughan should be excluded.

9

**MOTION IN LIMINE NO. 7:** **Preclude Plaintiff from offering evidence, eliciting testimony or making reference to Travis Robinson.**

Plaintiff should be precluded from offering evidence, eliciting testimony or making reference to Travis Robinson or the lawsuit he filed against the City alleging that Defendant Chandler and Officer Vaughn assaulted him less than a month before the incident at issue in this lawsuit. Shortly after the case was filed, it settled. In another attempt to distract from the day in question, Plaintiff will likely attempt to introduce evidence that Defendant Chandler and witness Vaughan were involved in the 2015 police shooting of Travis Robinson.

The Robinson shooting and subsequent lawsuit is neither logically or legally relevant to this case. The shooting is not logically relevant in that it occurred one month before this incident, involves entirely different circumstances, and has no bearing on any fact in this case. Additionally, the Robinson shooting lacks legal relevance as any reference to it would be unfairly prejudicial and mislead the jury. Thus, any reference to Travis Robinson should be excluded.

**MOTION IN LIMINE NO. 8:** **Preclude Plaintiff from admitting or displaying graphic autopsy or other post-mortem pictures of Plaintiff's Decedent.**

Defendant Chandler seeks to bar the admission or display of postmortem photographs of Ball-Bey on the grounds that their probative value is substantially outweighed by the danger of unfair prejudice to Defendant Chandler under Rule 403. "Photographs, in particular, can be unfairly prejudicial if they are 'sufficiently shocking or repulsive' enough to necessarily elicit and emotional response from the jury." *U.S. v. Carmen*, 2004 WL 1497800, *1 (N.D. Ill. 2004). "Autopsy photographs are almost always gruesome in their depiction of the body of the deceased." *Awalt v. Marketti*, 2015 WL 4338048, *13 (N.D. Ill. 2015). Defendant anticipate that Plaintiff may offer evidence, testimony or reference these photographs and the state of Ball-Bey's body and attempt to publish these photos to the jury in an effort to appeal to the

jury's sympathies and emotions. While photographs of the decedent's body taken at the scene of this police shooting may be relevant and admissible, Defendant request that graphic autopsy or other post-mortem pictures of the Hammett be excluded because by the nature of the content of the photographs, their admission before a jury would be so gruesome and inflammatory that any probative value would be outweighed.

Defendant anticipates that Plaintiff will argue that these photos are relevant to show injuries sustained by Ball-Bey. However, given that the limited relevance of these photographs can be relayed to the jury via much less graphic means that would offer the trier of fact much more contextual information about the injuries Ball-Bey sustained: testimony by the medical examiner, and the medical examiner's diagram of injuries. The photographs would be cumulative of such testimony without providing any additional information to assist the trier of fact, beyond mere shock value, as there is no dispute as to the cause of death in this case or challenge to the location of the gunshot wounds. As such, the admission of such evidence for this purpose would be highly inflammatory and unnecessary where other less prejudicial avenues for admission of the same information are available. *See Gomez v. Ahitow*, 29 F.3d 1128, 11440 (finding that the admission of photographs of the decedent's body at the scene of the homicide to show evidence of gunshot wounds from which he died was only to "inflame the jury" as there was no issue of fact regarding the decedent's death or the cause of death).

Here, where the admission of such photographs would not make it more or less likely that Defendant Chandler used excessive force, the admission of such photographs would not assist the jury in evaluating the central issue in this case, but instead would prejudicially inflame and distract them from their duty. As such, the admission of such evidence should be restricted, and where a

11

party seeks to admit a specific photograph, the Court should evaluate the proposed propensity of such evidence at sidebar before allowing its admission or presentation to the jury.

**MOTION IN LIMINE NO. 9:** **Preclude Plaintiff from asking Defense counsel to stipulate to the admissibility of any evidence or facts in the presence of the jury.**

Plaintiff should be precluded from asking Defense counsel to stipulate to the admissibility of any evidence or facts in the presence of the jury. Of course, the plaintiff may ask pertinent witnesses whether documents or exhibits are what they purport to be, but allowing the plaintiff to request that Defense counsel stipulate to the admissibility of any evidence or facts in front of the jury would serve only to prejudice Defendants in the event Defense counsel declines to stipulate to the admissibility of certain facts or evidence. Although Defendants are not obligated to stipulate to the admissibility of any evidence or facts, the jury—not versed in the law—may interpret Defense counsel's refusal to stipulate as obstructive conduct. In order to avoid any potential prejudice, Defendants ask that plaintiff's counsel not ask Defense counsel to stipulate to the admissibility of any evidence or facts in the presence and hearing of the jury.

**MOTION IN LIMINE NO. 10:** **Preclude Plaintiff from offering undisclosed expert opinions or offering the testimony of witnesses, like Brandon Clark, who were not identified and disclosed as required by the Federal Rules of Civil Procedure.**

Plaintiff must be precluded from offering any undisclosed expert testimony, or calling any witness, including expert witnesses, not previously identified and disclosed as persons with knowledge of relevant facts or opinions pursuant to Fed. R. Civ. P. 26. This includes Brandon Clark who Plaintiff, despite never disclosing Clark before, recently listed him as a may-call witness. (Doc. 468). Presumably, Plaintiff wishes to call Brandon Clark to testify about his pending employment lawsuit against the City, and the various allegations therein, including his allegation that a "Detective Joyner" was mean to him at work. As discussed in Defendant's response in

12

opposition to Plaintiff's motion for leave to issue subpoena, Joyner is merely an eye witness to this case, he had no personal involvement with Clark, and even if he did, the allegations in Clark's employment matter are so attenuated to this use of force incident, that such evidence would only serve to distract and confuse the jury, and is otherwise inappropriate character and propensity evidence. In any event, any disclosure of a previously-unknown witness at this late juncture is prejudicial, and should not be permitted. Fed. R. Civ. P. 37 ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness…at a trial").

**<u>MOTION IN LIMINE NO. 11</u>: Plaintiff's retained expert witness, Matt Noedel, must be precluded from offering any opinion that is not disclosed in his report, including but not limited to, any opinion about the policies, practices or procedures of the SLMPD, or any opinion as to the negligence or "deliberate indifference," of Defendant Chandler because it is not helpful, constitutes an improper legal conclusion, and invades the province of the jury pursuant to FRE 702.**

"Expert testimony is admissible if it is reliable and will help the jury understand the evidence or decide a fact in issue." *Hartley v. Dillard's, Inc*., 310 F.3d 1054, 1060 (8th Cir. 2002); *See also United States v. Arenal*, 768 F.2d 263, 269 (8th Cir. 1985). Although an expert opinion is not inadmissible merely "because it embraces an ultimate issue to be decided by the trier of fact" under FRE 704(a), opinions that are "phrased in terms of inadequately explored legal criteria" or that "merely tell the jury what result to reach" are not deemed helpful to the jury, and are therefore not admissible under Rule 702. Fed.R.Evid. 704 advisory committee's note; *United States v. Whitted*, 11 F.3d 782, 785 (8th Cir. 1993); *accord Dow Corning Corp. v. Safety Nat'l Cas. Corp*., 335 F.3d 742, 751 (8th Cir. 2003) (affirming the trial court's rejection of an expert's legal opinions that "attempt[ed] to tell the court [as the trier of fact] what result to reach") (citations omitted)).

In § 1983 cases governed by the Fourth Amendment reasonableness standard, "the Eighth

Circuit Court of Appeals, despite Rule 704, has limited the ability of experts to offer opinions on the ultimate issue." *Shannon v. Koehler*, No. C 08-4059-MWB, 2011 WL 10483363, at *29-30 (N.D. Iowa Sept. 16, 2011). In such cases, "an expert's opinion 'concerning the reasonableness of the officers' conduct in light of 'Fourth Amendment standards' is a 'legal conclusion' on the ultimate issue of law, not a 'fact-based opinion' that will assist the jury." *Id.* (quoting *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995); accord *Estes v. Moor*e, 993 F.2d 161, 163 (8th Cir. 1993) (finding that because the ultimate conclusion on probable cause is a question of law, expert's opinion on whether probable cause existed was an inadmissible "legal conclusion"); *see also Schmidt v. City of Bella Villa*, 557 F.3d 564, 570 (8th Cir. 2009) (finding "opinions regarding the overall reasonableness" of evidence collection and strip search procedures to be "impermissible legal conclusions," not "fact-based opinions").

"Legal conclusions do not qualify as expert opinions," and a determination that a defendant's conduct constitutes a constitutional violation is a legal conclusion." , at *11 (E.D. Mo. June 20, 2014) (quotation and citations omitted); *See also Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) (district court abused its discretion in allowing police-practices expert to testify that officers' conduct comported with Fourth Amendment).

While expert testimony on "industry practice or standards may often be relevant…and expert or fact testimony on what these are is often admissible," expert testimony on matters of law are not. *S.Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc*., 320 F.3d 838, 841 (8th Cir. 2003). "The role of such an expert 'is to contextualize the evidence the jury will hear about the use of force by the defendant against the plaintiff, in light of the standards practiced by officers throughout the country.'" *Sloan v. Long*, 2018 WL 1243664, at * 5 (E.D. Mo. Mar. 9, 2018) (citations omitted). Although testimony regarding "generally accepted police practices"

14

may be helpful to the jury in certain circumstances, an expert is not entitled to instruct the jury

on the law, nor is he entitled to tell the jury the conclusion he believes the jury should reach. Any

opinion that Mr. Noedel may give that there is evidence that the SLMPD is liable under *Monell*

–even though there are no remaining *Monell* claims—or that the Defendant Officers conduct was

"unreasonable" or they acted negligent and "deliberately indifferent," is plainly impermissible

and must be excluded.


**MOTION IN LIMINE NO. 12: Preclude Plaintiff from offering evidence, eliciting testimony or making reference to any settlement demand or discussions of any nature, the content thereof, amount demanded or offered, or any other comment or statement intended to convey in any manner the existence of settlement negotiations or the amounts thereof pursuant to FRE 408 and 402.**

Plaintiff should be precluded from offering evidence, eliciting testimony or making any

reference to any settlement demand or discussions thereof and preventing Plaintiffs' counsel

from commenting upon the subject during opening statement or closing argument. Rule 408 of

the Federal Rules of Evidence states:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

Absent extraordinary circumstances, it has long been held that offers of settlement or

compromise are inadmissible. *Greyhound Lines, Inc. v. Miller*, 402 F.2d 134, 139 (8th Cir. 1968).

In Missouri, courts have held offers of settlement are inadmissible in order to encourage parties to

reach settlement agreements. *McPherson Redevelopment Corp. v. Watkins,* 743 S.W.2d 509, 510

(Mo.App.1987). Therefore, the court should preclude Plaintiffs from offering any evidence or testimony, or making any reference to settlement offers or discussions.

**MOTION IN LIMINE NO. 13: Preclude Plaintiff from offering evidence, eliciting testimony or making reference about any officer's disciplinary history and/or internal affairs investigations or argument that any non-defendant officers allegedly engaged in misconduct.**

The Court should bar Plaintiff from presenting any evidence of Defendant Chandler (or any other witnesses') disciplinary histories, internal complaint histories, or other evidence regarding unrelated incidents.

Evidence of prior discipline, unrelated complaints, or other unrelated incidents (such as any other officer-involved shootings that any of the defendant officers may have been involved in) is irrelevant as it would have no tendency to make any fact of consequence in determining the action any more or less probable. *See* Rule 401. Such evidence is also not admissible pursuant to Rule 404, which prohibits the introduction of propensity evidence. *See Glaze v. Childs*, 861 F.3d 724, 726 (8th Cir. 2017) (upholding exclusion of evidence that Defendant officer was forced to resign after violating institutional policy in excessive force case, finding evidence was "the type of propensity evidence that Rule 404(b) prohibits); *Hopson v. Fredericksen*, 961 F.2d 1374 (8th Cir. 1992)(upholding exclusion of internal police department records concerning prior allegations of abuse made against defendant police officers); *see also United States v. Oaks*, 606 F.3d 530, 538 (8th Cir. 2010) ("Character evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on the particular occasion"). Any reference to disciplinary records would also be irrelevant to the questions presented in this case and should be excluded. *See* Rule 401*; Frazier v. City of Kan. City*, 467 S.W.3d 327, 341 (Mo. App. 2015) (discussing and affirming trial court's exclusion of

16

disciplinary history of officers, finding it to be a collateral issue which was not an element of plaintiff's claim for relief).

Officer personnel files are closed under Ordinance 61952, codified in Chapter 4.15.010 of the City of St. Louis. "Individually identifiable personnel records pertaining to officer and employees in the City's service shall be deemed closed to the public, except that records pertaining to the names, positions, salaries, and lengths of service of officers and employees in the City's service shall not be closed." Because said records are closed, any reference to such records should be excluded.

Additionally, Plaintiff is not entitled to information on the mere possibility that it might be helpful, but must make "some plausible showing" how the information would have been material and favorable. *State v. Parker*, 886 S.W. 2d 908, 917 (Mo. 1994), citing *Ritchie*, 480 U.S. at 58 n.15 and *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982). Some showing of how desired information will be beneficial to the defense is required before otherwise lawfully confidential information is disclosed to the court or the defense. Here, Plaintiff, has not shown how reference to the disciplinary history or internal affairs investigations of witness officers, involving facts and circumstances completely unrelated to the facts in this case, would be beneficial to the defense. Therefore, any reference to an officer's disciplinary history and/or any internal affairs investigations involving witness officers should be excluded.

Additionally, Defendant anticipates that Plaintiff will attempt to illicit testimony and reference to the disciplinary records of Lt. James Joyner. Specifically, Defendant anticipates that Plaintiff will reference a lawsuit filed in May 2024 that alleges that a Detective – not Lieutenant – Joyner harassed an SLMPD officers who had reported excessive force of another officer. In the petition, it is alleged that "Joyner" called the officer a "snitch" and asked him "How many

people['s] jobs have you took?" It is further alleged in this petition that Joyner went on to harass this officer, an African-American, and called him a "pussy" repeatedly and there was at least one Internal Affairs investigation related to this incident. Plaintiff is attempting to obtain all records to the Internal Affairs investigation of Joyner for his alleged retaliation in *Brandon Clark v. City of St. Louis*; 2422-CC00775. As argued in Defendant's response in opposition to Plaintiff's motion for leave to issue subpoena, Defendant believes Plaintiff has misidentified the Joyner at issue. But even if not, Joyner is an eye witness in this case and the allegations in the petition referenced are pure speculation and are wholly unrelated to the case at hand and occurred years after the incident at issue. Moreover, this investigation and Joyner's involvement, which Defendant believes is none, has no bearing upon Joyner's character for truthfulness and is therefore not admissible and considered improper character evidence.

Defendant also anticipates that Plaintiff will attempt to illicit testimony and reference to the disciplinary records of Matthew Manley and Marcin Zajac. Specifically, Defendant anticipates Plaintiff will attempt to reference an email from the Department of Justice to the Chief of the SLMPD regarding text messages Manley and Zajac received from another officer in which the officer bragged that when a civilian talked back to the officer, the civilian got "blasted in da mouf." Plaintiff is attempting to obtain the Internal Affairs records related to the text messages received by Zajac or Manley. Here again, Zajac and Manley are merely eye witnesses in this case and the allegations regarding these text messages that they did not send, but merely received, is based on pure speculation and are wholly unrelated to the case and occurred years after the incident at issue. Moreover, this investigation and Zajac and Manley's involvement has no bearing upon Zajac and Manley's character for truthfulness and are therefore not admissible and considered improper character evidence.

18

Any evidence of other instances—both before and after the August 19, 2015 incident—in which non-party SLMPD officers were disciplined is not relevant, has no probative value, is improper and highly prejudicial, will confuse the issues, and do not assist the jury in determining whether Ball-Bey's rights were violated in this case. Moreover, any reference to non-defendant officers' discipline or allegations in other lawsuits should be excluded. See Rule 401; *Frazier v. City of Kan. City*, 467 S.W.3d 327, 341 (Mo. App. 2015) (discussing and affirming trial court's exclusion of disciplinary history of officer, finding it to be a collateral issue which was not an element of plaintiff's claim for relief). The same is true with respect to evidence regarding other, unrelated police shootings of these non-defendant police officers. Such evidence is irrelevant, more prejudicial than probative, and has no bearing on the issue in this case: whether the use of force on the date in question was objectively reasonable. *See Graham v. Connor*, 490 U.S. 386, 397 (1989) ("The 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation"). The probative value of this evidence is wholly lacking and outweighed by its prejudicial nature because it does not assist the jury in deciding whether any of the material facts are true. And, to the extent the FIU audit or questions regarding involvement in other police shootings or internal investigations are offered to suggest that Defendant acted improperly here, that is improper character evidence that is inadmissible under Federal Rule 404. *See* Fed.R.Evid. 404(b)(1). In addition to being irrelevant and improper, such evidence is also substantially prejudicial. To allow argument or testimony regarding the alleged misconduct of non-Defendant officers invites the jury to find against Defendant Chandler to compensate Plaintiff for any alleged injury caused by the misconduct. Defendant Chandler cannot be held liable for the actions of another person. *Martin v.*

*Tyson*, 845 F.2d 1451, 1455 (7th Cir. 1988). Accordingly, Plaintiff, his witnesses, and his counsel should be barred from offering any testimony, evidence, or argument regarding alleged misconduct, internal investigations or discipline of non-Defendant officers and any alleged injury resulting therefrom.

**MOTION IN LIMINE NO. 14: Preclude references and testimony regarding protests against police brutality/shootings, including the Black Lives Matter Movement, and other high profile cases involving alleged police misconduct.**

Plaintiff must be precluded from referencing protests or movements related to police brutality, police shootings, or no-knock warrants as it is irrelevant and highly prejudicial. Additionally, Plaintiff must be precluded from making any argument that highly publicized cases or frequent media coverage related to these topics is evidence that these instances happen. This evidence should be excluded as it has no probative value and it is highly inflammatory and prejudicial. *See Fox-Martin v. County of Cook*, 2010 WL 4136174 at 4 (N.D.Ill.2010) (barring all "evidence of police conduct unrelated to the Deputy Sheriffs in this case [as it] has only minimal probative value and is highly inflammatory and prejudicial). *See also Walker v. County of Cook*, 2009 WL 65621 at 1 (N.D. Ill. 2009) (barring all evidence regarding other publicized incidents of alleged excessive force because "[t]he probative value of publicized incidents of excessive force is limited given that such incidents are unrelated to Walker's specific claims of excessive force[, and] … the prejudicial effect of such evidence could be substantial given the public nature of such events and would unfairly prejudice a jury"); *Redmond v. City of Chicago*, 2008 WL 539164, at 6 (N.D.Ill.2008) (barring any reference to instances of police misconduct unrelated to the case because it would be irrelevant and overly prejudicial).

**MOTION IN LIMINE 15: Preclude Plaintiff and witnesses in the courtroom from wearing images of Decedent or references to protests against police brutality/shootings, and other high-profile cases involving alleged police misconduct.**

Plaintiff and other individuals in the gallery should be barred from carrying signs or wearing clothing, pins, armbands, hats, or any other item bearing the name or resemblance of the deceased or in any way reference his death or the incident at issue in this case as it is highly prejudicial. Memorabilia related to this case or other high-profile cases involving police brutality in the presence of jurors would prejudice the jury against Defendants, cause a distraction, and intimidate jurors. Local rule 7.01(B)(1) states "attorneys and parties to an action shall not intimidate, directly or indirectly, communicate with any potential juror, relative, friend or associate thereof at any time concerning the action, except with leave of Court." The presence of memorabilia related to this case or other high-profile cases involving police brutality constitutes indirectly communicating with and intimidating jurors and should accordingly be barred from the courtroom.

**MOTION IN LIMINE NO. 16: Preclude Plaintiff from offering evidence, testimony or reference to the race of the parties or witnesses or argument that this shooting was racially motivated.**

Plaintiff should not be allowed to introduce evidence of the race of the parties or witnesses and should not be able to argue that this shooting was racially motivated. The jury will be able to observe the parties and witnesses when they testify and the jurors may come to their own conclusions about the race or ethnicity of the parties or witnesses. However, any testimony from the parties or witnesses about their race or reference by counsel to the race of the parties and witnesses would be an attempt to inflame the jury and capitalize upon civil unrest regarding racially motivated police practices. Evidence of racial motivation in an excessive force claim under the Fourth Amendment is not relevant because "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force…" *See Graham v. Connor*, 490 U.S. 386, 397 (1989). Such evidence is also irrelevant because Plaintiff does not allege in his

21

Complaint that the shooting was racially motivated or that Chandler violated Ball-Bey's rights under the Equal Protective Clause. *See Wren v. United States*, 517 U.S. 806, 813 (1996) ("[T]he Constitution prohibits selective enforcement of the law based on considerations such as race. But the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment.").

       <u>**MOTION IN LIMINE NO. 17:**</u> **Preclude Plaintiff from offering testimony or other evidence of damages that are not authorized by Missouri's wrongful death statute on the wrongful death claim, including Dennis Ball-Bey's grief and bereavement.**

       With regard to Plaintiff's wrongful death claim, Missouri's wrongful death statute dictates what types of damages are recoverable. The statute allows for "such damages as the trier of the facts may deem fair and just for the death and loss thus occasioned, having regard to the pecuniary losses suffered by reason of the death, funeral expenses, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of" the decedent, and damages for pain and suffering of the decedent between the time of injury and death, as well as mitigating or aggravating circumstances." § 537.090, RSMo. However, the statute specifically excludes "damages for grief and bereavement by reason of the death." § 537.090, RSMo. Consequently, Plaintiff should be prohibited from testifying about or offering evidence of his own grief and bereavement as a result of Ball-Bey's death, including any changes in his mental health or health condition and any resulting loss of income from his job due to mental anguish. *See Morrissey v. Welsh Co*., 821 F.2d 1294, 1304 (8th Cir. 1987)(prejudicial arguments by plaintiff's counsel during opening and closing that sought to invoke jury's sympathy constituted reversible error). Further, Plaintiff should not be permitted to testify to or present evidence of his loss of consortium in the presence of the jury as those damages are not recoverable under the excessive force claim, which the jury is deciding. The presentation of such evidence in front of the jury will

only serve to confuse the jury and mislead them about what types of damages are available on the excessive force claim. Moreover, Plaintiff cannot testify that Ball-Bey would have made a specific amount of money each year or over his lifetime and given him a percentage of his earnings because such opinion is speculative and he lacks foundation to formulate such an opinion that is normally reserved for expert witnesses. Similarly, Plaintiff's counsel cannot argue that Ball-Bey would have provided his father, mother, aunt, or other family members, with a specific amount of money over the course of his lifetime had he survived because there is no expert witness testimony that establishes Ball-Bey's life expectancy or potential earning capacity.

**MOTION IN LIMINE NO. 18:** **Preclude Plaintiff from offering testimony from Barbara Chandler and Shonettda Ball regarding their relationship with Ball-Bey.**

Plaintiff should not be permitted to call Barbara Chandler and Shonettda Ball as witnesses to testify at trial. Although Chandler and Ball appeared on Plaintiff's supplemental witness list for trial, Plaintiff did not identify her in their Rule 26 Disclosures under subsection (a)(1)(A)(i) as someone who the Plaintiff may use to support his claims.  Chandler is Ball-Bey's mother, she is not a party to the litigation, and Plaintiff has identified her as a witness that would testify about her relationship with Ball-Bey. Ball is Ball-Bey's aunt, she is not party to the litigation, and Plaintiff has identified her as a witness who would testify about her relationship with Ball-Bey. However, Chandler and Ball will not offer any relevant testimony at trial as they were not witnesses to the shooting at issue. Based upon Plaintiff's disclosure of Chandler and Ball, their testimony will be how they have been affected by Ball-Bey's death. As discussed in Motion in Limine No. 17, Plaintiff cannot recover damages for his own grief or bereavement, so Chandler and Ball's testimony are not relevant.

**MOTION IN LIMINE NO. 19:** **Preclude evidence or argument that anyone,**

**including Dennis Ball-Bey and Barbara Chandler, suffered medically diagnosable or medically significant harm absent requisite medical expert testimony regarding causation.**

Plaintiff should be precluded from offering evidence or argument that Dennis Ball-Bey or Barbara Chandler suffered medically diagnosable or medically significant harm as a result of the incident at issue in this case absent requisite expert testimony that either were diagnosed with a medically significant condition and that the medically significant condition was caused by the police shooting at issue in this case. Plaintiff has not disclosed any medical expert or expert opinion with respect to these issues, and so should be precluded from offering evidence or argument that Dennis Ball-Bey or Barbara Chandler suffered any medically diagnosable harm as a result of the incident at issue in this case. Plaintiffs, as lay witnesses, are not competent to testify regarding causation of their alleged medical conditions or diagnoses or any need for future medical care. *See Smith v. Tenet Healthsystem SL, Inc., 436 F.3d 879, 888* (8th Cir. 2006)*; see also Brown v. Seven Trails Investors*, LLC, 456 S.W.3d 864, 870 (Mo. App. E.D. 2014) citing *Brickey v. Concerned Care of the Midwest, Inc*., 988 S.W.2d 592, 596-97 (Mo. App. E.D. 1999) (the cause of sophisticated injuries is not within a layperson's common understanding and, therefore, the plaintiff must establish the causal relationship through expert medical testimony). Neither Dennis Ball-Bey, Barbara Chandler, or any other lay witness is competent to testify that the incident at issue in this case caused any medically diagnosable condition, including but not limited to PTSD, and any such testimony by plaintiff or any lay witness would be conjecture and prejudicial to Defendant.

**MOTION IN LIMINE NO. 20**: **Preclude Plaintiff from introducing into evidence a New York Times article which purportedly quotes Dr. Michael Graham.**

In Plaintiff's Exhibit List, he lists as a possible exhibit a New York Times article, which purportedly quotes Dr. Michael Graham, City's Medical Examiner. (Doc. 470, p. 3). However, the

newspaper article is hearsay, and Dr. Graham's quotes within it are hearsay within hearsay. *In re Acceptance Ins. Companies, Inc. Sec. Litig.*, 352 F. Supp. 2d 940, 950 (D. Neb. 2004) ("the newspaper article is hearsay…the newspaper article is stricken because it is hearsay"), citing *Eisenstadt v. Centel Corp.,* 113 F.3d 738, 744–745 (7th Cir.1997) (holding that district judge's decision to admit a newspaper article would have been an abuse of discretion, and that the article, offered in opposition to a motion for summary judgment, was not admissible because there was doubt about its meaning and accuracy, and because the report's author had been available to give an affidavit or deposition).

**MOTION IN LIMINE NO. 21**: **Preclude Plaintiff from offering into evidence a youtube video purportedly depicting a spinal shock injury.**

Plaintiff offers as a possible exhibit at trial a youtube video depicting an injury to a football player after he makes a tackle. It is unclear from the two-minute video what causes the player's injuries, whether or not the player suffered from spinal shock, and what relevance or similarities such video would have to this case. To the extent that Plaintiff points to this video in attempts to show what he believes happened to Mansur Ball-Bey after he was shot, the video lacks foundation, is prejudicial, contains hearsay, and is irrelevant. As such, the youtube video should be excluded.

**MOTION IN LIMINE NO. 22**: **Preclude Plaintiff from introducing evidence of "Animation of Incident."**

Plaintiff seeks to introduce into evidence an "Animation of Incident." What animation it is, who it is from, and what the animation depicts of the "incident" is not clear from Plaintiff's Exhibit List. Defendant does not have record of an "Animation of Incident" being produced to him during discovery. In any event, any animation or depiction of the use of force, especially where such animation contradicts eye witness testimony, lacks foundation, is prejudicial, and irrelevant, and therefore, should be excluded. *See Rochelle v. Ulrich*, 4:20-CV-4043, 2022 WL 3330576, at

*3 (W.D. Ark. Aug. 11, 2022) (excluding an expert's video animations where the disclosure of the animated video was late and prejudicial).

Respectfully submitted,

**SHEENA HAMILTON**
**CITY COUNSELOR**

/s/ *Abby Duncan*
Abby Duncan #67766 MO
*Associate City Counselor*
Rebecca Sandberg-Vossmeyer #70342MO
*Associate City Counselor*
Rachael Hagan #74923
Assistant City Counselor
City Hall, Room 314
St. Louis, MO 63103
DuncanA@stlouis-mo.gov
VossmeyerR@stlouis-mo.gov
HaganR@stlouis-mo.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2025 the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to all attorneys of record.

/s/ Abby Duncan