IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DENNIS BALL-BEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Cause No. 4:18-CV-01364-SPM |
| v. | ) | |
| | ) | |
| KYLE CHANDLER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S REPLY
IN SUPPORT OF HIS MOTION IN LIMINE**

Plaintiff Dennis Ball-Bey files a brief reply in response to particular issues raised by Defendants' Response (ECF No. 492).

Plaintiff's MIL 3: Circuit Attorney Report

As Plaintiff argued in its original briefing on Motion in Limine No. 3, "[a]s a general rule, evidence that criminal charges were not brought is inadmissible in a civil case arising out of the same events as the criminal charges." Defendant is trying to end run this rule by using the public records exception. The public records exception does not apply to the Circuit Attorney's Report for numerous reasons.

First, the report at issue has a fundamentally different in character than the cases cited by Defendants, which dealt with on-the-ground, technical investigations into incidents like airplane crashes. Here, Defendant has not identified who did the investigation, nor has he produced items that would allow a foundation to be laid for the basis for this document. Defendants failed to disclose in their Witness List any person who had any first-hand involvement with the CAO

1

Report. This comes as no surprise, as the document itself contains no indication of the methods used or even who the investigators were.

Second, the report is not a factual finding. The report lays out the Circuit Attorney's rationale for not charging the officer. This is a legal conclusion and thus inadmissible hearsay. *Akins v. City of Columbia*, No. 2:15-CV-04096-NKL, 2016 WL 4126549, at *14 (W.D. Mo. Aug. 2, 2016), *aff'd sub nom. Akins v. Knight*, 863 F.3d 1084 (8th Cir. 2017); *Bates v. Kender*, 537 F. Supp. 2d 281, 282–83 (D. Mass. 2008) (ruling inadmissible conclusions based on Massachusetts law with respect to self-defense and deadly force and applying the criminal standard of beyond a reasonable doubt because it had marginal relevance and clearly outweighed by the danger of unfair prejudice).

Third, "apart from the FRE 803 issue, the Eighth Circuit has held that the legal conclusions of expert witnesses on police conduct are not admissible." *Id. citing Schmidt v. City of Bella Villa*, 557 F.3d 564, 570 (8th Cir. 2009) ("expert testimony on reasonableness of police behavior in light of Fourth Amendment standards is statement of legal conclusions and not admissible"). Undersigned counsel could not find any case that permitted the admission of a prosecutor's report detailing reasons not to charge the officers, and Defendant certainly has not cited any.

Fourth, the "factual findings" in a report qualifying for a Rule 803(8)(C) exception to the hearsay rule must, however, be based upon the knowledge or observations of the preparer of the report. *Miller v. Field*, 35 F.3d 1088, 1091 (6th Cir. 1994) ("[p]olice reports have generally been excluded except to the extent to which they incorporate firsthand observations of the officer.") The identity of the author of the report is unknown, but the report does not contain the personal knowledge or observations of the unknown author. Instead, the author simply regurgitates the hearsay statements of others, juxtaposing them side-by-side. Investigate reports that contain

2

hearsay are not admissible unless the underlying hearsay is also admissible. *Richardson Int'l (US) Ltd. v. Buhler Inc.*, No. 8:14CV148, 2017 WL 1277814, at *2 (D. Neb. Mar. 31, 2017) ("Generally the court does not admit such reports due to the double hearsay issue and usual legal opinions found in them."). If the investigation reports what witnesses, neighbors, former employees, and other investigators had told them, the reports are hearsay if offered for the truth of the matter asserted. *Id.* citing *Cedar Hill Hardware & Const. Supply, Inc. v. Ins. Corp. of Hannover*, 563 F.3d 329, 344 (8th Cir. 2009).

Finally, even if the report is deemed a public record, there are many reasons to question the trustworthiness of this document. The report was not created at or near the time of the incident but was produced on June 2, 2016, almost ten months after the incident. *Elite Aviation Serv., LLC v. Ace Pools, LLC*, No. 5:19-CV-05134, 2021 WL 2220702, at *2 (W.D. Ark. June 2, 2021) (factors the Court looks to determine trustworthiness include the timeliness of the investigation). As noted above, the report does not rely upon observations or investigations by the investigator but instead rely on statements of others, which vary greatly in their reliability.

**III. CAO RENDERINGS OF SCENE**

*Map shows approximate path of each involved witness on the day of the shooting. The dashed path is the only path that cannot be corroborated by witness testimony. Please note: Maps are not exactly to scale. All locations/sizes are approximate.*



An overarching problem with the report (ECF No. 409-17) is that even the recitation of the "facts" contain glaring errors that underscore its untrustworthiness. For example, above is the CAO Report's representation of the cartridge casings, with dashes indicating where casings were (according to the Report) recovered. This diagram is wrong. It fails to identify the two cartridges that were not on the parking pad but which were instead east of the parking pad. Most glaringly, *it completely omits the cartridge casing that was found 52 feet east of the alley line*. 409-2 at ¶ 50. Perhaps no piece of physical evidence calls into question Chandler and Vaughan's story as much as the cartridge casings, and the CAO Report dealt with the issue by simply pretending that the casing did not exist.

But the above is not the only mistake made by the CAO Report. Among the other incorrect assertions made in the CAO Report are the following:

- The map (above) reports as fact that Ball-Bey hopped over the fence south of 1241 Walton, which directly contradicts the statements made by Secret Witness—that Ball-Bey ran west to the gate and entered the alley that way. See 409-2, PSAUMF ¶ 4.
- A different CAO Report map (ECF No. 409-17 at 10) shows Ball-Bey on the parking pad when he was shot. However, both diagrams created by Vaughan and Chandler in the days after the shooting have Ball-Bey into the grass and off the parking pad. *See* ECF No. 409-23 (Vaughan); 409-25 (Chandler). How dispute is unquestioned by the CAO Report, nor does the CAO Report explain the source for its claim that Ball-Bey was on the parking pad.
- The CAO Report states that "officers' statements **and witness testimony** indicate that Ball-Bey was turned toward [Vaughan when Ball-Bey was shot]". While Chandler and Vaughan have stated that Ball-Bey turned toward Vaughan with his gun in his hand, no other witness did has, and once again the CAO Report provides no citation to its claim that another witness saw Ball-Bey turned toward Vaughan.
- The CAO Report accepted as true that the officers shot together, all at one time, while ShotSpotter audio available to the CAO (but not referenced) called into question this version: the shots were in fact 3.5 seconds apart.

The above are only some such discrepancies showing that the CAO Report is unreliable. In conclusion, the CAO Report is fundamentally unreliable, and Defendant should be prohibited from introducing it as evidence, referencing it, or using it in argument to justify Chandler's shooting.

Plaintiff's MIL 4 : Argument of No IAD Finding.

Defendant admits that his expert will justify his claims that the use of force was appropriate by relying upon the fact that Chandler was not subject to IAD discipline for this incident. ECF No. 492 at 11. But Chandler *could not* have been disciplined for this: the City of St. Louis's own corporate designee stated that, contrary to its own policies, IAD did not investigate police shootings. *See* ECF No. 409-2 at ¶¶ 122-125. Indeed, there is not a single record of an IAD investigation in this case that has been produced.

5

| | |
|---|---|
| Dated:  January 21, 2025 | **KHAZAELI WYRSCH, LLC** |

*/s/ John M. Waldron*
John M. Waldron, 70401MO
James R. Wyrsch, 53197MO
Javad M. Khazaeli, 53735MO
911 Washington Avenue, Suite 211
St. Louis, Missouri  63101
(314) 288-0777
(314) 400-7701 (Fax)
jack.waldron@kwlawstl.com
james.wyrsch@kwlawstl.com
javad.khazaeli@kwlawstl.com

THE LEGAL SOLUTIONS GROUP
Jermaine Wooten, 59338MO
10250 Halls Ferry
St. Louis, Missouri  63136
(314) 736-5770
(314) 736-5772 (Fax)
wootenjlaw1@aol.com

Attorneys for Plaintiff