UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DENNIS BALL-BEY,                              )
                                             )
          Plaintiff,                         )
                                             )        Cause No. 4:18-CV-01364-SPM
v.                                           )
                                             )
KYLE CHANDLER.                               )
                                             )
          Defendant.                         )

**PLAINTIFF'S OBJECTIONS AND RESONSES TO
DEFENDANT'S MOTIONS IN LIMINE**

Plaintiff's objections and responses to Defendant's motions *in limine* ("MIL") are detailed

below. The bold subheadings are the summary descriptions of the motions provided by Defendants.

**MOTION IN LIMINE NO. 1**: **Preclude Plaintiff from offering evidence, eliciting
testimony or making reference to the Force Investigation Unit (FIU), the FIU audit, or other
investigations into police shooting matters.**

Defendant's overbroad MIL #1 can be broken down into three sections, and Plaintiff will

address them in turn:

**A. The Force Investigation Unit ("FIU").**

Defendant has provided no reason why all information about the Force Investigation Unit

should be excluded on its own. As this Court knows, the FIU was the sole entity tasked with

investigating the circumstances of an officer-involved shooting in 2015. The fact that FIU was on

scene and subsequently investigated the shooting, including interviews with nearly every officer

that will testify at the trial, is likely to come up and is neither controversial nor prejudicial.

Moreover, the timeline and manner of the investigation that FIU conducted is likely to be relevant

in this case because of the evolving stories put forth by witnesses in the days and weeks after the

incident.

Defendant has already indicated that he, himself, may call investigators of the FIU—his witness list includes three former FIU detectives: Robert Skaggs, Steven Burle, and Jamie Simpher. D.E. 465 at 2. Defendant has no reason to endorse these witnesses unless Defendant also agrees that FIU—and their investigation—is relevant to the case.

### B.  The FIU Audit

Plaintiff agrees that the sections of the FIU Audit that relate to shootings, other than the Ball-Bey shooting, are not likely to be relevant in this case.

However, at issue in this case is the way FIU conducted its investigation of the Ball-Bey shooting. Whether explicitly or implicitly, Defendant will seek to demonstrate that the recollections of the various eyewitnesses to the incident were genuine and unadulterated. Plaintiff has the right to question these claims, which will of course involve discussing the context and interviews of FIU.

Additionally, the FIU Audit also includes policies and directives of the Force Investigation Unit, generated by the commander of FIU, former Lt. Roger Engelhardt. Just as Defendant has indicated that the policies of the SLMPD related to use of force may be relevant in this case, Plaintiff believes that the FIU's policies, practices, and guidance as to how to investigate and, more importantly, how to interrogate a witness so as not to influence the witness's testimony are relevant and should not be excluded. Moreover, nothing about the FIU policies or directives are prejudicial or reflects poorly on FIU.

The FIU Audit contains damning findings from some of the top officers in the Department that call into question the intent and motivation of the officers of FIU. For instance, ███████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ These

findings are relevant as the jury assesses the testimony and evidence gathered by FIU in the days and weeks after the shooting especially considering Defendant's endorsement of three FIU investigators who can only testify to their investigation, as they were not on the scene when the shooting happened.

### C. "Other investigations into police shooting matters".

As best as Plaintiff can understand from such a vague request for exclusion, Defendant seeks to exclude references to other poorly-investigated FIU incidents. Plaintiff has no intention to introduce specific evidence about these other investigations.

Defendant also seeks exclusion of any evidence related to misconduct of other FIU officers. For instance, Officer Steven Burle, whose job was to investigate potential excessive force of his fellow officers against civilians, had himself a colorful career of failing to intervene in such misconduct by his fellow officers. Since Defendant endorsed Officer Burle as a witness, such evidence may be used to call into question the potential pro-police bias that may have existed during the investigation and is relevant.

**MOTION IN LIMINE NO. 2: Preclude Plaintiff from offering evidence, eliciting testimony, or making any reference that Defendant and/or other SLMPD officers covered up Defendant's use of force or the circumstances thereof.**

Plaintiff's theory of the case is that the physical evidence demonstrates that the account of the shooting by Chandler and other SLMPD officers is not credible. Additionally, this Court has already found that a reasonable juror could find that the physical evidence demonstrates that the officers' accounts are not credible and shows that Ball-Bey was unarmed when he was shot. *See, e.g.*, D.E. 435 at 14-15. This theory necessarily implies that Chandler and other officers covered up the circumstances of the shooting by fabricating testimony. This evidence includes eyewitness testimony regarding Ball-Bey's location when he threw the gun, the position of the casings, audio

evidence of the shots, and expert testimony regarding Ball-Bey's ability to run after his spine was severed by Chandler's bullet.

This evidence is relevant because "it has any tendency, however slight," to make Defendant's claim that Ball-Bey was armed when Chandler shot him "less probable than it would be without the evidence." *U.S. v. Holmes*, 413 F.3d 770, 773 (8th Cir. 2005). Defendant's justification for the shooting is that Ball-Bey was pointing a gun at Vaughan when Chandler shot and killed Ball-Bey. The evidence Plaintiff intends to introduce directly contradicts this narrative. "[W]here, as here, the actions of the [decedent] immediately prior to the shooting are disputed, evidence that tends to make one side or the other's version of the events more likely to be accurate is admissible for that purpose." *Wilson v. City of Chicago*, 758 F.3d 875, 884 (7th Cir. 2014).

Further, whether Ball-Bey was unarmed is probative of the reasonableness of Defendant's actions, bearing directly on the issue of excessive force. Notably, Defendant's reliance on *Mitchell v. City of Chicago* is misplaced. In *Mitchell*, the question was whether the failure to test the weapon for DNA evidence was probative of whether the officers were fearful at the time of the underlying shooting. 862 F.3d 583, 587 (7th Cir. 2017). This is a markedly different inquiry than the Court in this case is asked to decide, which is whether evidence tending to prove that Ball-Bey was not armed at the time of the shooting is probative of whether Defendant was reasonable in his use of excessive force. Far from being the post-shooting investigatory failure to test analyzed in *Mitchell*, the evidence Plaintiff intends to introduce comes from direct eyewitness testimony, the physical evidence at the scene as documented by SLMPD, and Ball-Bey's condition immediately after being shot.

Moreover, any potential risk of unfair prejudice is substantially outweighed by the probative value of the evidence. The reasonableness of deadly force is dependent on the totality of

the circumstances, including "whether the suspect poses an immediate threat to the safety of the officer or others." *Wallace v. City of Alexander, Arkansas*, 843 F.3d at 768. Whether Ball-Bey was unarmed is probative of whether he posed an immediate threat to the safety of Defendant or Vaughan. See *Torres v. City of St. Louis*, 39 F.4th at 504, 508 (noting that whether the decedent was armed and whether a weapon was located near to his body is material to the question of excessive force). If Ball-Bey posed no immediate threat to Defendant or Vaughan, deadly force would not be reasonable. *Franklin v. Peterson*, 878 F.3d 631, 635 (8th Cir. 2017) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)).

The evidence that Plaintiff does intend to introduce would not confuse or mislead the jury. Even if there was a minimal risk of confusion or misleading, that risk is substantially outweighed by the probative value of the evidence.

**MOTION IN LIMINE NO. 3: Preclude Plaintiff from offering evidence, eliciting testimony, or making any argument that any non-Defendant officer allegedly engaged in misconduct.**

Here, Plaintiff is asserting that two versions of events are being proposed to the jury by the parties. The Defense maintains that Mansur Ball-Bey had a firearm which he threw backwards after being shot in the back, while Plaintiff alleges that Mansur was shot in the back while possessing no firearm, 164 feet from where the weapon was found. The jurors will be charged with determining which one of these versions is true, and to do so, the jury must be able to assess the credibility of the witnesses who provide accounts of what occurred in this case. Given this posture, and impeachment that gets at the "truthfulness or untruthfulness" of witnesses is probative and important.

For example, Officer Vaughan's past drug use, his criminal charge for forgery, and the state court judge's order which found his credibility "questionable" are all topics which fall squarely in

Fed. R. Evid. 608(b)[1] and should be inquired into, so that jurors may assess Vaughan's credibility, especially since he is Defendant's partner and one of only two eyewitnesses to the shooting. And as discussed below in response to Motion in Limine 4, testimony regarding drug addiction is routinely permitted because of its effect on a witness's memory.

Plaintiff further intends to question Marcin Zajac and Matthew Manley about their receipt of text messages in which a fellow officer bragged about punching a civilian in the mouth. Their receipt of this message contradicts and impeaches the position they are likely to take at trial: namely, that they have no specific bias toward their fellow police officers but are instead neutrally reporting what they witnessed. While they are not responsible for the originating texts, any response, action, or *inaction* by them that go to their credibility can be and should be challenged.

Defendant argues that Plaintiff should be precluded from offering evidence or argument that any non-Defendant officer engaged in misconduct, and cites *Fuery v. City of Chicago*, 2015 WL13682033 (N.D. Ill.2015) as a basis for this argument. However, this argument fails because the evidence being offered in *Fuery* was the police report detailing the actions by police leading to the arrest in that case. The court merely indicated that since some of the officers who would be testifying to the contents of that report, Plaintiff did not implicate them in misconduct noted in the report since they were not parties to the lawsuit. It had nothing to do with the "truthfulness or untruthfulness" of the witnesses or their bias, which are at issue here.

---

[1] Fed. R. Evid. 608(b) gives the court discretion to allow questioning during cross-examination on specific bad acts not resulting in the conviction for a felony if those acts concern the witness' credibility. *United States v. Hastings*, 577 F.2d 38, 40–41 (8th Cir. 1978). This impeachment of a witness by cross-examination is allowed if the "conduct relates to the witness's character for truthfulness or untruthfulness. The court balances a question's relevance to honesty and veracity with its prejudicial impact." *United States v. Dennis*, 625 F.2d 782, 798 (8th Cir. 1980).

**MOTION IN LIMINE NO. 4: Preclude Plaintiff from offering evidence, eliciting testimony or making reference of substance abuse by Defendant Chandler.**

Defendant Chandler's substance abuse is intertwined with the IAD investigation into his actions that led to a finding of dishonesty and his eventual dismissal from the SLMPD. Plaintiff believes that questions and evidence related to this incident are relevant when Plaintiff questions Mr. Chandler about the findings of IAD and his department that he lied, pursuant to Fed. R. Evid. 608. It is appropriate as both impeachment and rebuttal evidence.

Moreover, Courts routinely permit evidence of a witness's drug addiction when the witness's memory or mental abilities are legitimately before the court. *United States v. Payton*, 636 F.3d 1027, 1041 (8th Cir. 2011); *United States v. Hodge*, 594 F.3d 614, 618 (8th Cir. 2010); *United States v. Cameron*, 814 F.2d 403, 405 (7th Cir. 1987) (allowing the defense to introduce evidence of the effect that witness's drug use might have had on his memory); *Drew v. United States*, 46 F.3d 823, 828 (8th Cir. 1995) (permitting cross-examination of witness with respect to treatment for drug addiction and depression, and threats to commit suicide); *Bauman v. Colvin*, No. 4:12 CV 233 DDN, 2013 WL 1112782, at *7 (E.D. Mo. Mar. 18, 2013) (Plaintiff's drug addiction relevant because her case rests in large part on her credibility); *Lawrence v. United States*, No. C18-38-LTS, 2020 WL 11567739, at *10 (N.D. Iowa Feb. 5, 2020) (witness's drug addiction relevant to credibility).

Indeed, in many instances, Courts not only allow such evidence but also instruct the jury that they must examine the testimony of drug addicts with greater care. *United States v. Gardner*, 139 F. App'x 762, 765 (8th Cir. 2005); *United States v. Payton*, 636 F.3d 1027, 1041 (8th Cir. 2011).

Defendant Chandler's memory and mental abilities are central to this case. Chandler's prior statements indicate he started using opiates before he shot and killed Mansur Ball-Bey. But even

if his drug addiction started after the event, such testimony is still relevant to his memory and ability to accurately recall the events of that day.

**MOTION IN LIMINE NO. 5: Preclude Plaintiff from offering evidence, eliciting testimony or making reference to witness Ronald Vaughn's forgery indictment, charge, and/or acquittal, and any acts alleged therein.**

Ronald Vaughan was terminated when SLMPD determined that he filed a forged medical note claiming that he had been diagnosed with Covid-19 on December 1, 2020. The investigation did not require very advanced law enforcement methods as the forgery would have been clear to a three-year-old. Apparently, Officer Vaughan just used the cut and paste option on his computer to type over a scanned note from a different date and patient:



As a result of submitting a forged document to illegally steal sick time, Officer Vaughan suffered two consequences: he was terminated for lying and he was criminally charged for forgery.

Vaughan was eventually acquitted of the forgery criminal charge.  Defendant is correct that the indictment, charge, and/or acquittal are inadmissible under Fed. R. Evidence 609(b). But Plaintiff is not planning on offering evidence, eliciting testimony, or referring to the indictment, charge, or acquittal.

But "acts alleged therein" is a different story. Vaughan's clearly forged note was forwarded to SLMPD two days after at Vaughan sent it. As a result, SLMPD opened an "Allegation of Employee Misconduct Report" ("EMR") against Vaughan within the Internal Affairs Division. ██

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██ As a result of the sustained finding of misconduct, Vaughan was subject to an administrative review that culminated in his termination. ███████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████ On March 17, 2021, Vaughan's termination for dishonesty was upheld by the St. Louis Director of Personnel.

The sustained allegations that Vaughan lied, and the circumstances thereof, are admissible. Fed. R. Evid. 608(b) gives the court discretion to allow questioning during his examination on specific bad acts not resulting in the conviction for a felony if those acts concern the witness' credibility. *United States v. Hastings*, 577 F.2d 38, 40–41 (8th Cir.1978). Admissibility is more likely when there has been a sustained finding of dishonesty. *United States v. Alston*, 626 F.3d 397, 404 (8th Cir. 2010) *referencing United States v. Novaton*, 271 F.3d 968, 1006–07 (11th Cir.2001), *cert. denied*, 535 U.S. 1120, 122 S.Ct. 2345, 153 L.Ed.2d 173 (2002).

The sustained allegation of lying goes directly to Vaughan's character for truth-telling. Defendant has listed Vaughan as a "will call" witness, as has Plaintiff. It is also probative that Vaughan has lied in his capacity as a police officer. There is no prejudice to Defendant other than his partner being exposed as a liar, which is exactly what Fed. R. Evid. 608(b) allows.

**MOTION IN LIMINE NO. 6: Preclude Plaintiff from offering evidence, eliciting testimony or making reference to the Jeremy Eden order.**

Ronald Vaughan was Defendant's partner and one of two eyewitnesses to the killing of Mansur Ball-Bey. His credibility is central to this case. On September 24, 2013, Missouri Circuit Court Judge Jack Garvey granted a motion to suppress finding that the "credibility of police officer [Vaughan] is questionable." This was after Judge Garvey watched a video of the incident which captured Vaughan and Chandler arresting Jeremy Eden. Implicit in Judge Garvey's finding is his determination that the video contradicted Vaughan's testimony and showed Vaughan planting drugs on Mr. Eden.

Federal Rule of Evidence 608 permits the Court to allow on cross-examination specific instances of a witness's conduct to attack the witness's character for truthfulness if they are probative of the character for untruthfulness the witness. Courts have permitted cross-examination about prior findings regarding an officer's credibility in the context of suppression motions. *See,*

*e.g., United States v. Cedeno*, 644 F.3d 79, 81 (2d Cir. 2011) (citing *United States v. Terry*, 702 F.2d 299, 316 (2d Cir. 1983)). In *Terry*, the court permitted cross-examination regarding a state-level court judge's finding that a witness "guessed under oath" because such a finding was "probative of the weight to be accorded to his testimony." 702 F.2d at 316.

In *United States v. Whitmore*, 359 F.3d 609, 619-20 (D.C. Cir. 2004), the court determined it was reversible error to bar cross-examination regarding a previous judicial finding that the police officer had lied in a criminal trial. "Nothing could be more probative of a witness's character for untruthfulness than evidence that the witness has previously lied under oath." *United States v. Whitmore*, 359 F.3d 609, 619 (D.C. Cir. 2004). Similarly, in *United States v. White*, 692 F.3d 235, 241 (2d Cir. 2012), *as amended* (Sept. 28, 2012), the court found reversible error where the trial court refused to permit cross-examination of a police officer about a previous judicial finding that the officer's testimony was not credible. Indeed, the court said emphatically "we have little trouble concluding that Judge Block's prior credibility finding against Herrmann was relevant and highly probative in this case." *Id.*

The rationale of *Whitmore* and *White* apply to the instant case. A judge previously found Vaughan to have lied under oath. Nothing could be more probative of Vaughan's character for untruthfulness. Plaintiff should be permitted to cross-examine him about this.

**MOTION IN LIMINE NO. 7: Preclude Plaintiff from offering evidence, eliciting testimony or making reference to Travis Robinson.**

Mere weeks before he shot Mansur Ball-Bey, Kyle Chandler had an altercation with Travis Robinson in which Robinson's skull was fractured. Chandler brought criminal charges against Robinson which were dismissed. After securing dismissal of his criminal charges, Robinson sued Chandler, Ronald Vaughan, and Gregory Klipsch, another key eyewitness in the case. Another witness, Matthew Manley, was present for the incident.

Introduction of this incident is relevant and should not be excluded for several reasons.

First, the jury instruction for punitive damages allows the jury to consider past actions, namely, "whether there was any repetition of the wrongful conduct and past conduct of the sort that harmed the decedent." Model Civ. Jury Instr. 8th Cir. 4.72 (2023). This instruction tracks Supreme Court precedent. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419, (2003) ("We have instructed courts to determine the reprehensibility of a defendant by considering whether: … **the conduct involved repeated actions or was an isolated incident**…") (emphasis added). Evidence of Chandler's misconduct toward Travis Robinson and others should be considered as a jury determines his prior wrongful conduct.

Second, the actions described against Chandler and Vaughan in the Robinson case are part of a modus operandi employed by Chandler and Vaughan of using excessive force and covering it up by blaming the civilian for the force. Just as Chandler and Vaughan claimed that Ball-Bey pointed a gun at them, they claimed that Robinson used force against them, requiring them to use force in return. These two incidents are not the only such claims—two years before the incident, Jeremy Doss alleged that Chandler punched him in the face while he was handcuffed.

Finally, the Robinson case involved a familiar cast of characters: besides Chandler, there was Vaughan, Klipsch, and Manley. These officers were not only present for alleged misconduct in July of 2015 for the Robinson incident, but they also were all present weeks later when they claim to have witnessed Mansur Ball-Bey run through the back yard of 1233 Walton. *See Davis v. Alaska,* 415 U.S. 308, 316(1974) ("A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand.") *See also* Jack B. Weinstein *et al.*, Weinstein's Federal Evidence § 607.04[1] (2d ed. 1999) ("Since

bias of a witness is always significant in assessing credibility, the trier of fact must be sufficiently informed of the underlying relationships, circumstances, and influences operating on the witness to determine whether a modification of testimony reasonably could be expected as a probable human reaction.")

Eighth Circuit cases have held that limiting instructions may be given to clarify for the jury the purpose of prior act evidence. *United States v. Farish*, 535 F.3d 815, 820 (8th Cir. 2008) ("The limiting instruction cured whatever unfair prejudice the introduction of [the domestic abuse evidence] occasioned.")

**MOTION IN LIMINE NO. 8: Preclude Plaintiff from admitting or displaying graphic autopsy or other post-mortem pictures of Plaintiff's Decedent.**

"A trial court has discretion to admit a relevant photograph unless it is so gruesome or inflammatory that its prejudicial impact substantially outweigh[s] its probative value." *United States v. Ingle*, 157 F.3d 1147, 1153 (8th Cir. 1998) citing *United States v. Davidson*, 122 F.3d 531, 538 (8th Cir.). In determining their probative value, courts have regularly admitted autopsy photographs to not only show how the victim died, but also to corroborate the testimony of witnesses, to demonstrate the extent of the witnesses' knowledge of the details of the incident, and to assist the jury in understanding medical examiner's testimony. *Id.*; *see also United States v. Ortiz*, 315 F.3d 873, 897 (8th Cir. 2002). ("The photographs at issue here show the victim's bloody corpse and are graphic. However, they also have significant probative value.").

The autopsy photographs show that Mansur Ball-Bey was shot in the back by an officer of the SLMPD. And the autopsy photographs are at issue given 1) the competing narratives about whether Mansur Ball-Bey's spine was severed at the time he was shot and 2) that the medical examiner's office collected Mansur Ball-Bey's body a second time after he was released to his

parents, increasing their pain and suffering. As such, these photographs are relevant to how Mansur Ball-Bay died and will be used with witnesses to corroborate testimony.

Moreover, Dennis Ball-Bey has familiarity with what is depicted in these photographs of his son – and jurors should be able to see and understand how he responded and processed these photographs of his son's death. Put simply, the autopsy photographs are an integral part of this case, and their probative value outweighs any prejudicial concerns Defendant may have.

**MOTION IN LIMINE NO. 9: Preclude Plaintiff from asking Defense counsel to stipulate to the admissibility of any evidence or facts in the presence of the jury.**

No objection.

**MOTION IN LIMINE NO. 10: Preclude Plaintiff from offering undisclosed expert opinions or offering the testimony of witnesses, like Brandon Clark, who were not identified and disclosed as required by the Federal Rules of Civil Procedure.**

Based upon the representations of Defendant's counsel regarding James Joyner, Plaintiff does not intend to call Brandon Clark and does not plan on offering any undisclosed expert testimony.

**MOTION IN LIMINE NO. 11: Plaintiff's retained expert witness, Matt Noedel, must be precluded from offering any opinion that is not disclosed in his report, including but not limited to, any opinion about the policies, practices or procedures of the SLMPD, or any opinion as to the negligence or "deliberate indifference," of Defendant Chandler because it is not helpful, constitutes an improper legal conclusion, and invades the province of the jury pursuant to FRE 702.**

Plaintiff does not oppose this MIL to the extent that it relates to any opinions of Mr. Noedel related to policies, practices, or procedures of SLMPD or whether Chandler was deliberately indifferent when he shot Mansur Ball-Bey in the spine and killed him. Just as Plaintiff argued in his motions *in limine* that Defendant's expert, Hugh Mills, may not offer a legal opinion or an opinion on the ultimate issue in the case, Plaintiff agrees to do the same.

As this Court and Defendants are aware, Plaintiff's expert Matthew Noedel created a brief supplemental report after his visit to St. Louis, where he was able to test-fire Vaughan and

Chandler's weapons and inspect the cartridge casings. D.E. 390. This inspection, and supplemental report, was conducted with the consent of Defendants. *Id.* at ¶ 2. To the extent Defendant seeks to exclude opinions "not disclosed in his report," Plaintiff objects to those opinions contained in Mr. Noedel's Supplemental Report.

**MOTION IN LIMINE NO. 12: Preclude Plaintiff from offering evidence, eliciting testimony or making reference to any settlement demand or discussions of any nature, the content thereof, amount demanded or offered, or any other comment or statement intended to convey in any manner the existence of settlement negotiations or the amounts thereof pursuant to FRE 408 and 402.**

No objection.

**MOTION IN LIMINE NO. 13: Preclude Plaintiff from offering evidence, eliciting testimony or making reference about any officer's disciplinary history and/or internal affairs investigations or argument that any non-defendant officers allegedly engaged in misconduct.**

Again, Fed. R. Evid. 608(b) gives the court discretion to allow questioning during cross-examination on specific bad acts not resulting in the conviction for a felony if those acts concern the witness' credibility. *Hastings* at 40–41 (8th Cir.1978) This impeachment of a witness by cross-examination is allowed if the "conduct relates to the witness's character for truthfulness or untruthfulness. The court balances a question's relevance to honesty and veracity with its prejudicial impact." *United States v. Dennis*, 625 F.2d 782, 798 (8th Cir. 1980).

Here, Plaintiff is asserting that two versions of events that are being proposed to the jury by the parties. Defendant maintains that Mansur Ball-Bey had a firearm which he threw backwards after being shot in the back, while Plaintiff alleges that Mansur was shot in the back while possessing no firearm, 164 feet from where the weapon was found. The jurors will be charged with determining which one of these versions is true and, to do so, must be able to assess the credibility of the witnesses who provide accounts of what occurred in this case. Given this posture, any impeachment that gets at the "truthfulness or untruthfulness" of witnesses is probative and important.

As such, any evidence of misconduct, both before and after the August 19, 2015, incident, in which non-party officers were alleged to have used excessive force or committed misconduct are probative and necessary in this case.

**MOTION IN LIMINE NO. 14: Preclude references and testimony regarding protests against police brutality/shootings, including the Black Lives Matter Movement, and other high profile cases involving alleged police misconduct.**

Plaintiff does not intend to argue that "highly publicized cases or frequent media coverage related to these topics is evidence that these instances happen." *See* D.E. 485 at 20.

Plaintiff also does not plan to reference to unrelated police misconduct. However, Defendant's request goes too far and seeks to bar any mention of police protests about police shootings and police brutality.

The cases cited by Defendant bar reference to police misconduct "unrelated to this case." *See, e.g., Redmond v. City of Chicago*, 2008 WL 539164 *6 (N.D. Ill. Feb. 26, 2008). However, there are instances of police violence in the St. Louis area that occurred at roughly the same time as this matter that are important context to this case. This shooting occurred just over a year after the killing of Michael Brown, which sparked many protests over many months primarily in the St. Louis suburb of Ferguson. The killing of Mansur Ball-Bey sparked immediate protests in the City of St. Louis, which saw only a handful of protests related to Michael Brown.

While Plaintiff does not intend to belabor the Ferguson protests or the protests regarding Ball-Bey's killing, Plaintiff believes that *some* testimony regarding this context may naturally arise during the trial. Indeed, the Secret Witness testified during his deposition at length about the Ball-Bey protests because they occurred near his house. Accordingly, the Court should not bar all testimony regarding protests and should permit, if necessary, testimony limited to the context in which this shooting occurred. Defendant's motion *in limine* asks the Court and the jury to ignore

the reality of police brutality, police shootings, and protests targeting such misconduct that occurred as a backdrop to this specific case.

**MOTION IN LIMINE 15: Preclude Plaintiff and witnesses in the courtroom from wearing images of Decedent or references to protests against police brutality/shootings, and other high-profile cases involving alleged police misconduct.**

No objection for the same reasons as Plaintiff outlines in MIL related to officers in the gallery wearing uniforms.

**MOTION IN LIMINE NO. 16: Preclude Plaintiff from offering evidence, testimony or reference to the race of the parties or witnesses or argument that this shooting was racially motivated.**

Plaintiff has not alleged that the shooting was racially motivated. However, Defendant's motion *in limine* is overly broad. Defendant seeks to bar "evidence, testimony or reference to the race of the parties or witnesses." Plaintiff has no idea how to avoid the fact that the decedent was black and both the shooters and nearly all the other officers are white. Plaintiff is not planning on belaboring this point, but it is a fact.

**MOTION IN LIMINE NO. 17: Preclude Plaintiff from offering testimony or other evidence of damages that are not authorized by Missouri's wrongful death statute on the wrongful death claim, including Dennis Ball-Bey's grief and bereavement.**

Plaintiff does not intend to offer evidence of his grief and bereavement because of the death of his son. However, as described in his response to MIL 18 below and in his Trial Brief (D.E. 467), Dennis Ball-Bey's loss of consortium is relevant to this case.

**MOTION IN LIMINE NO. 18: Preclude Plaintiff from offering testimony from Barbara Chandler and Shonettda Ball regarding their relationship with Ball-Bey.**

Plaintiff does not intend to call Shonettda Ball at trial.

Defendant has been aware of the identity of Barbara Chandler, the mother of Mansur Ball-Bey, for years of litigation. Moreover, Defendants' prior counsel Larry Pratt had expressed his desire to depose Ms. Chandler in 2023 as discovery was concluding.  On August 10, 2023

undersigned counsel memorialized the prior conversations about Ms. Chandler's availability and suggested available dates for Ms. Chandler's deposition. Two other City Counselors were included on the email. Neither Mr. Pratt nor the other two attorneys ever requested Ms. Chandler's deposition or suggested additional dates. And contrary to Defendant's claim, Plaintiff formally disclosed Ms. Chandler as a potential witness in an email to three City Counselors on September 14, 2023.

To the extent that Defendant moves to exclude Ms. Chandler because "she will not offer any relevant testimony," such a claim has no basis in law. At issue in this case is both the loss of consortium of Dennis Ball-Bey, his wife (Ms. Chandler), and Mansur Ball-Bey himself. *See* Trial Brief, D.E. 467 at 2 (victim's loss of consortium at issue); *Id.* at 5 (loss of consortium of any of those who may have brought claims under § 537.090, RSMo also relevant). Both Ms. Chandler and Mansur Ball-Bey lost out on the companionship between a mother and son on August 19, 2015. Evidence of their relationship is relevant.

**MOTION IN LIMINE NO. 19: Preclude evidence or argument that anyone, including Dennis Ball-Bey and Barbara Chandler, suffered medically diagnosable or medically significant harm absent requisite medical expert testimony regarding causation.**

No opposition.

**MOTION IN LIMINE NO. 20: Preclude Plaintiff from introducing into evidence a New York Times article which purportedly quotes Dr. Michael Graham.**

Based on Defendant's Motion for Summary Judgment, Plaintiff anticipates that Dr. Graham will now testify that it is *possible* that the bullet that Defendant fired may have only "nicked" or "bruised" Mansur Ball-Bey's spine. That is a marked change from his initial autopsy findings and the statement that he made to The New York Times. The article states:

> Dr. Graham said he would have expected the teenager to have been "incapacitated immediately" by the fatal gunshot. "I would have expected him to go to the ground right away," Dr. Graham said in an interview, though he declined to elaborate on how he reached that finding.

*See* Eligon, John, "Black Man Shot by Police in St. Louis Died From Bullet to Back." THE NEW YORK TIMES (Aug. 21, 2015) accessible at https://www.nytimes.com/2015/08/22/us/black-man-shot-by-police-in-st-louis-died-from-bullet-to-back.html.

Moreover, Plaintiff does not seek to introduce Dr. Graham's quote for the truth of the matter asserted; rather, the purpose of the quote is to show the transformation of Graham's beliefs—as well as the FIU's actions—in the days and weeks after the shooting. *See United States v. Murphy*, 193 F.3d 1, 5 n. 2 (1st Cir.1999) (explaining that a statement is not hearsay when it is "offered to show the effect of the words spoken on the listener, e.g., to supply a motive for the listener's actions.") *see also Curtis Lumber Co. v. La. Pac. Corp.*, 618 F.3d 762, 783 n. 18 (8th Cir.2010).

The quote may be contrary to what Dr. Graham now believes. Thus, even if the document were hearsay, the use of prior inconsistent statements is an exception to the hearsay rule. Under Fed. R. Evid. 801(d)(1)(A), prior inconsistent statements may be used for impeachment purposes. Plaintiff is aware that under Fed. R. "Rule 613(b), a party seeking to introduce a prior inconsistent statement must ordinarily confront the witness with the prior inconsistent statement and afford him or her an opportunity to explain or deny the inconsistency." *United States v. Buffalo*, 358 F.3d 519, 524 (8th Cir. 2004). Plaintiff will obviously allow Dr. Graham to explain this inconsistency to the jury, as his right. Yet through his MIL, Defendant is trying hide this evidence, which is not allowable under the Federal Rules. In fact, Fed. R. Evid. 613 even allows the relevant portions of The New York Times article to be submitted to the jury as "extrinsic evidence" once Dr. Graham is permitted to explain or deny his own statement.

Neither of the cases that Defendant cites has anything to do with a witness's prior inconsistent statements. Both decisions just affirm the idea that a statement within a written

statement are inadmissible as hearsay unless there is a hearsay exception, like there is in the instant matter.

**MOTION IN LIMINE NO. 21: Preclude Plaintiff from offering into evidence a youtube video purportedly depicting a spinal shock injury.**

Defendant raises the following objections related to the YouTube video of NFL player Ryan Shazier suffering from spinal shock: it lacks foundation, is prejudicial, it contains hearsay, and it is irrelevant.

Plaintiff may introduce footage of this video at trial as a demonstrative, or illustrative, exhibit: namely, to show the jury how spinal shock can remove the function of the legs. *See* Fed. R. Evid. 107 (*"The court may allow a party to present an illustrative aid to help the trier of fact understand the evidence or argument…"*) Plaintiff does not intend to introduce this video into evidence, nor does he expect to show the video to the jury without a foundation. *See Committee Notes* to Fed. R. Evid. 107. ("The second category [of evidence]—the category covered by this rule—is information offered for the narrow purpose of helping the trier of fact to understand what is being communicated to them by the witness or party presenting evidence or argument. **Examples may include** drawings, photos, diagrams, **video depictions,** charts, graphs, and computer simulations.") (Emphasis added).

Defendant's conclusory claim that the video is "prejudicial"—without any citation to law—provides little argument to refute. The video is not gory or violent, nor does it attack Defendant.

As for the hearsay objection, Plaintiff plans to present the video without audio.

**MOTION IN LIMINE NO. 22: Preclude Plaintiff from introducing evidence of "Animation of Incident."**

Fed. R. Evid. 107(a) allows "a party to present an illustrative aid to help the trier of fact understand the evidence or argument…"

Plaintiff is perplexed by Defendant's argument that he does not know "(w)hat animation it is, who it is from, and what the animation depicts of the 'incident' is..." D.E. 485 at 25. Over a year ago on January 12, 2024, Plaintiff emailed Defendant's counsel, including one of the attorneys that is still on this case, a copy Mr. Noedel's expert report, his CV, Dr. Carlock's expert report, Dr. Carlock's CV, and a list of the items Dr. Carlock reviewed in reaching his opinions. In the email, Plaintiff's counsel stated that they would produce the animation on a thumb drive on Tuesday, January 16, 2024, which they did.

| | |
|---|---|
| **Subject:** | Ball-Bey v. Chandler: Plaintiff's Expert Disclosure |
| **Date:** | Friday, January 12, 2024 at 7:35:54 PM Central Standard Time |
| **From:** | Jack Waldron |
| **To:** | Brandon Laird, vossmeyerr@ ███████ |
| **CC:** | James Wyrsch, Javad Khazaeli, Jermaine Wooten |
| **Attachments:** | Expert Disclosure.pdf, Noedel-Expert Report.pdf, Ex. 1 Noedel-CV-R20231220.pdf, Report of Dr. Ben Carlock.pdf, Ex. 1-- Carlock CV.pdf, Ex.2 Carlock Reviewed Items.pdf |

Counsel,
Please see the attached. We will produce Exhibit 2 to Mr. Noedel's report on a thumb drive on Tuesday.
Thank you.
Jack

John "Jack" Waldron
Khazaeli Wyrsch LLC
911 Washington Ave, Suite 211
St. Louis, MO 63101
(314) 949 7040

Not only was Defendant timely provided with the animation, but it was also attached as Exhibit 50 in Plaintiff's summary judgment filings, which were provided to Defendant's counsel on June 28, 2024, almost seven months ago. D.E. 419-50.  The use of such animations is common in trial courts around this circuit. *See United States v. Black Hills Power, Inc.,* No. CIV. 03-5020-KES, 2006 WL 6908315, at *33 (D.S.D. June 12, 2006) ("… the court finds that Marchand's unexaggerated 3–D maps are admissible. The court finds that the evidence will help the jury understand the complex, factually intense matters in this case.") *See also Norman v. Textron* Inc., No. 15-4108-CV-C-WJE, 2018 WL 3199487, at *7 (W.D. Mo. May 17, 2018).  Indeed, Defendant intends to introduce his own animation that the SLMPD hired a contractor to create.

Of note, Defendant had the ability to depose Mr. Noedel after he submitted his expert report, over a year ago. In the deposition, Defendant would have been free to question Mr. Noedel about the animation. Defendant chose not to depose Mr. Noedel. Defendant inexplicably feigns surprise and prejudice and falsely claims to have never received the animation.

As to Defendant's other arguments, Plaintiff does not intend to show the video to the jury without a laying a proper foundation. Mr. Noedel will be able to lay the foundation for the video, which he helped to create.

Additionally, this animation is relevant and helpful to the trier of fact. *See Committee Notes to* Fed. R. Evid. 107. ("The second category [of evidence]—the category covered by this rule—is information offered for the narrow purpose of helping the trier of fact to understand what is being communicated to them by the witness or party presenting evidence or argument. **Examples may include** drawings, photos, diagrams, **video depictions,** charts, graphs, and **computer simulations**.") (Emphasis added). Mr. Noedel's use of the animated video will aid the jury in visualizing both Plaintiff's theory of the case and Defendant's theory while using evidence that SLMPD evidence technicians documented. Defendant is free to cross-examine Mr. Noedel as to the animation.

Defendant has not proffered an argument as to why the animation would be prejudicial in any way. This makes sense as, two weeks before trial, Defendant has not even viewed the video he has had in his possession for over a year.  One cannot argue something is prejudicial if one does not know what it contains. Similarly, Defendant's reliance on *Rochelle v. Ulrich*, 4:20-CV-4043, 2022 WL 3330576, at *3 (W.D. Ark. Aug. 11, 2022), is misguided as the animation was not produced "late." In fact, it was produced along with the disclosure of expert Matthew Noedel, within the time prescribed by the Court.

Dated:  January 20, 2025                    **KHAZAELI WYRSCH LLC**

                                            */s/ John M. Waldron*
                                            John M. Waldron, 70401MO
                                            James R. Wyrsch, 53197MO
                                            Javad M. Khazaeli, 53735MO
                                            911 Washington Avenue, Suite 211
                                            St. Louis, Missouri 63101
                                            (314) 288-0777
                                            (314) 400-7701 (Fax)
                                            jack.waldron@kwlawstl.com
                                            james.wyrsch@kwlawstl.com
                                            javad.khazaeli@kwlawstl.com

                                            **THE LEGAL SOLUTIONS GROUP**
                                            Jermaine Wooten, 59338MO
                                            10250 Halls Ferry
                                            St. Louis, Missouri 63136
                                            (314) 736-5770
                                            (314) 736-5772 (Fax)
                                            wootenjlaw1@aol.com

                                            *Attorneys for Plaintiff*