IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DENNIS BALL-BEY, | ) |
| Plaintiff, | ) |
| | ) Cause No. 4:18-CV-01364-SPM |
| v. | ) |
| KYLE CHANDLER, | ) |
| Defendant. | ) |

PLAINTIFF'S MOTION IN SUPPORT FOR
USE OF DEMONSTRATIVE EXHIBIT

1) **Legal Standard**

The Eighth Circuit grants trial courts "virtually unfettered discretion to regulate the use of ... non-evidentiary devices, either generally or to achieve procedural fairness and regularity in a particular case." *United States v. Crockett,* 49 F.3d 1357, 1362 (8th Cir.1995). Courts employ a Rule 403 balancing test, weighing probative value against potential prejudice, to determine whether demonstrative exhibits may be used at trial. *United States v. Johnson*, 362 F. Supp. 2d 1043, 1059 (N.D. Iowa 2005).

2) **The Replica Gun Has Substantial Probative Value**

The weight of the firearm is particularly significant given expert Noedel's documentation that the Springfield pistol was equipped with an extended magazine containing fifteen unfired cartridges, weighing approximately 2.6 to 2.8 pounds. This weight bears directly on the competing scenarios Noedel identifies in his analysis: in Scenario 1, Ball-Bey would have thrown this weighted firearm behind him after being struck by Officer Chandler's first shot, while continuing to run approximately 125 feet before collapsing. In Scenario 2, Ball-Bey would have carried this weighted firearm while running, only releasing it later in the sequence of events after he was shot.

1

The weight of the weapon also factors into Noedel's evaluation of both officers' testimony. Both officers claim they fired when "Ball-Bey was raising a firearm in his right hand and that he released (threw) the firearm as soon as the shot was delivered." However, Noedel notes that 'the description of both officers shooting essentially simultaneously is not supported by the audio evidence." A replica firearm of identical weight would allow jurors to better evaluate the physical plausibility of the officers' account that Ball-Bey was raising and then throwing this 2.6-2.8 pound weapon while running, particularly given Noedel's findings about the timing and sequence of shots.

**3) Physical Examination of Demonstrative Exhibits by Jurors Is Well-Established**

The Eighth Circuit has specifically approved jurors' physical testing and examination of demonstrative exhibits. In *Banghart v. Origoverken, A.B.*, the court upheld jurors' use of matches and toothpicks to examine a stove that was central to the case, finding this was not improper consideration of extraneous evidence. 49 F.3d 1302, 1306-07 (8th Cir. 1995). The court reasoned that "the matches and toothpicks used in the testing were not evidence considered by the jurors in reaching their decision, but merely objects used in scrutinizing the physical nature of the piece of evidence upon which the case turned." *Id*. at 1306.

The *Banghart* court cited approvingly *Taylor v. Reo Motors, Inc.*, where jurors were permitted to dismantle and reassemble a heat exchanger using pocketknives and nail clippers to test trial testimony. 275 F.2d 699, 705 (10th Cir. 1960). The Taylor court held that if "the experiment or demonstration was conducted by the jury for the purpose of testing the truth of the statements made concerning the functioning of the heat exchanger, it was proper." *Id*.

2

Here, as in *Banghart* and *Taylor*, allowing jurors to handle a replica firearm would enable them to test and evaluate key testimony - specifically, the officers' accounts of how Ball-Bey allegedly wielded, raised, and threw the weapon while running.

Just as the *Banghart* court found that jurors could use simple tools to examine physical evidence c here jurors should be permitted to handle a replica to evaluate the physical plausibility of testimony about the gun "upon which the case turned." Like in *Banghart*, no one is asserting that the replica itself "would have any independent bearing upon the outcome of the trial." 49 F.3d at 1307. Rather, it would serve solely as an aid to evaluating the credibility of testimony about the actual firearm's handling and movement during the incident.

As the Court noted, some jurors may have a misconception of what a gun of the relative weight of the gun that is it in in the case feels like. Some may believe that the gun is heavier than they expected after hearing the oral testimony and would be easier to throw while others, like the weightlifter example the Court posited, may believe that the gun is heavier than they expected after hearing the oral testimony and would be harder to throw. This exemplifies the exact purpose of demonstratives – the use of a simple tool to demonstrate to give the jurors a better understanding of the evidence "upon which the case turned."

**4) Any Prejudicial Effect Can Be Mitigated Through Limiting Instructions**

Courts have consistently held that proper limiting instructions can cure potential prejudice from demonstrative exhibits. *See Crockett*, 49 F.3d at 1362. This is especially important here where the expert identifies two possible scenarios for how events unfolded - one where the first shot caused the gun to be thrown, and another where the gun was discarded later. Proper instructions can ensure jurors use the replica only to evaluate the physical plausibility of these scenarios.

5) **The Evidence Is Not Unfairly Prejudicial**

As noted in *Minemyer v. B-Roc Representatives, Inc.*, the law "presumes that juries have the capacity not to be overawed by the evidence and to follow appropriate instructions from the court." No. 07 C 1763, 2011 WL 1113146, at *4 (N.D. Ill. Mar. 23, 2011). "Juries are not leaves swayed by every breath. Every day, in courts around the country, juries are exposed to relevant, admissible evidence with varying degrees of prejudicial implications. Indeed, all evidence is prejudicial. That's the idea." *Old Chief v. U.S.*, 519 U.S. 172, 193, (1997) citing *United States v. Garsson*, 291 F. 646, 649 (S.D.N.Y.1923) (L.Hand, J.).

The expert report demonstrates that technical aspects of the firearm - its weight, design, and physical characteristics - are crucial to evaluating the credibility of witness accounts. A replica that accurately represents these characteristics serves a legitimate analytical purpose that outweighs any prejudicial effect. In fact, the allowing the jurors to use a demonstrative removes any misconceptions of the gun. This will be of benefit to both parties.

Dated:  January 27, 2025                     KHAZAELI WYRSCH, LLC

*/s/ John M. Waldron*
John M. Waldron, 70401MO
James R. Wyrsch, 53197MO
Javad M. Khazaeli, 53735MO
911 Washington Avenue, Suite 211
St. Louis, Missouri  63101
(314) 288-0777
(314) 400-7701 (Fax)
jack.waldron@kwlawstl.com
james.wyrsch@kwlawstl.com
javad.khazaeli@kwlawstl.com

THE LEGAL SOLUTIONS GROUP

Jermaine Wooten, 59338MO
10250 Halls Ferry
St. Louis, Missouri  63136
(314) 736-5770
(314) 736-5772 (Fax)
wootenjlaw1@aol.com

Attorneys for Plaintiff