UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DENNIS BALL-BEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-CV-1364-SPM |
| | ) | |
| KYLE CHANDLER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Kyle Chandler's Motion for Stay of Proceedings to Enforce a Judgment and Waiver of Bond (ECF No. 602). For the reasons set out below, the Court finds Defendant has failed to demonstrate that the Court should waive the bond requirement ordinarily required to stay proceedings to enforce the judgment. The Court will deny the motion.

### I.    BACKGROUND

Following a jury verdict and the resolution of post-trial motions, the Court entered an amended judgment in Plaintiff's favor against Defendant in the amount of $8.25 million. ECF No. 617. The Court also awarded Plaintiff attorney's fees and costs. ECF No. 624. Defendant has filed a Notice of Appeal. ECF No. 630. In the instant motion, Defendant asks the Court to stay proceedings to enforce judgment under Federal Rule of Civil Procedure 62(b) and to waive the bond requirement ordinarily required for such a stay. The Court held a hearing on the motion on March 4, 2026. At the hearing, Defendant Chandler and non-party City of St. Louis requested that the Court hold the record open for fourteen days to permit the submission of additional evidence and briefing. The Court granted that request, and briefing is now complete.

1

## II.   LEGAL STANDARDS

Under Rule 62(b) of the Federal Rules of Civil Procedure, "At any time after judgment is entered, a party may obtain a stay [of execution on a judgment and proceedings to enforce it] by providing a bond or other security." Fed. R. Civ. P. 62(b). "The general rule is for the district court to set a supersedeas bond in the full amount of the judgment plus interests, costs, and damages for delay." *Jo Ann Howard & Assocs., P.C. v. Cassity*, No. 4:09CV01252 ERW, 2015 WL 4478151, at *1 (E.D. Mo. July 21, 2015) (quoting *New Access Commc'ns LLC v. Qwest Corp.*, 378 F. Supp. 2d 1135, 1138 (D. Minn. 2005)). "The purpose of a bond is to secure a prevailing party from loss resulting from the stay of execution on the judgment in its favor." *United States ex rel. Cairns v. D.S. Med., L.L.C.*, No. 1:12CV00004 AGF, 2020 WL 2556991, at *1 (E.D. Mo. May 20, 2020 (citing *Miami Int'l Realty Co. v. Paynter*, 807 F.2d 871, 873 (10th Cir. 1986)).

Although "a district court has discretion to waive the bond requirement or to only require a partial bond, 'a full supersedeas bond is the norm.'" *Id.* (quoting *Halbach v. Great-W. Life & Annuity Ins. Co.*, No. 4:05CV022399ERW, 2009 WL 214671, at *1 (E.D. Mo. Jan. 28, 2009)). "[T]here is a presumption in favor of requiring a bond, and the party seeking [to] dispense with the requirement bears the burden of showing why a bond should not be required." *Id.* (quoting *Barfield v. Sho-Me Power Elec. Co-op.*, No. 2:11-CV-04321-NKL, 2015 WL 4159988, at *2 (W.D. Mo. July 9, 2015)). "The party seeking the stay must objectively demonstrate that it has the present financial ability to facilely respond to a money judgment and present to the court a financially secure plan to maintain that ability during the pendency of the appeal." *Fed. Trade Comm'n v. Neiswonger*, No. 4:96CV2225SNLJ, 2008 WL 11434564, at *2 (E.D. Mo. Oct. 16, 2008) (quoting *Weber v. Logan County Home for the Aged*, 1986 WL 12878, at *1 (D.N.D. June

2

17, 1986) & citing *Poplar Grove Planting and Ref. Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979)). *See also United States v. Peters*, No. 4:12-CV-01395-AGF, 2014 WL 4205065, at *2 (E.D. Mo. Aug. 22, 2014) ("If a court chooses to depart from the usual requirement of a full security supersedeas bond[,] it should place the burden on the moving party to objectively demonstrate the reasons for such departure. It is not the burden of the judgment creditor to initiate contrary proof.") (quoting *United States v. O'Callaghan,* 805 F.Supp.2d 1321, 1324-25 (M.D. Fla. 2011)).

"Courts are generally reluctant to waive the bond requirement for governmental entities unless funds are readily available and an effective procedure is in place for paying the judgment." *Wilmer v. Bd. of Cnty. Comm'rs of Leavenworth Cnty., Kan.*, 844 F. Supp. 1414, 1419 (D. Kan. 1993). *Accord Howell v. Town of Ball*, No. 1:12-CV-00951, 2017 WL 6210869, at *6 (W.D. La. Dec. 7, 2017).

Courts generally consider five factors when determining whether a waiver of Rule 62(b)'s bond requirement is warranted: "(1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position." *Dillon v. City of Chicago*, 866 F.2d 902, 904–05 (7th Cir. 1988) (internal citations and quotation marks omitted). *Accord Major Brands, Inc. v. Mast-Jagermeister US, Inc.*, No. 4:18CV423 HEA, 2022 WL 22888690, at *1 (E.D. Mo. Aug. 22, 2022) (citing and applying *Dillon* factors).

### III. DISCUSSION

The parties agree that the *Dillon* factors govern the Court's analysis of Defendant's motion, but they disagree about whether those factors weigh in favor of waiving bond in this case. The Court will address each factor in turn.

#### A. Complexity of the collection process

The Court begins with the first *Dillon* factor—the complexity of the collection process. Much of the initial briefing on Defendant's motion concerned the uncertainty over whether, in light of the recent takeover of the St. Louis Metropolitan Police Department by the State of Missouri, the City or the State would be responsible for paying the judgment against Chandler (a former St. Louis Metropolitan Police Department officer). The evidence and argument presented in Defendant's motion indicated that the City would pay the judgment only "if" the State did not do so, suggesting the possibility that Plaintiff would not be able to collect until the conclusion of litigation between the City and the State over which entity would be responsible for payment. That possibility significantly undermined Defendant's argument that the collection process would not be complex or time-consuming. *See Holmes v. Zellers*, No. ED 112676, 2025 WL 2110585, at *1 (Mo. Ct. App. July 29, 2025) (discussing a situation in which a judgment creditor was unable to collect a judgment for several years because of ongoing litigation between the City and the State regarding which entity was responsible for payment). At the hearing, however, Defendant represented to the Court that the City and the State were nearing agreement on which entity would be responsible for this judgment, and Defendant requested time to submit additional evidence related to the issue. In materials submitted after the hearing, Defendant and the City state that the City and the Missouri Attorney General have recently agreed to terms for a Memorandum of Understanding ("MOU") under which judgments and settlements involving police officer conduct

occurring prior to March 26, 2025, "shall be paid by the City." ECF No. 636, at 2 (quoting MOU, ECF No. 636-1, at ¶ 1.2). Defendant and the City assert that the collection process "is now straightforward as the MOU provides that the City will pay any judgment in this matter." ECF No. 636, at 2.

Although the MOU has not yet been finalized,[1] the MOU and the City's representations in the supplemental briefing largely address the Court's concern that Plaintiff could face a *Holmes*-like situation in which Plaintiff's ability to collect the judgment will depend on the conclusion of complicated litigation regarding which entity is responsible for payment. However, even if it is clear that the City is responsible for payment, it is not at all clear that the process by which the City will pay that judgment will be straightforward rather than complex.

Defendant's evidence concerning the process for paying the judgment is as follows. In an affidavit dated August 19, 2025, Deputy City Budget Director Michael Benoist stated that "the City of St. Louis has sufficient funds to pay the judgment in this case if required." Benoist Aff., ECF No. 605-4, at ¶¶ 3, 5. He set forth the past process by which the City of St. Louis would satisfy a judgment, in which "the judgment is processed for payment by the Law Department as well as the Comptroller's Office and a check is cut within a couple of days." *Id.* at ¶ 4. He further stated that "[i]f the judgment exceeds the amount allocated for judgments, then the Budget Division would work with the Comptroller's Office to analyze the budgets of other City

---

[1] The MOU has not yet been signed by counsel for the St. Louis Board of Police Commissioners because counsel has been out of state, but the City states that it anticipates the Board's signature upon counsel's return. *See* ECF No. 636 at 2 n. 1. Additionally, as condition to the MOU, the City and the Missouri Attorney General have agreed to a cap on outside counsel fees incurred in 2026 and later, and all parties must agree to the cap number for that period for the MOU to be effective. *See Id.* at 2 n.2. In his supplemental reply brief, Defendant asserts that the Deputy Attorney General has since orally agreed to a cap number and the City expects that it will soon be memorialized in writing. ECF No. 638, at 1.

departments to evaluate areas of underspending, and would allocate that underspending amount to a judgment," a process that he "envision[s] taking no longer than a couple weeks." *Id.*

In an affidavit dated March 17, 2026, Paul Payne, City Budget Director, stated that he oversees the City's Budget Division, "which prepares the budget each year for approval to the Board of Estimate and Apportionment, which then recommends that budget to the Board of Aldermen on an annual basis." Payne Aff., ECF No. 636-2, at ¶ 2. He stated that "[e]verything in the Benoist affidavit remains true to date." *Id.* at ¶ 5. He stated that "[t]he City of St. Louis has sufficient funds to pay" either the original $18.75 million judgment or the amended $8.25 million judgment. *Id.* at ¶ 7. He described the process for payment as follows: "If a judgment is issued where the City of St. Louis is satisfying said judgment and the judgment exceeds the amount City allocated for judgments for that fiscal year, City's Budget Division will work with the Comptroller's Office to analyze the budgets of other City departments to evaluate areas of underspending, and will allocate that underspending amount to the judgment. In the event the underspending amount is not sufficient to cover the judgment, City can allocate funds from the Rams Settlement as well as its reserve funds to cover the judgment. The Rams Settlement and reserve funds total well over $300 million dollars." *Id.* at ¶ 6.

The Court finds this evidence insufficient to demonstrate that the collection process will not be complex. Defendant has not provided the type of evidence that other courts have found sufficient to show a simple collection process: the existence of funds already allocated to the specific purpose of paying judgments and/or the existence of a routine procedure for allocating such funds. *See Dillon*, 866 F.2d at 905 (waiving bond where the City showed that payment was guaranteed to be paid from the Corporate Payroll Fund, that far more than the judgment amount had been appropriated into that Fund, that appropriations are made into the Fund annually by the

City Council in an amount designed to provide adequate funds for payment of such awards, and that the entire payment process should take less than 30 days); *In re Nassau Cnty. Strip Search Cases*, 783 F.3d 414, 418 (2d Cir. 2015) (waving bond where the County had demonstrated the existence of appropriated funds available for the purpose of paying judgments and reported that an ordinance to provide for immediate payment had been adopted and its final approval was a "formality"); *Fox v. Pittsburg State Univ.*, 319 F.R.D. 342, 344-45 (D. Kan. 2017) (finding first *Dillon* factor weighed in favor of waiver where payments would be taken from a tort claims fund, the tort claims fund had sufficient money to pay the judgment and fees, and a statute provided a mandatory process by which, if the balance in the tort claims fund was insufficient to pay a judgment, money would be transferred from the state's general fund to the tort claims fund).

Here, unlike the defendants in *Dillon and Nassau County*, the City has apparently not yet allocated funds adequate to pay the judgment. And in contrast to *Fox*, there is no indication that the City has in place a simple and mandatory mechanism for allocating such funds. Instead, Payne describes a process of obtaining and allocating money from various sources that appears vague and uncertain. Payne indicates that the Budget Division "will allocate" underspending from other departments and that the City "can allocate" funds from the Rams settlement and/or the City reserve funds to pay the judgment. However, Payne's affidavit does not describe the process by which such allocations would be made, and he does not indicate that Payne or his department has the unilateral authority to make such allocations. Nor does Defendant direct the Court to any legal authority describing a simple or streamlined process by which City funds may easily be allocated or re-allocated to pay the judgment. In opposing Defendant's motion, Plaintiff points to evidence suggesting the possibility that the Board of Estimate and Apportionment of the Board of Aldermen may need to approve the allocations referenced in Payne's affidavit. Specifically, Plaintiff has

submitted a 2021 deposition in another case in which the City Counselor testified that where sufficient funds did not exist in an account to cover a judgment, "'a supplement[al] appropriation would need to be recommended by the Board of Estimate and Apportionment and approved by the Board of Aldermen." *See* Michael Garvin Dep., Def.'s Ex. 1, ECF No. 637-1, at 48:3-21.

Based on the record before this Court, it is far from clear how, or whether, funds would be allocated to pay the judgment. As such, the Court finds this case similar to cases that have held that waiver is not warranted because the collection process may be complex and uncertain in outcome. *See Lightfoot v. Walker*, 797 F.2d 505, 506 (7th Cir. 1986) (declining to waive bond where "the procedure for collecting a judgment against the state is not only cumbersome and time-consuming, but uncertain in outcome, since the judgment cannot be paid unless and until the state legislature votes to appropriate the money necessary to pay it"); *Lewis v. Kern Cnty.*, No. 1:21-CV-00378-KES-CDB, 2025 WL 1865995, at *4 (E.D. Cal. July 7, 2025) (finding the first *Dillon* factor weighed against a County where the County had yet to appropriate or approve the use of funds to pay the judgment and where the steps for the Board to approve such appropriation had not yet occurred); *Contreras v. City of Los Angeles*, No. 2:11-CV-1480-SVW-SH, 2013 WL 12474477, at *3 (C.D. Cal. May 20, 2013) (declining to waive bond despite City officials' affidavits indicating that the City had "a liquid [Reserve Fund] from which the City may draw to pay the judgment in this case, if and when necessary"; noting that "[w]hile in *Dillon* the City *specifically set aside funds* for the purpose of making employment discrimination judgments, the Reserve Fund serves no such purpose" and that "in order to allocate the funds for the judgment, Defendants must obtain approval of the City's Claim Board, Council, and Mayor"); *Lamon v. Shawnee*, 758 F. Supp. 654, 657 (D. Kan. 1991) (declining to waive bond where the defendant had

"no funds set aside to pay the judgment" but asserted that it could raise the money by collecting taxes or by issuing bonds).

For all of the above reasons, the Court finds the first *Dillon* factor weighs against waiving the bond requirement.

### B. Amount of time required to obtain a judgment after it is affirmed on appeal

The Court next considers the second *Dillon* factor—the amount of time required to obtain a judgment after it is affirmed on appeal.[2] Defendant relies on the affidavit of Michael Benoist, who stated that he envisions that the process of analyzing the budgets of other City departments to evaluate areas of underspending and allocating that underspending to the judgment is a process would take "no longer than a couple weeks." Benoist Aff., ECF No. 605-4, at ¶ 4. Defendant also points to Payne's affidavit affirming that everything in Benoist's affidavit was still true as of March 2026. However, based on the evidence presented, it is not at all clear that the entire collection process described in Payne's affidavit would take no more than a couple of weeks. As discussed above, although Benoist and Payne attest that the City has sufficient funds to pay the judgment, there is no evidence that adequate funds have been allocated to pay the judgment at this time. Instead, Payne's affidavit describes a multistep process by which such allocation could occur in the future: allocation of underspending from other departments, allocation of money from the Rams settlement, and/or allocation of money from the City's reserve funds. Benoist's and Payne's affidavits indicate that the first step in this process—allocating underspending amounts—could be completed within a couple of weeks. However, neither affidavit addresses how long it would take to complete the other two steps described in Payne's affidavit—allocating money from the Rams

---

[2] The Court's concerns about how the second factor would be impacted by the dispute between the City and the State have largely been addressed by the MOU submitted by Defendant. The Court focuses on other considerations.

settlement and allocating money from the City's reserve funds. Additionally, the uncertainty around *how* such steps would be carried out, including whether any part of the process may require the approval of lawmakers or others, casts doubt on Defendant's suggestion that payment of the judgment after appeal would happen quickly. For the foregoing reasons, Defendant has not shown that this factor favors waiving the bond requirement.

### C. The degree of confidence that the district court has in the availability of funds to pay the judgment

The Court next considers *Dillon*'s third factor—the degree of confidence it has in the availability of funds to pay the judgment. Defendant relies on the following evidence to support his position that this factor favors waiver of the bond requirement. At trial in January 2025, City Budget Director Paul Payne testified that although only $4 million had been allocated for police judgments that fiscal year, the City would "pull money from" some other department that might be underspending to cover any judgment. Trial Tr. Vol. 5 119:17-120:15. He also testified that the general fund budget was "about $580 million plus" and the total budget was "over a billion dollars." *Id.* at 123:13-19. He testified that the $290 million Rams settlement was not part of the budget and had not been appropriated. *Id.* at 125:3-16. In a March 2026 affidavit, Budget Director Paul Payne stated that "[t]he City of St. Louis has sufficient funds to pay" either the original $18.75 million judgment or the amended $8.25 million judgment. Payne Aff., ECF No. 636-2, at ¶ 7. As discussed above, Payne described a process for payment that involves allocating underspending from other City departments, the Rams Settlement, and the City's reserve funds, and he stated that "[t]he Rams Settlement and reserve funds total well over $300 million dollars." *Id.* at ¶ 6. Defendant also points out that Plaintiff points to no example in history in which the City was unable to pay a judgment.

Plaintiff argues that Payne's affidavit addresses only the current state of the City's finances, not its future state. Plaintiff also argues that several factors suggest the City's financial situation is precarious and its budget could be under significant strain in the near future. He points out that in Payne's trial testimony, Payne testified that the City had experienced a significant loss of revenue due to having issued City earnings tax refunds exceeding $40 million. Trial Tr. Vol. 5, at 125:22-126:2. Plaintiff also points to news articles and press releases in which the City's mayor has indicated that the recent budget proposed by the state-controlled Police Board, if approved, would cripple the City of St. Louis and trigger significant service cuts and mass layoffs for City staff. *See* Def.'s Ex. 2 through Ex. 6, ECF Nos. 637-2 through 6. Plaintiff also points to news articles indicating that the City faces tornado-damage-related expenses of between $150 million and $400 million. *See* Ex. Def.'s Ex. 7 through Ex. 10, ECF Nos. 637-7 through 637-10. Plaintiff further points out that in April, St. Louisans will vote on whether to abolish or maintain the City's earnings tax, which makes up 36% of the City's general fund revenues and without which the mayor has indicated that every City service would be underfunded. *See* Def.'s Ex. 11 through Ex. 14, ECF Nos. 637-11 through 637-14. Plaintiff also points out that the mayor testified before a Missouri Senate committee in March 2026 that the City puts aside $4 million for police department lawsuits, that such judgment carry significant costs, that the City has between 50 and 70 outstanding cases that are considerable, and that the City is operating on very thin margins. *See* ECF No. 637, at 9.[3] Finally, Plaintiff argues that the City's suggestion that the Rams settlement money is available to pay the judgment in this case is illusory because that money could be allocated for other purposes by the Board of Aldermen at any time, pointing to news articles indicating that the City politicians

---

[3] *See* https://www.youtube.com/watch?v=pIZosr5tqg4&t=3386s starting at 57:46 (last visited March 28, 2026).

11

are already actively attempting to allocate the Rams settlement money. *See* Pl.'s Ex. 7, ECF No. 637-7, at 3-4 (quoting the mayor as stating, "We are working on a plan to spend the Rams dollars . . . and a good chunk of that is going to go into supporting our north side neighborhoods.").

Regardless of the merits of Plaintiff's predictions about the City's financial situation, the Court finds *Dillon*'s third factor weighs against waiver of the bond requirement. As discussed above, "[t]he party seeking the stay must objectively demonstrate that it has the present financial ability to facilely respond to a money judgment *and present to the court a financially secure plan to maintain that ability during the pendency of the appeal*." *Neiswonger*, 2008 WL 11434564, at *2 (internal quotation marks omitted; emphasis added). Here, although Defendant has provided evidence that the City of St. Louis currently has sufficient funds to pay the judgment, he has provided no convincing evidence that such funds will actually be available to cover the judgment at the time of the conclusion of this appeal. Unlike the defendants in most of the cases the Court has found where courts have waived bond, the City has neither allocated money into a specific fund from which this judgment would be paid nor provided the Court with assurances that such funds will be available in the future.[4] *See Dillon*, 866 F.2d at 906; *Fox*, 319 F.R.D. at 344-45; *Chmielewski v. City of St. Pete Beach,* No. 8:13-CV-3170-T-27MAP, 2016 WL 7438432, at *1 (M.D. Fla. Sept. 16, 2016) ("Because the full amount of the judgment, plus two years of post judgment interest, will be placed in a separate account from which the City cannot withdraw absent a Court order, I find that the City has objectively demonstrated a present financial ability to pay the judgment and has presented a financially secure plan for maintaining that ability during the

---

[4] The only evidence in the record suggests that the amount the City sets aside for police judgments would *not* be sufficient to cover the judgment at issue. At trial, Payne testified that the amount the City set aside for police judgments in 2025 was only $4 million. The mayor's testimony before the Missouri Senate committee in March 2026 also indicated that the City sets aside only $4 million for police judgments.

12

period of an appeal."); *Munoz v. City of Philadelphia*, 537 F. Supp. 2d 749, 751-52 (E.D. Pa. 2008) (waiving bond for a $429,230 judgment where the City maintained an Indemnities Fund from judgments were paid that had past, current, and proposed appropriations of $20 million or more); *Warren v. Kemp*, No. 4:19-CV-00655-BSM, 2022 WL 3131932, at *1 (E.D. Ark. July 7, 2022) (waiving bond requirement where "the School District has agreed to set aside $400,306.76 as a line item in its budget that will carry forward until the appeals are resolved"). The lack of an established fund containing money set aside for the purpose of paying this judgment undermines the Court's confidence that the City will be able to pay the judgment upon conclusion of the appeal.

This concern is compounded by the evidence set forth by Plaintiff suggesting that the City may face substantial budget challenges in the next couple of years from the proposed police budget, the outstanding tornado-related expenses facing the City, shortfalls in City tax revenue, and the possibility that the City earnings tax could be eliminated entirely. These challenges make it more likely that by the time the appeal is concluded, the funds the City *now* has available to allocate to the judgment may no longer be available to cover judgments such as the one in this case. *See Contreras*, 2013 WL 12474477, at *3 (declining to waive bond requirement; noting concerns that the City had not specifically set aside funds for the purpose of paying judgments like the one at issue and noting that "[t]hese concerns are compounded by the uncertain state of the City's finances"). The Court also agrees that Defendant's reliance on the existence of the Rams settlement money is illusory absent any indication that such money will not be allocated to other budget priorities before the conclusion of the appeal in this case.

Defendant's argument that Plaintiff has not identified any example of the City's having been unable to pay a judgment in the past does not change the Court's conclusion. Evidence that a government entity has consistently paid judgments may increase a court's degree of confidence

that the judgment will be paid. *See Dillon*, 866 F.2d 905 (find waiver of bond was appropriate and noting that "the City has a history of more than adequate provision for payment of employment discrimination judgments"); *K.J.P. v. Cnty. of San Diego*, No. 3:15-CV-02692-H-MDD, 2022 WL 2167674, at *2 (S.D. Cal. May 2, 2022) (finding waiver of bond was appropriate and noting that the County submitted a declaration by a County official representing that she was "familiar with the County's financial situation" and was "not aware of a single instance where the County has defaulted on a court judgment"). However, the burden is on the Defendant to show that bond should be waived, and Defendant has produced no evidence that the City has not defaulted on any past judgments. Moreover, even if Defendant produced such evidence, that factor alone does not outweigh the other concerns discussed above.

In sum, Defendant has not shown that the Court should have a high degree of confidence that the City will have adequate funds available to pay the judgment at the time the appeal is concluded. Thus, this factor weighs against waiver of bond.

### D. Whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money

For the reasons stated above with regard to the third factor, the Court does not find that Defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money. The Court also notes that if the City wants to avoid wasting taxpayer money by obtaining a bond, it may offer the Court other options for security, such as depositing an appropriate amount into the Court's registry. *See, e.g.*, *Harvey v. Lake Buena Vista Resort, LLC*, No. 6:07-CV-1641-ORL-DAB, 2008 WL 11336143, at *1 (M.D. Fla. June 18, 2008).

**E.  Whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.**

Neither party offers any argument regarding *Dillon*'s fifth factor, and the Court does not find it relevant to the analysis.

**F.  Conclusion**

In sum, the Court finds that each of the relevant *Dillon* factors weighs against waiving bond, and  Defendant has not met his burden of showing that the Court should depart from the usual bond requirement. Thus, Defendant's motion will be denied.

**G.  Defendant's Alternative Suggestion**

Defendant argues that if the City's assurances of its ability to pay the judgment are unsatisfactory to the Court, the City Comptroller's Office can create a separate account within the City's judgment fund for the purpose of setting aside the amended judgment amount in this case. Defendant points to the March 18, 2026, affidavit of Donald Knese, Assistant Comptroller for the City of St. Louis, who states that he is responsible for managing financial matters and assets of the City of St. Louis, that pursuant to his job duties, he can create a separate account within the City's judgment fund for the purpose of setting aside the amended judgment in this case, that the account would be interest bearing, and that "[o]nce [his] Office and the Budget Division identify the source of funds for the account—whether from underspending of other City departments or other sources—this new account for the judgment can be created within hours." ECF No. 636-3 at ¶¶ 1-5.

In response to this suggestion, Plaintiff argues that nothing in Knese's affidavit suggests that creating this separate account would prevent the Board of Aldermen from reappropriating this money, especially if any or all of the budgetary problems described above come to pass. Plaintiff

argues that instead of allowing the City to set up a separate account containing the amount of the judgment, the Court should offer the City the option of paying the same amount into the Court's registry, which would also be in an interest-bearing account. Plaintiff argues that this would prevent the segregated funds from being re-appropriated by the Board of Aldermen and would address City's concern that a bond would be a waste of taxpayer money. Plaintiff argues that Defendant should be required to deposit $11,865,452.20, which Plaintiff asserts is the amount currently outstanding for the judgment, attorney's fees, post-judgment interest, and costs, plus a 25% cushion to account for interest and attorney's fees during the appellate period. *See* ECF No. 637, at 12-13 (citing *Harvey v. Lake Buena Vista Resort, LLC*, No. 6:07-CV-1641-ORL-DAB, 2008 WL 11336143, at *1 (M.D. Fla. June 18, 2008); *Brinkman v. Dep't of Corr.*, 815 F. Supp. 407, 408 (D. Kan. 1993)).

Either the City's proposal or Plaintiff's proposal would address the Court's concerns set forth above and would address the City's concern that a bond would be a waste of taxpayer money. However, for the existence of an account maintained by the City to support a finding that waiver of the bond requirement is warranted, the Court would need some degree of assurance that the City could not use the funds for any purpose other than paying this judgment, at least until the conclusion of the appeal process. Defendant and the City would also need to inform the Court of the specific amount being deposited into the account and provide evidence and authority showing that such amount is sufficient to ensure that Plaintiff will be "secure . . . from loss resulting from the stay of execution on the judgment in its favor." *Cairns*, 2020 WL 2556991, at *1 (E.D. Mo. May 20, 2020 (citing *Paynter*, 807 F.2d at  873).

Because the proposed account does not yet exist and Defendant has not provided sufficient information from which the Court can determine whether such an account would warrant waiver

16

of the bond requirement, Defendant has not shown that the proposed alternative provides a basis for waiving the bond requirement at this time. The Court will therefore deny the motion without prejudice to re-filing if Defendant creates an account that addresses the concerns set forth herein.

### IV.    CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendant Kyle Chandler's Motion for Stay of Proceedings to Enforce a Judgment and Waiver of Bond (ECF No. 602) is **DENIED** without prejudice.

_____

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 31st day of March, 2026.